APPEAL, BROWN, TERMED

# United States District Court
## Northern District of Illinois – CM/ECF LIVE, Ver 4.2 (Chicago)
## CIVIL DOCKET FOR CASE #: 1:02–cv–06998
### Internal Use Only

| | |
|---|---|
| USA v. Johnson | Date Filed: 09/30/2002 |
| Assigned to: Honorable William J. Hibbler | Date Terminated: 03/11/2003 |
| Demand: $0 | Jury Demand: None |
| Case in other court:  11–01326 | Nature of Suit: 510 Prisoner: Vacate Sentence |
| 11–01443 | Jurisdiction: U.S. Government Defendant |
| ND IL, :96–CR–00379 | |

Cause: 28:2255 Remedies on motion attacking sentence

**Plaintiff**

**United States of America**                represented by **David E. Bindi**
United States Attorney's Office (NDIL)
219 South Dearborn Street
Suite 500
Chicago, IL 60604
(312) 353–5300
Email: david.bindi@usdoj.gov
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Darryl Lamont Johnson**                represented by **Terence H. Campbell**
Cotsirilos, Tighe &Streicker
33 North Dearborn Street
Suite 600
Chicago, IL 60602
(312) 263–0345
Email: tcwolfram@aol.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lorinda Meier Youngcourt**
Lorinda Meier Youngcourt
Attorney at Law
P.O. Box 206
Huron, IN 47437
(812)849–9852
Email: lmyoungcourt@incrimlaw.org
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| | | | |

| 12/21/2009 | 89 | 5 | NOTICE of Correction regarding 87 . (aac, ) (Entered: 12/21/2009) |
|---|---|---|---|
| 01/15/2010 | 90 | 6 | MOTION by Plaintiff United States of America for extension of time to file response/reply (Bindi, David) (Entered: 01/15/2010) |
| 01/15/2010 | 91 | 8 | NOTICE of Motion by David E. Bindi for presentment of before Honorable William J. Hibbler on 1/21/2010 at 09:30 AM. (Bindi, David) (Entered: 01/15/2010) |
| 01/20/2010 | 92 | 9 | MINUTE entry before Honorable William J. Hibbler: Government's Motion for extension of time until 2/22/2010 to file response regarding MOTION by Defendant Darryl Lamont Johnson Consideration of Brady v. Maryland and Johnson v. Mississippi Claims 88 90 is granted. Petitioner's reply due by 3/31/2010. Ruling by mail. Mailed notice (jdh) (Entered: 01/20/2010) |
| 02/12/2010 | 93 | 10 | MOTION by Plaintiff United States of America for extension of time (Bindi, David) (Entered: 02/12/2010) |
| 02/12/2010 | 94 | 12 | NOTICE of Motion by David E. Bindi for presentment of extension of time 93 before Honorable William J. Hibbler on 2/18/2010 at 09:30 AM. (Bindi, David) (Entered: 02/12/2010) |
| 02/17/2010 | 95 | 13 | MINUTE entry before Honorable William J. Hibbler: Government's Agreed Motion for extension of time until 3/24/2010 to respond to petitioner's supplemental briefs 93 is granted. Mailed notice (jdh) (Entered: 02/17/2010) |
| 03/17/2010 | 96 | 14 | MOTION by Plaintiff United States of America for extension of time to file response/reply as to memorandum in support of motion 86 , memorandum, 85 (Bindi, David) (Entered: 03/17/2010) |
| 03/17/2010 | 97 | 17 | NOTICE of Motion by David E. Bindi for presentment of motion for extension of time to file response/reply, motion for relief, 96 before Honorable William J. Hibbler on 3/23/2010 at 09:30 AM. (Bindi, David) (Entered: 03/17/2010) |
| 03/22/2010 | 98 | 18 | MINUTE entry before Honorable William J. Hibbler: Government's Agreed Motion for an extension of time until 5/10/2010 to respond to petitioner's supplemental briefs 96 is granted. Petitioner's reply due by 6/28/2010. Ruling by mail. Mailed notice (jdh) (Entered: 03/22/2010) |
| 05/10/2010 | 99 | 19 | RESPONSE by Plaintiff United States of America *to supplemental briefs* (Bindi, David) (Entered: 05/10/2010) |
| 06/01/2010 | 100 | 40 | MOTION by Defendant Darryl Lamont Johnson for extension of time to file response/reply – *AGREED* (Campbell, Terence) (Entered: 06/01/2010) |

| | | | |
|---|---|---|---|
| 06/01/2010 | 101 | 44 | *Agreed* NOTICE of Motion by Terence H. Campbell for presentment of before Honorable William J. Hibbler on 6/8/2010 at 09:30 AM. (Campbell, Terence) (Entered: 06/01/2010) |
| 06/07/2010 | 102 | 45 | MINUTE entry before Honorable William J. Hibbler: Agreed Motion to modify briefing schedule regarding MOTION by Defendant Darryl Lamont Johnson Consideration of Brady v. Maryland and Johnson v. Mississippi Claims 88 100 is granted. Petitioner's reply due by 8/6/2010. Ruling by mail. Mailed notice (jdh) (Entered: 06/07/2010) |
| 08/02/2010 | 103 | 46 | MOTION by Defendant Darryl Lamont Johnson for extension of time – *AGREED* (Campbell, Terence) (Entered: 08/02/2010) |
| 08/02/2010 | 104 | 50 | *AGREED* NOTICE of Motion by Terence H. Campbell for presentment of extension of time 103 before Honorable William J. Hibbler on 8/5/2010 at 09:30 AM. (Campbell, Terence) (Entered: 08/02/2010) |
| 08/04/2010 | 105 | 51 | MINUTE entry before Honorable William J. Hibbler: Petitioner's Agreed Motion for extension of time until 8/16/2010 to file reply brief 103 is granted. Mailed notice (jdh) (Entered: 08/04/2010) |
| 08/16/2010 | 106 | 52 | REPLY by Defendant Darryl Lamont Johnson *In Support of His Ineffective Assistance of Counsel Claim* (Campbell, Terence) (Entered: 08/16/2010) |
| 08/16/2010 | 107 | 67 | REPLY by Defendant Darryl Lamont Johnson *In Support of His Brady v. Maryland and Johnson v. Mississippi Claims* (Campbell, Terence) (Entered: 08/16/2010) |
| 08/17/2010 | 108 | 87 | REPLY by Defendant Darryl Lamont Johnson *In Support of His Ineffective Assistance of Counsel Claim – Corrected* (Campbell, Terence) (Entered: 08/17/2010) |
| 08/17/2010 | 109 | 102 | REPLY by Defendant Darryl Lamont Johnson *In Support of His Brady v. Maryland and Johnson v. Mississippi Claims – Corrected* (Campbell, Terence) (Entered: 08/17/2010) |
| 11/05/2010 | 110 | 122 | MOTION by Defendant Darryl Lamont Johnson for leave to conduct discovery and supporting memorandum of law. (ph, ) (Entered: 11/08/2010) |
| 12/13/2010 | 111 | 132 | MINUTE entry before Honorable William T. Hart:Enter Memorandum Opinion and Order. The court grants Defendant – Movant's motion to vacate his sentence 1 . all other motions are terminated as moot. Mailed notice. (kj, ) (Entered: 12/16/2010) |
| 12/13/2010 | 112 | 133 | MEMORANDUM Opinion and Order Signed by the Honorable William J. Hibbler on 12/13/2010.(kj, ) Modified |

| | | | on 12/17/2010 (kj, ). (Entered: 12/16/2010) |
|---|---|---|---|
| 12/13/2010 | 113 | 141 | ENTERED JUDGMENT.(kj, ) (Entered: 12/16/2010) |
| 12/17/2010 | 114 | 142 | NOTICE of Correction regarding 112 . (kj, ) (Entered: 12/17/2010) |
| 02/10/2011 | 115 | 143 | NOTICE of appeal by United States of America regarding orders 113 (Bindi, David) (Entered: 02/10/2011) |
| 02/10/2011 | 116 | 146 | NOTICE of Appeal Due letter sent to counsel of record. (gel, ) (Entered: 02/10/2011) |
| 02/10/2011 | 117 | 147 | TRANSMITTED to the 7th Circuit the short record on notice of appeal 115 . Notified counsel (gel, ) (Entered: 02/10/2011) |
| 02/10/2011 | 118 | 172 | ACKNOWLEDGEMENT of receipt of short record on appeal regarding notice of appeal 115 ; USCA Case No. 11–1326. (ph, ) (Entered: 02/11/2011) |
| 02/23/2011 | 119 | 173 | NOTICE of cross appeal by Darryl Lamont Johnson regarding orders 21 , 113 , 112 ; (Campbell, Terence) (Entered: 02/23/2011) |
| 02/24/2011 | 120 | 184 | NOTICE of Appeal Due letter sent to counsel of record. (gel, ) (Entered: 02/24/2011) |
| 02/24/2011 | 121 | 185 | TRANSMITTED to the 7th Circuit the short record on notice of cross appeal 119 . Notified counsel (gel, ) (Entered: 02/24/2011) |
| 02/24/2011 | 122 | 240 | ACKNOWLEDGEMENT of receipt of short record on appeal regarding notice of cross appeal 119 ; USCA Case No. 11–1443. (et, ) (Entered: 02/25/2011) |
| 02/24/2011 | 123 | 241 | CIRCUIT Rule 3(b) Notice.(et, ) (Entered: 02/25/2011) |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

Date:                                    Case No.

Case Title:                              Judge:

### NOTICE OF CORRECTION

**The following error was found in document no.**

    The document has been filed in the incorrect case.

    The document is filed in the correct case, but the case number and case title do not match.

    The incorrect document (PDF file) was linked to the entry

    The incorrect file date was entered.

    The incorrect type of event was used to describe the document.

    The title of the document does not match the text of the entry.

    The entry is a duplicate of entry no.

    Other:

**Corrective action taken by the Clerk:**

    The text of the entry has been edited and the PDF file has been replaced.

    The following notation has been added to the text of the entry: (*Linked document has the incorrect case title or linked document has the incorrect case number.*)

    The correct document (PDF file) has been linked to the entry.

    The file date has been corrected.

    The text of the entry has been edited.

    The text of the entry has been edited to read "Duplicate filing of document number."

    Other:

**Corrective action required by the filer:**

    The document must be refiled.

    Other:

Michael W. Dobbins, Clerk of Court

By:    s/_____
        Deputy Clerk

NDIL (10/05) Notice of Correction

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,          )
                    Respondent,          )
                                        )
    vs.                                 )    No.  02 C 6998
                                        )    Judge William J. Hibbler
DARRYL JOHNSON,                          )
                    Petitioner           )

**GOVERNMENT'S AGREED MOTION FOR AN EXTENSION
OF TIME TO RESPOND TO PETITIONER'S SUPPLEMENTAL BRIEFS**

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD,

United States Attorney for the Northern District of Illinois, moves this Court for a 30-day

extension of time, from January 22, 2010, to and including February 22, 2010, within which

to respond to petitioner's supplemental briefs.  In support of this motion, the government

states as follows:

1.  In this latest round of briefing, petitioner filed supplemental briefs on December

17, 2009 (with corrected versions of one of them filed a few days later, making formal but

not substantive changes).  The government's response is due by January 22, 2010.

2.  In the time since petitioner's filing, counsel for the government has been in the

office only 8 days.  Counsel needed to use up 52 hours of use-or-lose annual leave time, and

took off approximately 36 additional hours because of two deaths in the family in late

December.  Counsel has not had sufficient time to respond to the supplemental briefing,

which is a combined 65 pages, not including exhibits.

3.  Counsel for the government contacted one of petitioner's attorney's, Terrence

Campbell, by phone on January 15, 2010, and Mr. Campbell stated that petitioner had no objection to this motion.

WHEREFORE, the government respectfully requests that this Court grant a 30-day extension of time, to and including February 22, 2010, within which to respond to petitioner's supplemental briefs.

Respectfully Submitted,

PATRICK J. FITZGERALD,
United States Attorney

By:   /s/ David E. Bindi
DAVID E. BINDI
Assistant U.S. Attorney
219 South Dearborn Street
5th Floor
Chicago, Illinois 60604
(312) 886-7643

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )
)
vs. ) No.  02 C 6998
) Judge William J. Hibbler
DARRYL JOHNSON )

**NOTICE OF MOTION**

To:   Terrence Campbell                   Lorinda Meier Youngcourt
      Cotsirilos, Tighe & Streicker, Ltd.   P.O. Box 206
      33 North Dearborn Street            Huron, Indiana 47437-0206
      Suite 600
      Chicago, Illinois 60602

PLEASE TAKE NOTICE that on Thursday, January 21, 2010, at 9:30 a.m., I shall appear before the Honorable William J. Hibbler, United States District Court, in the courtroom usually occupied by him at 219 South Dearborn Street, Chicago, Illinois, and present the government's Agreed Motion for Extension of Time, service of which is made upon you.

Respectfully Submitted,

PATRICK J. FITZGERALD,
United States Attorney

By:   ___/s/ David E. Bindi_____
      DAVID E. BINDI
      Assistant U.S. Attorney
      219 South Dearborn Street
      5th Floor
      Chicago, Illinois 60604
      (312) 886-7643

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 4.0.3**
**Eastern Division**

United States of America

                                    Plaintiff,

v.                                                                  Case No.: 1:02–cv–06998
                                                                    Honorable William J. Hibbler

Darryl Lamont Johnson

                                    Defendant.

---

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Wednesday, January 20, 2010:

    MINUTE entry before Honorable William J. Hibbler: Government's Motion for extension of time until 2/22/2010 to file response regarding MOTION by Defendant Darryl Lamont Johnson Consideration of Brady v. Maryland and Johnson v. Mississippi Claims[88] [90] is granted. Petitioner's reply due by 3/31/2010. Ruling by mail. Mailed notice (jdh)

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,           )
              Respondent,           )
                           )
     vs.           )   No.  02 C 6998
                           )   Judge William J. Hibbler
DARRYL JOHNSON,           )
              Petitioner           )

### GOVERNMENT'S AGREED MOTION FOR AN EXTENSION
### OF TIME TO RESPOND TO PETITIONER'S SUPPLEMENTAL BRIEFS

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, moves this Court for a 30-day extension of time, from February 22, 2010, to and including March 24, 2010, within which to respond to petitioner's supplemental briefs.  In support of this motion, the government states as follows:

1.  In this latest round of briefing, petitioner filed supplemental briefs on December 17, 2009 (with corrected versions of one of them filed a few days later, making formal but not substantive changes).  The government's response was due by January 22, 2010, but an agreed motion for a 30-day extension, to February 22, 2010, was granted.  This is the government's second request for an extension of time.

2.  Additional time is needed because government counsel has had to spend considerable time over the last 30 days on a time-sensitive matter as a member of a filter team associated with *United States v. Blagojevich*, 08 CR 888, screening computer hard drives.  This is a very time-consuming process, and with the trial set for June 2, 2010, must

be given priority.

3.  Counsel for the government contacted one of petitioner's attorney's, Terrence Campbell, by e-mail on February 12, 2010, and Mr. Campbell stated that petitioner agreed to this motion.

WHEREFORE, the government respectfully requests that this Court grant a 30-day extension of time, to and including March 24, 2010, within which to respond to petitioner's supplemental briefs.

Respectfully Submitted,

PATRICK J. FITZGERALD,
United States Attorney

By:    /s/ David E. Bindi
DAVID E. BINDI
Assistant U.S. Attorney
219 South Dearborn Street
5th Floor
Chicago, Illinois 60604
(312) 886-7643

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA       )
                               )
        vs.                    )   No.  02 C 6998
                               )   Judge William J. Hibbler
DARRYL JOHNSON                 )

## NOTICE OF MOTION

To:   Terrence Campbell                 Lorinda Meier Youngcourt
      Cotsirilos, Tighe & Streicker, Ltd.   P.O. Box 206
      33 North Dearborn Street            Huron, Indiana 47437-0206
      Suite 600
      Chicago, Illinois 60602

      PLEASE TAKE NOTICE that on Thursday, February 18, 2010, at 9:30 a.m., I shall appear before the Honorable William J. Hibbler, United States District Court, in the courtroom usually occupied by him at 219 South Dearborn Street, Chicago, Illinois, and present the government's Agreed Motion for Extension of Time, service of which is made upon you.

                          Respectfully Submitted,

                          PATRICK J. FITZGERALD,
                          United States Attorney

                  By:   __/s/ David E. Bindi_____
                          DAVID E. BINDI
                          Assistant U.S. Attorney
                          219 South Dearborn Street
                          5th Floor
                          Chicago, Illinois 60604
                          (312) 886-7643

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 4.0.3**
**Eastern Division**

United States of America
                  Plaintiff,

v.
                                 Case No.: 1:02–cv–06998
                                 Honorable William J. Hibbler

Darryl Lamont Johnson
                  Defendant.

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Wednesday, February 17, 2010:

      MINUTE entry before Honorable William J. Hibbler: Government's Agreed Motion for extension of time until 3/24/2010 to respond to petitioner's supplemental briefs [93] is granted. Mailed notice (jdh)

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Respondent, | ) | |
| | ) | |
| vs. | ) | No.  02 C 6998 |
| | ) | Judge William J. Hibbler |
| DARRYL JOHNSON, | ) | |
| Petitioner | ) | |

### GOVERNMENT'S AGREED MOTION FOR AN EXTENSION
### OF TIME TO RESPOND TO PETITIONER'S SUPPLEMENTAL BRIEFS

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, moves this Court for a 45-day extension of time, from March 24, 2010, to and including May 10, 2010, within which to respond to petitioner's supplemental briefs.  In support of this motion, the government states as follows:

1.  In this latest round of briefing, petitioner filed supplemental briefs on December 17, 2009 (with corrected versions of one of them filed a few days later, making formal but not substantive changes).  The government's response was due by January 22, 2010, but an agreed motion for a 30-day extension, to February 22, 2010, was granted.  A second agreed motion for a 30-day extension, to March 24, 2010, was also granted.  This is the government's third request for an extension of time.

2.  Additional time is needed because government counsel is assigned to prepare the government's brief in *United States v. Segal*, No. 09-3403, now pending in the Seventh Circuit. The Seventh Circuit previously affirmed Segal's conviction, and an order that Segal

forfeit his interest in a racketeering enterprise. *United States v. Segal*, 495 F.3d 826 (7th Cir. 2007). The Court also affirmed a finding that Segal collected $30,000,000 in racketeering proceeds. However, the Court vacated the proceeds forfeiture order and remanded with directions that the district court determine whether there has been double-counting, *i.e.*, whether enterprise forfeiture captured any of the proceeds that went back into the enterprise. *Id.* Litigation over this question took a year and a half, resulting in an order entered by the district court on August 31, 2009, requiring Segal to forfeit $15,000,000 in proceeds. Segal appealed, and the government cross-appealed. The government's response and cross-appeal brief, after two 30-day extensions, is due on April 9, 2010. Priority must be given to completion of the *Segal* brief.

3. A 45-day extension is requested because after the *Segal* brief gets filed, counsel is planning to travel with his family out of state for (at this time) an unknown period of time to attend a memorial service for his mother-in-law and to spend time with his father-in-law.

4. Counsel for the government contacted one of petitioner's attorney's, Terrence Campbell, by e-mail on March 16, 2010, and Mr. Campbell stated that petitioner agreed to this motion.

WHEREFORE, the government respectfully requests that this Court grant a 45-day extension of time, to and including May 10, 2010, within which to respond to petitioner's supplemental briefs.

Respectfully Submitted,

PATRICK J. FITZGERALD,
United States Attorney

By:   /s/ David E. Bindi
      DAVID E. BINDI
      Assistant U.S. Attorney
      219 South Dearborn Street
      5th Floor
      Chicago, Illinois 60604
      (312) 886-7643

3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )
)
vs. ) No. 02 C 6998
) Judge William J. Hibbler
DARRYL JOHNSON )

## NOTICE OF MOTION

To:   Terrence Campbell             Lorinda Meier Youngcourt
Cotsirilos, Tighe & Streicker, Ltd.    P.O. Box 206
33 North Dearborn Street          Huron, Indiana 47437-0206
Suite 600
Chicago, Illinois 60602

PLEASE TAKE NOTICE that on Tuesday, March 23, 2010, at 9:30 a.m., I shall appear before the Honorable William J. Hibbler, United States District Court, in the courtroom usually occupied by him at 219 South Dearborn Street, Chicago, Illinois, and present the government's Agreed Motion for Extension of Time, service of which is made upon you.

Respectfully Submitted,

PATRICK J. FITZGERALD,
United States Attorney

By:     /s/ David E. Bindi
DAVID E. BINDI
Assistant U.S. Attorney
219 South Dearborn Street
5th Floor
Chicago, Illinois 60604
(312) 886-7643

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 4.0.3**
**Eastern Division**

United States of America

　　　　　　　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　Case No.: 1:02−cv−06998
　　　　　　　　　　　　　　　　　　　　Honorable William J. Hibbler

Darryl Lamont Johnson

　　　　　　　　　　Defendant.

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Monday, March 22, 2010:

　　　　MINUTE entry before Honorable William J. Hibbler: Government's Agreed
Motion for an extension of time until 5/10/2010 to respond to petitioner's supplemental
briefs [96] is granted. Petitioner's reply due by 6/28/2010. Ruling by mail. Mailed notice
(jdh)

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of
Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was
generated by CM/ECF, the automated docketing system used to maintain the civil and
criminal dockets of this District. If a minute order or other document is enclosed, please
refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our
web site at *www.ilnd.uscourts.gov*.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,      )
                Respondent,      )
                            )
    vs.      )   No.  02 C 6998
                            )   Judge William J. Hibbler
DARRYL JOHNSON,      )
                Petitioner      )

**GOVERNMENT'S RESPONSE TO
PETITIONER'S SUPPLEMENTAL BRIEFS**

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD,

United States Attorney for the Northern District of Illinois, responds to petitioner's

supplemental briefs as follows.

**I.      Motion to Consider *Brady* and *Johnson* Claims**

Petitioner moves this Court to consider Judge Conlon's rejection of his claims that

the government suppressed material favorable evidence that could have been used to

impeach Warden Vanyur at the sentencing hearing, in violation of the rule of *Brady v.*

*Maryland*, 373 U.S. 83 (1963), and that Warden Vanyur's testimony created a false

impression regarding the means available to the BOP to curb petitioner's future

dangerousness, in violation of the Eighth Amendment as construed in *Johnson v.*

*Mississippi*, 486 U.S. 578 (1988).  The motion should be denied.

Before proceeding to the argument, an aside is advisable.  Petitioner asserts that this

Court need only consider, not reopen, these claims, because no judgment pursuant to

Fed.R.Civ.P. 58 was ever entered.  Motion at 4-5.  He is wrong.  A Rule 58 judgment

denying all of his claims with prejudice, except one, was entered on the docket on March 12, 2003. R21. The only claim that survived is the claim that petitioner is ineligible for the death penalty because he is mentally retarded within the meaning of *Atkins v. Virginia*, 536 U.S. 304 (2002). R20, 16-17. Judge Conlon found that the claim was not factually supported, but left the door open for petitioner to gather and present evidence. *Id*. Petitioner has done nothing to substantiate the *Atkins* claim in the seven years since, nor has he argued that Judge Conlon was wrong, and that his original submission was enough to prove his claim. This issue need not be reconsidered.

A partial final judgment, disposing of fewer than all of the claims raised by a single party, is appealable once it is entered. However, a partial judgment is final as to the claims it adjudicates "only if the court expressly determines that there is no just reason for delay." Fed.R.Civ.P. 54(b). Absent an express statement, there would have been no appellate jurisdiction had petitioner appealed the March 12, 2003 partial judgment. *Granack v. Continental Casualty Co.*, 977 F.2d 1143, 1144 (7th Cir. 1992). If a partial judgment is not final, it "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Rule 54(b). Judge Conlon's memorandum opinion and order does not contain an express statement that there is no just reason to delay an appeal from the claims she adjudicated. The partial judgment is therefore not a final judgment as to those claims.

2

## A.    Procedural Default

The *Brady* and *Johnson* claims could have been raised on direct appeal, but were not. They are therefore procedurally defaulted, as Judge Conlon held in her memorandum opinion and order (R20, 12-14), rejecting petitioner's only argument    that there was no procedural default.  R19, 24-26.  Petitioner does not address cause for the default.  Instead, he contends the legal landscape has changed since Judge Conlon denied these claims, and he cites *Massaro v. United States*, 538 U.S. 500 (2003).  Motion at 2.  *Massaro* holds that ineffective assistance claims cannot be procedurally defaulted, and can always be raised in a motion under 28 U.S.C. § 2255.  It says nothing about *Brady* claims, which the Seventh Circuit, after *Massaro*, still treats as procedurally defaulted if they could have been raised, but were not, prior to the collateral attack.  *Lewis v. Sternes*, 390 F.3d 1019, 1028 (7th Cir. 2004).  Petitioner cites no authority to the contrary, and his failure to deal with cause for the default is fatal to his motion to consider the merits.

Petitioner also says the factual landscape has changed, but finding additional evidence does not resuscitate a procedurally defaulted claim.  Petitioner cites no authority that excuses a showing of cause on a procedurally defaulted claim because more evidence has been found.

## B.    The Evidence is not Impeaching

The additional evidence petitioner has presented in support of these claims is cumulative of what was available to him in the post-trial proceedings and on direct appeal.

The evidence petitioner says was suppressed is evidence of other inmates being subjected to long-term highly restrictive conditions of confinement.  However, like the inmates referred to in the Initial Memorandum in Support of the § 2255 motion, the new names in the motion to reconsider fall into one of two categories:  inmates who were punished for misdeeds in the BOP, in which case their examples do not impeach Warden Vanyur; and inmates who were ordered by district courts pursuant to 18 U.S.C. § 3582(d), to be housed in restrictive conditions immediately on entry into the BOP, in which case the information was public and so not suppressed.

**1.      Inmates Restricted Because of Conduct in the BOP**

The original *Brady* claim was premised on the fact that the government did not disclose to the defense that the BOP was housing Luis Filipe, Thomas Silverstein, Clayton Fountain, Ramzi Yousef and Anthony Jones under strict conditions of confinement.  R4, 49-50; R20, 12.  (The Felipe, Yousef and Jones cases were argued in the post-trial motions stage of the criminal case, and on direct appeal, but the argument on appeal was that Warden Vanyur's testimony was false, not that the information was suppressed    *United States v. Johnson*, 223 F.3d 665, 672 (7th Cir. 2000).  Felipe was the only § 3582(d) sentence at the time of petitioner's sentencing hearing.  Yousef and Jones came later.).  Petitioner has added names to the list (Motion at 6-9), but this does not change the nature of the claim.  Felipe, Silverstein, and Fountain, were all placed in restrictive conditions after committing serious crimes while in the BOP    ordering murders to be committed outside of prison in

4

furtherance of a criminal enterprise (Felipe), and the murders of other inmates and guards (Silverstein and Fountain). These, and other inmates named in the Motion to Consider and the attached affidavit of Mark Bezy, who committed the acts that led to restrictions while in the BOP are not comparable to petitioner. The fact that an inmate who commits multiple murders in prison (Silverstein) is subjected to severe restrictions is not remarkable, and does not impeach Warden Vanyur.

The jury already knew, based on the testimony of petitioner's expert, Dr. Cunningham, that the BOP had at its disposal the control unit at ADX Florence. Tr2263-94. The control unit at Florence is reserved for the most dangerous inmates in the BOP, and the highly restrictive conditions imposed there were described at length. *Id*. They are similar to the conditions imposed on Silverstein, who is housed there. Warden Vanyur did not testify, as petitioner argues, that as a general matter the BOP lacks the ability to limit the human contact and communications privileges of dangerous inmates. See, *e.g.*, motion at 15-16. Indeed, Vanyur testified that such restrictions were placed on Aryan Brotherhood leader Barry Mills, who managed to circumvent them anyway. Tr2479-80.

Vanyur was not called to testify about what was possible or impossible within the BOP. He was called to testify about general policies and procedures, not specific instances. The upshot of Dr. Cunningham's testimony was that "conceivably"an inmate could be housed permanently under conditions such as the control unit at Florence, if that is what it took to mitigate future dangerousness. Tr2287. Vanyur testified that according to BOP

guidelines, initial designation of an inmate to an institution is done according to a point system taking into account the offense record and behavior while incarcerated (Tr.2470-71), and that based on his history and his crime, petitioner would probably be placed in a high security prison in the general population. Tr.2474-75. He further testified that 90% of the inmates in the general population at ADX Florence were transferred from other prisons, while the rest are direct commitments from the sentencing court. Tr.2466. Dr. Cunningham said that only 3.1% were direct commitments. Tr.2331. Vanyur testified that assignment to the control unit is for a determinate period, four to six years usually being the longest, and inmates are never placed there on permanent status. Tr.2485. The control unit at ADX Florence, like administrative segregation units at any prison, were never intended as places to permanently house inmates, and that is why the system is designed to cycle them through and gradually reduce the restrictions before returning them to other BOP facilities. Tr.2464-70. In this respect, Vanyur agreed with defendant's expert, Dr. Cunningham. Tr.2287. Dr. Cunningham did not testify that permanent placement in the ADX Florence control unit was an option within BOP guidelines. He only stated that the option was conceivable. Tr.2287.

The fact that inmate like Silverstein and Fountain, who committed murders while in the BOP, are subjected to extreme restrictions, does not impeach Vanyur's testimony that such restrictions were not likely to be placed on petitioner permanently at the outset of his sentence.

Petitioner recites a litany of things Vanyur testified about concerning conditions at

Florence which he contends is impeached by the new evidence (Motion at 10), but he is wrong.  First, some of the points made by Vanyur pertain to conditions in the general population at Florence and elsewhere, not in control units.  When Vanyur testified that inmates had unlimited phone and correspondence privileges (Tr2472, 2477), he was talking about general population inmates, not inmates confined to control units.  The same is true of his testimony about inmate contacts with other inmates and staff.  Tr2489-90.  Further, the Seventh Circuit said that Vanyur's testimony, "though it did not track the regulations exactly, was not false.  The impression that he conveyed of practice and legal policy was correct."  *Johnson*, 223 F.3d at 672.  The Court said this knowing about the Felipe, Silverstein, Fountain, Yousef and Jones cases, which were put on the record at the post-trial motions stage.  Petitioner, paraphrasing, attributes to Vanyur the statement that "the BOP could not hold any prisoner indefinitely without telephone and correspondence privileges."  Motion at 10. He contends this is impeached.  What Vanyur actually said in the cited passage is that placement in administrative or disciplinary segregation, *i.e.*, a control unit, is "not permanent statuses for inmates."  Tr2482-83.  The Seventh Circuit noted that no law authorizes the BOP to commit a prisoner to a control unit for life, refusing to reassess risk periodically (*id*., at 672-673), as Dr. Cunningham said was conceivable. Tr2287.  Bezy's affidavit says that restrictive conditions can be continued for a long time, not that they can be made permanent.  Even Silverstein's case gets reviewed periodically (R61, Attachment at 15-16), and the restrictions on Felipe, imposed in 1997, were lifted by the time the direct

7

appeal was decided in 2000.  *Johnson*, 223 F.3d at 673.

## 2.     Inmates Ordered into Restrictive Conditions by Courts

Vanyur testified that inmates are sent to the ADX Florence control unit for conduct in other prisons, and federal regulations prohibit assignment to the control unit based solely on the offenses committed in the community.  Tr.2484-85.  *See* 28 C.F.R. § 541.40, *et seq.* (BOP criteria for referral to control units) and 28 C.F.R. 541.41(b)(7) (prohibition against control unit placement based solely on crime of conviction).  He did not testify regarding regulations authorizing the Attorney General to direct the BOP Director to have an inmate housed in restrictive conditions straight from the sentencing court, 28 C.F.R. § 501.3 (special administrative measures    SAMs), or a statute (§ 3582(d)), authorizing district courts to order restrictions on an inmate's communications privileges as part of the sentence. For this reason, the Solicitor General conceded at the *certiorari* stage on direct appeal the Vanyur's testimony was incomplete, and may have left the jury with the mistaken impression that no such authority existed.  R4, Tab A at 13-14.  This, however, does not give rise to a *Brady* claim because the government cannot be said to have suppressed a statute, a set of publicly published regulations, and public court cases applying them.

Inmates like Felipe, Yousef and Jones were ordered into restrictive conditions by the sentencing courts pursuant to the authority provided by § 3582(d), but, as is the case with SAMs, petitioner has no answer to the government's argument (R61, 3) that a statute, a set of regulations in the federal register, and public court cases cannot be said to have been

suppressed. This would open the door to a boundless doctrine requiring the government to do a defendant's research for him. If what is alleged to have been suppressed could have been found by the defendant himself exercising due diligence, then there has been no suppression. *United States v. Bland*, 517 F.3d 930, 934 (7th Cir. 2008) (*Brady* only applies to evidence defendant could not have discovered on his own using due diligence). Indeed, the government has conceded, in connection with the ineffective assistance claim, that counsel rendered deficient performance by failing to learn about SAMs and § 3582(d). The *Brady* claim is fundamentally at odds with the ineffective assistance claim. If the government "suppressed" this information, then counsel were not constitutionally obligated to learn of it on their own, and if they were, it was not suppressed.

## C.     The BOP Was Not Part of the Prosecution Team

Petitioner argues that knowledge of the information possessed by anyone in the Department of Justice, including all U.S. Attorneys offices and the BOP, is imputed to the prosecution team in any federal criminal case for purposes of applying the *Brady* rule. Motion at 5. He does not flesh out this argument. In his Initial Memorandum he made the same argument. R4, 53-54. The government responded that the cases he cited then, *United States v. Kattar*, 840 F.2d 118 (8th Cir. 1988), and *United States v. Barkett*, 530 F.2d 189 (1st Cir. 1976), were inapposite because they predate *Kyles v. Whitley*, 514 U.S. 419 (1995), in which the Supreme Court held that prosecutors have a duty to discover and disclose exculpatory information in the possession of the police department that investigated the

crime. *Id.* at 437. The Seventh Circuit, applying *Kyles*, has held that knowledge is imputed under the *Brady* rule if it lies within an agency that is "part of the team that investigated this case or participated in its prosecution." *United States v. Morris*, 80 F.3d 1151, 1169 (7th Cir. 1996). In his reply, petitioner simply cited more cases that predate *Kyles*. R19, 26-29. He did not cite or discuss *Morris*.

Neither the BOP, nor any U.S. Attorney's Office other than the one in the Northern District of Illinois, were part of the prosecution team that investigated this case, nor did they participate in the prosecution. Vanyur testified as rebuttal witnesses at the penalty phase. His testimony concerned BOP policies and procedures, inmate demographics, and security concerns and problems. He had no professional interest in the outcome, as would a member of the team that participated in the investigation or prosecution of the case. BOP has no investigative or prosecutive function outside disciplinary proceedings within the BOP.

### D.    The *Johnson* Claim

The Eighth Amendment prohibits the imposition of a death sentence based on constitutionally impermissible or inaccurate information. *Johnson v. Mississippi*, 486 U.S. 578, 584 (1988). In that case, the jury found as an aggravating factor that the defendant had previously been convicted of a violent felony, based a certified copy of the judgment, when in fact the judgment had been reversed on appeal. *Id.*, at 581-583.

As noted above, this claim is procedurally defaulted, and petitioner has never addressed procedural default. R20, 14. Further, this claim reprises the argument that

10

Vanyur's testimony was materially false and inaccurate, an argument the Seventh Circuit rejected on direct appeal. *Johnson*, 223 F.3d at 672 (Vanyur's testimony "was not false. The impression that he conveyed of practice and legal policy was correct."). The Seventh Circuit reached this conclusion knowing full well that information about SAMs, and § 3582(d), and the cases of Felipe, Yousef, Silverstein, Fountain, and Jones had not been presented to the jury. The additional information now presented by petitioner is cumulative of what the Court knew when it affirmed the judgment.

## II.   Ineffective Assistance of Counsel Claim

In the March 11, 2003 Memorandum Opinion and Order, Judge Conlon rejected petitioner's ineffective assistance claim on the merits, finding that petitioner was not prejudiced by his attorneys' failure to learn about the SAMs regulations and § 3582(d), and to cross-examine Vanyur with reference to these legal provisions and specific examples of their use. R20, 8-10. Judge Conlon did not address the performance prong of petitioner's claim, but the government has conceded deficient performance because counsel failed to discover a pertinent statute and set of published regulations.[1]  At the time of petitioner's sentencing hearing, § 3582(d) had been invoked one time, in the Felipe case, and SAMs had

---

[1]Petitioner stretches the government's concession to cover what he says was "inaccurate" testimony by Vanyur.  Supp. Br6, 12, 20, 32.  The government has never said that Vanyur's testimony was "inaccurate," and, as argued below, Judge Conlon and the Seventh Circuit agree that it was not.  The Solicitor General has admitted that in light of the SAMs regulations and § 3582(d), Vanyur's testimony was "incomplete" (R4, Ex A, 14), and that without information about SAMs and § 3582(d), "the jury may have held mistaken impression that no legal authority existed to limit petitioner's communications and contacts while in prison." *Id*., 21.

11

been imposed in five terrorism cases and one espionage case.  Petitioner's Ex. F.

In finding no prejudice, Judge Conlon first noted Vanyur's testimony regarding the ways inmates confined in control units and subjected to communications restrictions circumvent those restrictions.  *Id*., 9.  She found that "the jury could have reasonably concluded there was no guarantee that the government could prevent Johnson from committing serious acts of violence in the future."  *Id*.  Second, Judge Conlon found that "the record provides strong support for the conclusion that Johnson would have been sentenced to death even if defense counsel impeached Vanyur with the BOP's policies and practices" because the jury found unanimously and beyond a reasonable doubt statutory and non-statutory aggravating factors other than future dangerousness, and did not unanimously find any mitigating factors using the preponderance standard.  *Id*., 10.

Judge Conlon also found that the claim was procedurally defaulted, and subject to the heightened cause-and-prejudice test of *United States v. Frady*, 456 U.S. 152, 170 (1982).  R20, 6-8.  A little more than a month later, the Supreme Court decided *Massaro v. United States*, 538 U.S. 500 (2003).  *Massaro* held that ineffective assistance claims are not procedurally defaulted, even if the record was complete at the time of direct appeal and the claim could have been raised then.  *Id*. at 504.  After *Massaro*, it is appropriate for this Court to reconsider the ruling on the ineffective assistance claim.

However, it is important to note that the ruling did not stand alone on the *Frady* prejudice standard.  Drawing on a quote from *Kyles v. Whitley*, 514 U.S. 419, 435 (1999),

Judge Conlon found that "Not one of the errors Johnson advances 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" R20, 8. *Kyles* was a case in the *Brady* line, but this is the same prejudice standard used in reviewing claims of ineffective assistance of counsel.  Compare *Kyles* with *Strickland v. Washington*, 466 U.S. 668, 694 (1984).  Ultimately, Judge Conlon concluded that "Johnson fails to establish the cause and prejudice necessary to excuse his procedural default, as well as the required prejudice necessary to establish his ineffective assistance of counsel claim."  R20, 10.

Petitioner's supplemental brief is strangely silent on the bases for Judge Conlon's ruling.  He focuses on the perceived value of the cross-examination of Vanyur that would have taken place had counsel discovered the SAMs regulations, § 3582(d), and the cases in which they had been employed, but he overstates this value and ignores the significance of the other aggravating factors.

The jury in this case found, unanimously and beyond a reasonable doubt, two statutory aggravating factors with respect to both murders that had nothing to do with future dangerousness (there was substantial planning and premeditation, and the murder furthered a CCE that distributed drugs to persons under age 21), and a third statutory aggravating factor on the Banks murder (petitioner had a previous conviction for voluntary manslaughter using a firearm).  It also found, unanimously and beyond a reasonable doubt, two non-statutory aggravating factors with respect to the Blunt Johnson murder that had nothing to

13

do with future dangerousness (petitioner ordered the murder to obstruct justice by preventing the victim from testifying, and the murder caused permanent harm to the victim's family). Using the preponderance standard, and given a list of 25 mitigating factors for each murder, the jury found not one of those factors unanimously. Only five mitigating factors were found by more than half the jury on the Blunt Johnson murder, and only one was found by more than half the jury on the Banks murder. 96CR379 R201-204.

Petitioner asserts that future dangerousness was the "central issue" at the sentencing hearing (Supp.Br1), and that it is "the single most critical issue for juries" in any capital case, but the jury here surely took the other aggravating factors seriously.

Petitioner's conduct prior to apprehension is itself justification for the sentence imposed, and although future dangerousness played an important role in the government's arguments at the sentencing hearing, the other aggravating factors on which we relied, and which the jury found, were not just a sideshow. As the government noted in closing argument (Tr2576), the jury heard detailed testimony about not only petitioner having ordered the murders of Charles Banks and Blunt Johnson, it also heard about several other acts of violence ordered by petitioner, including the murder of another board member, G Sharpe (Tr1944-56); a shooting in a McDonald's parking lot that left two people dead (Tr1881-87); the shooting of a truck driver who interrupted petitioner's security convoy at an intersection with four-way stop signs (Tr1891-93); and the murder of a rival gang member. Tr1888-90. The jury also heard testimony about several severe beatings ordered

14

by petitioner (Tr1793, 1812, 1897-1916), as well as the fact that he had been convicted of manslaughter in the shooting death of Jesse Simpson. Tr1847-53, 1975.

The government also emphasized that no conditions of confinement can make a prison totally secure. Even with contact and communications restrictions, inmates find ways to communicate. Tr2487 (describing how inmates in control units send notes through the plumbing system and signal through windows in sign language). The government's closing and rebuttal arguments emphasized that no prison can be made perfectly secure. Tr2593-94, 2598, 2647-48. In rebuttal, the government further argued that petitioner was facing a life sentence on the narcotics conspiracy and CCE convictions anyway, and that without a sentence of death, his decisions to have Blunt Johnson and Charles Banks murdered would be validated as good strategic moves   possibly ineffectual, but with no downside. Tr2625-48. Future dangerousness was not the only significant aggravating factor at this sentencing hearing.

Petitioner exaggerates the value of the cross-examination of Vanyur that might have been had counsel discovered the SAMs regulations and § 3582(d). His argument hinges on his assertion that the evidence now before this Court establishes that Vanyur's testimony was false because he told the jury that it was not possible under any circumstances to curtail his ability to communicate freely with the world. Supp. Br2-5, 9-10, 12-13. Petitioner is wrong. Vanyur's testimony was about the general policies and procedures of the BOP, and how inmates are typically housed. Petitioner's Ex A. The purpose of calling him was to

15

rebut the testimony of Dr. Cunningham that the government could conceivably put petitioner in the control unit at Florence and cut him off from the entire world for the rest of his life based solely on his convictions, whether or not he ever did anything wrong while in the BOP. Petitioner has been arguing since the post-trial stage that Vanyur's testimony was false in light of the SAMs regulations, § 3582(d), and the Felipe and Yousef examples, but Judge Conlon rejected that characterization, and the characterization that Vanyur testified it was impossible for the BOP to restrict petitioner's communication privileges under any circumstances. 96CR379 R270. The Seventh Circuit agreed. *Johnson*, 223 F.3d at 672 (Vanyur's testimony "was not false. The impression that he conveyed of practice and legal policy was correct.").

Bezy's affidavits do not change this. Boiled to its essence, what Bezy says is that any manner of restrictive conditions of confinement and limitations on communications ability can be, and have been, imposed on inmates, consistent with BOP policy, for as long as necessary to prevent an inmate from posing a danger to others   once the inmate has committed acts of violence and demonstrated an intent, while incarcerated, to pose a danger to others. Supp. Br12-20. Bezy does not say that an inmate who has done nothing wrong while in the BOP can, on the authority of the BOP, be put in a control unit and cut off from the entire world for the rest of his life. Nor does Bezy contradict Vanyur's testimony (Tr2470-75) that based on BOP policies and practices, the most likely housing option for petitioner, once he entered the BOP, would be the general population of a maximum security

16

prison.[2]

In his list of the seven reasons why counsel rendered ineffective assistance (Supp Br4-5), petitioner includes the failure to find Bezy, or someone else who would swear to what Bezy has sworn to in his affidavits, and to call that person to testify following Vanyur. Number 6 on his list is "did not satisfactorily investigate the conditions of confinement which were at the time both being imposed by federal courts and administered by the BOP." Supp. Br5.  The government reads this as including both § 3582(d) and the Felipe case, and Bezy.  However, counsel did find Dr. Cunningham, who testified at length about the control unit at Florence, and the types of restriction possible there.  Further, petitioner does not state what steps counsel could have taken at the time to find someone like Bezy, given that Vanyur was a rebuttal witness.  Bezy's three affidavits, Petitioner's Exs B, C, and D, are dated November 2008 and December 2009.  Petitioner's conviction became final, and he began preparing for his collateral attack, in September 2001.  It took him seven years to find Bezy, or to think of looking for someone like him.  The government's concession of deficient performance extends only to the failure to learn of SAMs and § 3582(d).  It does not extend to the alleged failure to locate a surrebuttal witness like Bezy in less than 24 hours.  In any event, as argued above, Bezy does not impeach Vanyur because Vanyur never

---

[2]Vanyur testified that the BOP uses a point system to determine the most suitable placement of an incoming inmate, which takes into account, among other factors, the crimes of conviction and past behavior while incarcerated.  Tr2470-71.  Being a gang leader, or even a murderer, does not automatically qualify an inmate for maximum security.  Tr2471-72.  At the time Vanyur testified, there were 1,257 inmates in the BOP convicted of murder, and 520 of them were housed in less than maximum security settings.  Tr2472-73.

17

said that communications restrictions were an impossibility.

Five of the other six points concern the failure to discover the SAMs regulations, and § 3582(d) and the Felipe case, the only case in which § 3582(d) had been invoked at the time of the sentencing hearing.[3]  However, petitioner does not repeat all the arguments he made in his Initial Memorandum on SAMs, § 3582(d), and Felipe.  His argument is primarily based on Bezy's affidavits.  Supp. Br12-20.  For the reasons stated above, Bezy's affidavits do not establish that Vanyur's testimony was false or inaccurate, and for the reasons stated here, and in the government's response to the § 2255 motion, and in Judge Conlon's Memorandum Opinion and Order of March 11, 2003, petitioner was not prejudiced by counsel's failure to discover and use at the sentencing hearing the SAMs regulations, § 3582(d), and the Felipe case.

Petitioner argues that had counsel known about SAMs, they would also have discovered that at the time of the sentencing hearing, SAMs had been imposed six times, in five terrorism cases and one espionage case.  Supp. Br20-21.  However, SAMs had not been imposed on gang leaders, many of who share the same characteristics that made petitioner dangerous, *i.e.*, leadership authority within a violent criminal organization.

Petitioner argues that in another federal capital case where the jury was informed

---

[3]The seventh point is frivolous.  Petitioner says counsel were ineffective for failing to object when Vanyur testified about the law, because, as the Seventh Circuit pointed out, *Johnson*, 223 F.3d at 671, witnesses testify about facts, not law.  Supp. Br5.  There was no prejudice.  The Seventh Circuit stated in the same paragraph that when a matter of law is relevant, the judge should instruct the jury.  What came from Vanyur would not have been blocked had there been an objection.  The substance would have come from the judge, and that would not have improved petitioner's position.

about SAMs and § 3582(d), the jury found the defendant to be a future danger, but that this fact was mitigated by the BOP's ability to prevent that danger.  Supp. Br21-25.  That defendant was sentenced to life, but each case and each jury is unique.  The fact that in another case, another jury which heard evidence regarding SAMs and § 3582(d) sentenced defendant to life does not mean that there is a reasonable probability that the jury in this case, with the same information, would have done the same thing.  As Judge Conlon found (R20, 8-10), there were significant aggravating factors found by the jury other than future dangerousness, significant evidence of petitioner's extremely violent past, and very little traction with the jury on 25 mitigating factors.

Petitioner cites other court decisions in which prejudicial ineffectiveness of counsel was found (Supp. Br25-32), but again, little can be gleaned from factually dissimilar cases. *Strickland* itself was a capital case, involving multiple murders, in which defense counsel presented no evidence in mitigation at all at the sentencing hearing, other than to point out that the defendant did not have a significant criminal history.  466 U.S. at 672-675.  The Court let stand the death sentence, finding that counsel's conduct at and before the sentencing hearing was not unreasonable, and that even if it was, the defendant was not prejudiced.  *Id*., at 698-699.  The outcome of *Strickland* should tell this Court very little about what the outcome of this case should be.

Finally, petitioner argues that he has proven he is not a future danger.  Supp. Br33-35. The government's position, consistent with Judge Conlon's ruling, is that the jury would

have found future dangerousness based on the evidence that even the most secure environment available in the BOP can be circumvented, and even if future dangerousness had not been found, or had been found to be mitigated, the outcome would have been the same. The other aggravating factors, the absence of any significant consensus on any mitigating factors, and the evidence of petitioner's life of violence, would have led the jury to impose the death sentence even it had rejected future dangerousness because of SAMs and § 3582(d).

## CONCLUSION

For all these reasons, and those stated in the government's other pleadings in this case, the government respectfully requests that this Court deny the § 2255 motion.

Respectfully Submitted,

PATRICK J. FITZGERALD,
United States Attorney

By:      /s/ David E. Bindi
DAVID E. BINDI
Assistant U.S. Attorney
219 South Dearborn Street
5th Floor
Chicago, Illinois 60604
(312) 886-7643

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA    )
    )
vs.    )   No.  02 C 6998
    )   Judge William J. Hibbler
DARRYL JOHNSON    )

## CERTIFICATE OF SERVICE

David E. Bindi, an Assistant United States Attorney, hereby certifies that pursuant to Fed.R.Civ.P. 5(a), LR 5.5, and the General Order on electronic case filing, the Government's Response to Petitioner's Supplemental Briefs was served through the District Court's ECF system on the following counsel for the petitioner on May 10, 2010.

Terrence Campbell
Cotsirilos, Tighe & Streicker, Ltd.
33 North Dearborn Street
Suite 600
Chicago, Illinois 60602

Lorinda Meier Youngcourt
P.O. Box 206
Huron, Indiana 47437-0206

Respectfully Submitted,

PATRICK J. FITZGERALD,
United States Attorney

By:    /s/ David E. Bindi
    DAVID E. BINDI
    Assistant U.S. Attorney
    219 South Dearborn Street
    5th Floor
    Chicago, Illinois 60604
    (312) 886-7643

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff - Appellee - Respondent, | ) | No. 02 C 6998 |
| | ) | |
| vs. | ) | Hon. William J. Hibbler |
| | ) | |
| DARRYL JOHNSON, | ) | |
| | ) | Death Sentence Imposed |
| Defendant - Appellant - Petitioner. | ) | |

### *AGREED* MOTION TO MODIFY BRIEFING SCHEDULE

Petitioner Darryl Johnson, by his attorney, Terence H. Campbell of Cotsirilos, Tighe & Streicker, respectfully submits this *Agreed Motion* requesting an extension of time to file Petitioner's Reply in support of his claim for relief under Section 2255 to August 6, 2010.  In support of this motion, Petitioner states as follows:

1.      On March 22, 2010, pursuant to an agreed motion by the government, the Court entered a modified scheduling order that called for the government to file its response brief by May 10, 2010, and Petitioner to file his reply brief by June 28, 2010.  (Docket Entry 98).  No hearings are set, and the Court indicted in its March 22, 2010 order that it intends to rule by mail once briefing is completed.  (*Id*.).

2.      The government filed its response on May 10, 2010.

3.      Since that date, and continuing through at least the end of June, Petitioner's counsel has been occupied with several other matters which have taken up a great majority of his time, and which will demand a great deal of time in the next several weeks.  For example, counsel is representing a defendant in *United States v. Steven Fenzl*, Case No. 09 CR 376, pending here in the

Northern District of Illinois.  That case is set for trial starting on June 21, 2010, and the trial is expected to last 1-2 weeks.  Obviously, the next few weeks leading up to the trial will be substantially consumed with trial preparation.  Undersigned counsel has also spent substantial time in past several weeks on a large criminal antitrust investigation being conducted by the Department of Justice in which he represents three individual subjects of that investigation.  Counsel also has to devote some substantial time in the coming weeks to the case of *Colophon v. William J. McEnery, et al.*, Case No. 09 CH 2038, which is pending in Will County, and which has a current discovery close date of June 15, 2010.  There are several depositions scheduled between now and that date (as well as the potential for some depositions to take place shortly after the June 15 date).   Finally, undersigned counsel also has to devote time to the case of *Citadel v. Hinerfeld*, an arbitration proceeding in which he represents an individual defendant.  There are a number of depositions being taken in that case this month and next.

4.       Because of the above-referenced matters and others that have dominated undersigned counsel's time during the past month-plus – and which will continue to demand substantial time over the coming weeks – Petitioner's counsel will not be able to devote the time necessary to properly research and prepare the reply brief currently due to be filed in this case by June 28, 2010.  ***Based on the above schedules of Petitioner's counsel, we respectfully request that Petitioner be granted a five week extension, until August 6, 2010, to file his reply brief in this matter.***  Undersigned counsel believes that this short extension will be beneficial both to the Court and to the parties, particularly given the significant issues presented in this case.

5.       Petitioner's Reply brief which is the subject of this motion will complete the briefing in this case, and the matter will then be submitted to the Court for ruling.

6.     Undersigned counsel has spoken with Assistant U.S. Attorney David Bindi who is handling this matter for the government, and ***the government has no objection to this motion***.  This modification of the briefing schedule will not prejudice any party and is not requested for purposes of delay or any other improper purpose.

WHEREFORE, Petitioner Darryl Johnson respectfully requests this Court to grant his motion to modify the briefing schedule in this case, and allow Petitioner to file his Reply brief on or before August 6, 2010.

Respectfully submitted,

/s/  Terence H. Campbell
An attorney for Petitioner Darryl Johnson

Terence H. Campbell
Cotsirilos, Tighe & Streicker, Ltd.
33 North Dearborn Street, Suite 600
Chicago, Illinois  60602
(312) 263-0345

Lorinda Meier Youngcourt
Post Office Box 206
Huron, Indiana  47437-0206
(812) 849-9852

3

**CERTIFICATE OF SERVICE**

Terence H. Campbell, an attorney, hereby certifies that in accordance with hereby certifies

that in accordance with Fed.R.Crim.P. 49, LR 5.5, and the General Order on Electronic Case Filing

(ECF), the following document:

1.      Agreed Motion To Modify Briefing Schedule

was served pursuant to the District Court's ECF system as to ECF filers, including the United States

Attorney's Office.


                                        /s/  Terence H. Campbell
                                        Terence H. Campbell

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff - Appellee - Respondent, | ) | No. 02 C 6998 |
| | ) | |
| vs. | ) | Hon. William J. Hibbler |
| | ) | |
| DARRYL JOHNSON, | ) | |
| | ) | Death Sentence Imposed |
| Defendant - Appellant - Petitioner. | ) | |

**NOTICE OF MOTION**

TO:    David Bindi
       Assistant United States Attorney
       219 South Dearborn Street, Suite 500
       Chicago, Illinois  60604

       PLEASE TAKE NOTICE that on Tuesday, June 8, 2010, at 9:30 a.m., we shall appear before the Honorable William J. Hibbler, United States District Judge, in the courtroom usually occupied by him at 219 South Dearborn Street, Chicago, Illinois, and present our Agreed Motion To Modify Briefing Schedule, a copy of which accompany this Notice and are hereby served upon you.

                                        Respectfully submitted,


                                        /s/ Terence H. Campbell
                                        Attorney for defendant

                                        Terence H. Campbell
                                        Cotsirilos, Tighe & Streicker, Ltd.
                                        33 North Dearborn Street, Suite 600
                                        Chicago, Illinois  60602
                                        (312) 263-0345

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 4.0.3**
**Eastern Division**

United States of America
Plaintiff,
v.
Darryl Lamont Johnson
Defendant.

Case No.: 1:02−cv−06998
Honorable William J. Hibbler

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, June 7, 2010:

MINUTE entry before Honorable William J. Hibbler: Agreed Motion to modify briefing schedule regarding MOTION by Defendant Darryl Lamont Johnson Consideration of Brady v. Maryland and Johnson v. Mississippi Claims [88] [100] is granted. Petitioner 9;s reply due by 8/6/2010. Ruling by mail. Mailed notice (jdh)

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff - Appellee - Respondent, | ) | No. 02 C 6998 |
| | ) | |
| vs. | ) | Hon. William J. Hibbler |
| | ) | |
| DARRYL JOHNSON, | ) | |
| | ) | Death Sentence Imposed |
| Defendant - Appellant - Petitioner. | ) | |

**_AGREED_ MOTION FOR SHORT EXTENSION OF BRIEFING SCHEDULE**

Petitioner Darryl Johnson, by his attorney, Terence H. Campbell of Cotsirilos, Tighe & Streicker, respectfully submits this _Agreed Motion_ requesting a short extension of time to file Petitioner's Reply in support of his claim for relief under Section 2255 to August 16, 2010.  In support of this motion, Petitioner states as follows:

1.      Pursuant to the last scheduling order entered by the Court, Petitioner is due to file his Reply brief on August 6, 2010.  No hearings are set, and the Court indicated in its March 22, 2010 order that it intends to rule by mail once briefing is completed.  (_Id_.).

2.      In recent weeks, Petitioner's counsel has been occupied with several other matters which have taken up a majority of his time.  For example, counsel is representing the plaintiff in _Colophon v. William J. McEnery, et al._, Case No. 09 CH 2038, which is pending in Will County, and which is set for trial on August 23, 2010.  The discovery period in that case was extended to July 30, 2010, and there were a number of discovery and expert depositions taken in that case during the past few weeks which has taken up a substantial amount of counsel's time.  Undersigned counsel has also spent substantial time in past several weeks representing clients involved in a grand jury

investigation in the Northern District of Illinois.  Finally, undersigned counsel also has had to devote a good deal of time during July to the case of *Citadel v. Hinerfeld*, a complex arbitration proceeding in which he represents an individual defendant.

3.      Because of the above-referenced matters and others that have dominated undersigned counsel's time during the past several weeks, Petitioner's counsel will not be able to devote the time necessary to properly research and prepare the reply brief currently due to be filed in this case by August 6, 2010.  ***Based on the above schedule of Petitioner's counsel, we respectfully request that Petitioner be granted a 10-day extension, until August 16, 2010, to file his reply brief in this matter.***  Undersigned counsel believes that this short extension will be beneficial both to the Court and to the parties, particularly given the significant issues presented in this case.

4.      Petitioner's Reply brief which is the subject of this motion will complete the briefing in this case, and the matter will then be submitted to the Court for ruling.

5.      Undersigned counsel has spoken with Assistant U.S. Attorney David Bindi who is handling this matter for the government, and ***the government has no objection to this motion***.  This modification of the briefing schedule will not prejudice any party and is not requested for purposes of delay or any other improper purpose.

WHEREFORE, Petitioner Darryl Johnson respectfully requests this Court to grant his motion to modify the briefing schedule in this case, and allow Petitioner to file his Reply brief on or before August 16, 2010.

Respectfully submitted,


/s/  Terence H. Campbell
An attorney for Petitioner Darryl Johnson


2

Terence H. Campbell
Cotsirilos, Tighe & Streicker, Ltd.
33 North Dearborn Street, Suite 600
Chicago, Illinois  60602
(312) 263-0345

Lorinda Meier Youngcourt
Post Office Box 206
Huron, Indiana  47437-0206
(812) 849-9852

## CERTIFICATE OF SERVICE

Terence H. Campbell, an attorney, hereby certifies that in accordance with hereby certifies that in accordance with Fed.R.Crim.P. 49, LR 5.5, and the General Order on Electronic Case Filing (ECF), the following document:

1.      Agreed Motion For Short Extension of Briefing Schedule

was served pursuant to the District Court's ECF system as to ECF filers, including the United States Attorney's Office.

/s/  Terence H. Campbell
Terence H. Campbell

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff - Appellee - Respondent, | ) | No. 02 C 6998 |
| | ) | |
| vs. | ) | Hon. William J. Hibbler |
| | ) | |
| DARRYL JOHNSON, | ) | |
| | ) | Death Sentence Imposed |
| Defendant - Appellant - Petitioner. | ) | |

**NOTICE OF *AGREED* MOTION**

To:     AUSA David Bindi
        U.S. Attorney's Office
        219 S. Dearborn, 5th Floor
        Chicago, IL  60604

        PLEASE TAKE NOTICE that on Thursday, August 5, 2010, at 9:30 a.m., or as soon thereafter as counsel may be heard, we will present our Agreed Motion For Short Extension of Briefing Schedule before Judge William J. Hibbler, in the Courtroom usually occupied by him, at the Federal Courthouse located at 219 S. Dearborn, Chicago, Illinois.


                                        Respectfully submitted,


                                        /s/  Terence H. Campbell
                                        An attorney for Petitioner Darryl Johnson



Terence H. Campbell
Cotsirilos, Tighe & Streicker, Ltd.
33 North Dearborn Street, Suite 600
Chicago, Illinois  60602
(312) 263-0345

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 4.0.3**
**Eastern Division**

United States of America

                              Plaintiff,

v.                                                Case No.: 1:02–cv–06998
                                                  Honorable William J. Hibbler

Darryl Lamont Johnson

                              Defendant.

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Wednesday, August 4, 2010:

        MINUTE entry before Honorable William J. Hibbler: Petitioner's Agreed Motion
for extension of time until 8/16/2010 to file reply brief [103] is granted. Mailed notice
(jdh)

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of
Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was
generated by CM/ECF, the automated docketing system used to maintain the civil and
criminal dockets of this District. If a minute order or other document is enclosed, please
refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our
web site at *www.ilnd.uscourts.gov*.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff - Appellee - Respondent, | ) | No. 02 C 6998 |
| | ) | |
| vs. | ) | Hon. William J. Hibbler |
| | ) | |
| DARRYL JOHNSON, | ) | |
| | ) | Death Sentence Imposed |
| Defendant - Appellant - Petitioner. | ) | |

**PETITIONER'S FINAL REPLY IN SUPPORT OF
HIS INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM**

We have extensively briefed the issues now before the Court and will not attempt in this final

Reply brief to re-cover all the ground previously plowed.  We would respectfully ask the Court to

review our prior substantive briefs, including particularly (1) Petitioner's Initial Memorandum in

Support of His  §2255 Petition [Docket No. 4]; (2) Petitioner's Initial Reply in Support of His §2255

Petition [Docket No. 19]; (3) Petitioner's Response to the Government's Motion to Reconsider in

Light of *Massaro v. United States* [Docket No. 29]; (4) Petitioner's Supplement to His Ineffective

Assistance of Counsel Claim [Docket No. 39]; (5) Petitioner's Supplemental Brief in Support of His

Ineffective Assistance of Counsel Claim [Docket No. 85]; and (6) Darryl Johnson's Motion for

Consideration of His *Brady v. Maryland* and *Johnson v. Mississippi* Claims and Supplemental

Memorandum in Support [Docket No. 88], in coming to its decision.  Each of these prior

submissions presents substantial facts, law and argument in support of our requests for relief.  In this

final submission, we will attempt, primarily, to respond to the points made in the government's most

recent response brief.  By doing so, we are not in any way waiving or abandoning any part of our

prior arguments, all of which are squarely before the Court at this time.

## ARGUMENT

**I.      Darryl Johnson's Ineffective Assistance of Counsel Claim**

As the Court is well aware, the government has conceded the first prong of *Strickland – i.e.*, that Mr. Johnson's trial counsel provided deficient performance by failing to investigate, research and present evidence about the statues, regulations, and case law which would have directly impeached government witness Warden John Vanyur, who testified about "future dangerousness" at Mr. Johnson's penalty-phase hearing.  The government, however, persists in its position that Petitioner has not satisfied the second prong of *Strickland*, a showing "prejudice" from the deficient performance, which requires Petitioner to establish merely a "***reasonable probability***" that, absent counsel's errors, the outcome of the sentencing hearing may have been different.  *Strickland v. Washington*, 466 U.S. 668 (1984).  As detailed both in this brief and in our prior submissions, Mr. Johnson has clearly established prejudice under *Strickland* and its progeny, and relief, in the form of a new sentencing hearing, is plainly required.

A.      The Government's Factual Admission That Warden Vanyur's Testimony Was Incomplete and Misleading, By Itself, Establishes Prejudice In This Context

After the Seventh Circuit Court of Appeals affirmed Mr. Johnson's convictions and death sentence on direct appeal, the government finally conceded that Warden Vanyur's testimony was "incomplete" and that based on the evidence it heard during the sentencing proceedings, "the jury may have held the mistaken impression that no legal authority existed to limit [defendant's] communications and contacts while in prison in order to curtail his future dangerousness. ... As we have acknowledged, there is in fact such authority [to limit petitioner's communications and contacts while in prison in order to curtail his future dangerousness]."  Govt. Opp. to Cert. at 21, 29 (attached

2

as Exhibit A to Johnson's Initial Memorandum in support of his § 2255 Motion [Docket No. 4]).

Thus, the government acknowledges that Vanyur's testimony regarding BOP's ability to limit Mr.

Johnson's contacts and communications while in prison – testimony which went to the heart of the

penalty phase hearing (*i.e.*, Darryl Johnson's supposed future dangerousness) and was the centerpiece

of the prosecution's closing arguments to the jury – was misleading and created a false impression.

This is not in dispute.

Boiled down to its essence, the government's argument at sentencing was, "the BOP cannot,

and will not, house Darryl Johnson under strict conditions of confinement to eliminate the risk of

him being a future danger, so he must be executed."  This was a false argument based on admittedly

misleading testimony from Warden Vanyur.  That Warden Vanyur's testimony and the government's

argument based on it were false and misleading is not mere argument or speculation; it is a fact.  We

now know, *as an undisputed factual matter*, that the BOP can, and did at the time of Darryl

Johnson's sentencing hearing, house inmates under precisely the type of strict conditions of

confinement that the defense proposed, and for as long as deemed necessary to ensure safety both

within and outside the prison – exactly what Warden Vanyur testified was not possible or even legal.

It is difficult to fathom how – in light of (1) the undeniable importance of the "future

dangerousness" factor, both as a general matter and more particularly in the government's penalty

phase presentation and argument in *this case*; and (2) the applicable legal standard, *i.e.*, a "reasonable

probability that the result might have been different – the government can maintain that *Strickland*

prejudice has not been established.  Prejudice would be apparent under these circumstances in a run-

of-the-mill criminal case where an error impacting an issue central to the prosecution's case was

conceded, but it is even more so in a case like this one involving imposition of the death penalty,

where it takes just **one juror** to stop a death sentence from being imposed.  *United States v. Johnson*, 223 F.3d 665, 670 (7th Cir. 2000).

The government's concession that the jury may well have been misled by Warden Vanyur's testimony on the possible conditions of confinement and future dangerousness, by itself, establishes *Strickland* prejudice under the facts of this case.  For this plainly evident reason, as well as those discussed in more detail below, relief is warranted.

> B.  *Strickland* And Its Progeny Require Petitioner to Establish Merely a "Reasonable Probability" That The Outcome May Have Been Different

As the Supreme Court has made abundantly clear, in order to establish prejudice, it is required only that Petitioner establish that, absent counsel's errors, there is a "**reasonable probability**" that the outcome of the sentencing hearing may have been different.  *Strickland*, 466 U.S. 668; *United States v. Cronic*, 466 U.S. 648 (1984)*; Strickler v. Greene*, 527 U.S. 263 (1999); *Williams v. Taylor*, 529 U.S. 362 (2000); *Wiggins v. Smith*, 539 U.S. 510 (2003); *Rompilla v. Beard*, 545 U.S. 374 (2005).  Moreover, those decisions make clear if there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting its verdict, "then we **must** find prejudice."  *Strickland*, 466 U.S. at 695 (emphasis added).  And notably, the Supreme Court has made clear that *a "reasonable probability" is a lesser burden than a preponderance standard. Strickland* at 693 ("a defendant need not show that counsel's deficient conduct more likely than not altered the outcome of the trial."); *see also Williams,* 529 U.S. at 405-06 (2000) (O'Connor, J., concurring) (state court rejection of ineffectiveness claim on grounds that prisoner failed to establish by "a preponderance of the evidence" that the outcome would have differed would be contrary to clearly established precedent).

1.      "Future Dangerousness" Is The Most Significant Factor For Juries Deciding Death Penalty Cases, And It Was Clearly The Most Significant Factor Argued At Darryl Johnson's Penalty Phase Hearing

Viewed under the light of the applicable legal standard, the government's position cannot withstand scrutiny.  For the most part, the government's argument against a finding of prejudice attempts simply to ignore the unmistakable fact that "future dangerousness" is **the most significant** factor for jurors deciding a death penalty case.  Again, this is not opinion or argument, it is a *fact* established beyond peradventure by multiple empirical and unrebutted research studies over at least the past two decades.  *See* Marla Sandys, Ph.D. et al., *Aggravation and Mitigation: Findings and Implications*, Journal of Psychiatry & Law, 37/Summer-Fall 2009, 189 at 215-216 ("the research indicated that the most persuasive aggravator is juror perceptions of the defendant's future dangerousness; ... [T]he issue of future dangerousness is the crux of a juror's preference for death."); John H. Blume, Stephen P. Garvey, and Sheri Lynn Johnson, *Future Dangerousness in Capital Cases:  Always "At Issue"*, 86 Cornell L. Rev. 397, 398 (2001) (future dangerousness is central issue for most jurors, regardless of whether prosecutor argues it explicitly); Sally Costanzo and Mark Costanzo, *Life or Death Decisions: An Analysis of Capital Jury Decision Under the Special Issues Sentencing Framework*, 18 Law & Hum. Behav. 151, 160 (1994) ("Nearly all jurors also offered the observation that the penalty decision hinged on the issue of whether the defendant will pose a continuing threat to society") *id*. at 168 ("[F]uture dangerousness plays a prominent, if not central role * * *.  Jurors clearly perceived the penalty decision as hinging on this issue."); Stephen P. Garvey, *Aggravation and Mitigation in Capital Cases: What Do Jurors Think?*, 98 Colum. L. Rev. 1538, 1559 (1998) (future dangerousness evidence is highly aggravating and 60% of jurors interviewed were more likely to vote for death if they believed the defendant might be dangerous in

5

the future); Eisenberg & Wells, *Deadly Confusion: Juror Instructions in Capital Cases*, 79 Cornell

L. Rev. 1, 7 (1992) ("[O]ver three-quarters fo the jurors believe that the evidence in their case

established that the defendant would be dangerous in the future.  And the more the jurors agree on

this fact, the more likely they are to impose a death sentence."); James W. Marquart et al., *Gazing*

*Into the Crystal Ball: Can Jurors Accurately Predict Dangerousness in Capital Cases?*, 23 L.& Soc.

Rev. 449, 463 (1989) ("[D]ata show[s] that the decision to give life versus death in Texas rests

squarely on Question 2 – future dangerousness.").  *See generally, Skipper v. South Carolina*, 476

U.S. 1, 5 n.1 (1986) (discussing importance of ensuring that the jury understands the actual facts to

assess the "prosecutor's closing argument, which urged the jury to return a sentence of death in part

because petitioner could not be trusted to behave if he were simply returned to prison").

Indeed, based on a recent study of jury findings and verdicts in 72 federal death-penalty cases

over the last 13 years, ***82.4 percent of those defendants who were found to constitute a future***

***danger were sentenced to death, while 81.6 percent of those who were not so found were not***

***sentenced to death***.  Mark D. Cunningham, Jon R. Sorensen, Thomas J. Reidy, *Capital Jury*

*Decision-Making: The Limitations of Predictions of Future Violence*, 15 Psychology, Public Policy

& Law 223, 234-35, 244-45 & Table 1 (2009).  Even the government is compelled reluctantly to

admit that "future dangerousness played an important role in the government's argument at the

sentencing hearing."  Govt. Resp. at 14 [Docket No. 99].  There is no doubt that future

dangerousness – the factor on which the government concedes Mr. Johnson's counsel offered

deficient assistance – is the most critical factor in a death penalty case.

Moreover, as we have argued in prior filings, one need only look to the government's closing

arguments to see how much it was stressed by the prosecutors in order to gauge the importance of

"future dangerousness" to the government's penalty case. (*See* Pet. Supp. Brief on *Brady* and *Johnson* Claims at 10-11 [Docket No. 88] (quoting Govt. closing arguments); Pet. Supp. Brief on IAC at 11-12 [Docket No. 85] (same). The fact that the government so forcefully argued future dangerousness in its sentencing summation as the basis for imposing a death sentence on Darryl Johnson is highly probative of prejudice. *See Johnson v. Mississippi*, 486 U.S. 578, 590 & n.8 (1988) (agreeing with lower court that improper reliance on aggravating evidence of prior conviction was not harmless, since the district attorney argued this particular aggravating circumstance as a reason to impose the death penalty). All of this further cements the conclusion that there is a "reasonable probability" that the result may have been different, absent counsel's deficient performance and prejudice has been established.

<div align="center">

2.      The Government Attempts to Turn The Applicable Legal Standard
On Its Head

</div>

The government attempts to turn this legal standard on its head, and its argument on the "prejudice" prong of Johnson's ineffective assistance claim seems to suggest a legal standard that is exactly the opposite of what the Supreme Court has, now repeatedly, emphasized. That is, the question is ***not***, as the government's argument seems to suggest, whether there is a reasonable probability that the outcome might have been the ***same*** despite counsel's errors. Rather, relief *must* be granted if Petitioner can establish that, absent counsel's errors, there is a ***reasonable probability*** that the outcome of the sentencing hearing may have been ***different***. *Strickland*, 466 U.S. 668; *Cronic*, 466 U.S. 648; *Strickler*, 527 U.S. 263; *Williams*, 529 U.S. 362; *Wiggins*, 539 U.S. 510; *Rompilla*; 545 U.S. 374. Thus, the government argues, *inter alia*, that the Court should reject Petitioner's claim because "there were significant aggravating factors found by the jury other than

<div align="center">

7

</div>

future dangerousness." Govt. Resp. at 19 [Docket No. 99]. From this, the government then leaps to the conclusion that

> the jury would have found future dangerousness based on the evidence that even the most secure environment available in the BOP can be circumvented, and even if future dangerousness had not been found, or had been found to be mitigated, the outcome would have been the same. The other aggravating factors, the absence of any significant consensus on any mitigating factors, and the evidence of petitioner's life of violence, would have led the jury to impose the death sentence even [if] it had rejected future dangerousness because of SAMs and §3582(d).

Govt. Resp. at 20 [Docket No. 99]. This is rank speculation, pure and simple. It certainly does nothing to undercut the claim of prejudice under the correct legal standard governing Darryl Johnson's ineffective assistance claim.

Indeed, in order for the government to prevail here, it must prove that the misleading testimony and false argument by government counsel was harmless ***beyond a reasonable doubt***, for that is the standard on a constitutional claim such as we have here. *See Satterwhite v. Texas*, 486 U.S. 249, 257 (1988) (applying constitutional harmless-error rule of *Chapman v. California*, 386 U.S. 18 (1967), to state capital sentencing proceedings); *see also* 18 U.S.C. §3595(c)(2) (requiring reversal of death sentence unless government proves on appeal that jury's erroneous special finding of an aggravating factor was harmless beyond a reasonable doubt). And, since, as to a death sentence, potential impact on ***one juror's vote*** establishes harm (or "prejudice"), the issue is whether the erroneous consideration of Darryl Johnson's future dangerousness may have influenced even a ***single juror*** in favor of death.[1] *See, e.g., Wiggins*, 539 U.S. at 537; *Johnson*, 223 F.3d at 670. There

---

[1] This must also be viewed in light of the fact that the jury deliberations in Darryl Johnson's penalty phase case were lengthy – more than 13 hours (R.208) which indicates the decision was reached neither easily nor readily. In that context, any shift in the evidence could have made a difference, at least to one juror.

can be no doubt that there is a reasonable probability at least one juror would have been dissuaded from voting for death had defense counsel not rendered the deficient performance on the central issue at sentencing, as the government concedes they did.[2]

        3.        Whether Vanyur's Testimony Is Determined To Be "False," "Misleading," Or To Have Created A "False Impression," Relief Is Required

As noted above, the government has conceded that the testimony of Warden John Vanyur, who testified for the government in the penalty-phase hearing, was "incomplete" and may well have "left the jury with a mistaken impression" of BOP policy and practices. *See* Ex. A to Johnson's Initial Memo [Docket No. 4], Govt. Opp. to *cert.* at 14, 20, 21, 28-29. Indeed, directly contrary to the distinct impression conveyed by Warden Vanyur, there is also now no dispute that the BOP has both the legal authority and the prison facilities to house inmates under strict conditions of confinement – *not to mention the pattern and practice of doing so* – "for as long as the BOP deems it necessary to ensure the security and safety of either prison staff, other inmates, or the public (*i.e.* to reduce or eliminate the inmate's future dangerousness)." Pet. Supp. Brief on IAC, Ex. D, Bezy Supp. Affid. at ¶18 [Docket No. 85].

---

[2] The government's argument that there were other aggravating factors loses even further force when one considers other factually more severe cases in which prejudice based on ineffective assistance of counsel at a penalty phase hearing was found. *Hall v. Washington*, 106 F.3d 742, 752 (7th Cir. 1997) (granting habeas relief based on ineffective assistance for failing to investigate and proffer certain mitigating evidence, which left the court with "a significantly different view of the balance between aggravating and mitigating circumstances when it [decided to impose the death penalty]"; the court found *Strickland* prejudice [*i.e.* a reasonable probability that the result may have been different] despite the despite the heinousness of the crime); *Lockett v. Anderson*, 230 F.3d 695 (5th Cir. 2000) (habeas relief granted based on ineffective assistance of counsel for failing to investigate and present certain mitigation evidence; finding prejudice prong of *Strickland* met notwithstanding "the inherent unforgivable viciousness of this murder."); *Anderson v. Sirmons*, 476 F.3d 1131 (10th Cir. 2007) (relief granted under *Strickland* for counsel's failure to present certain mitigation evidence, despite multiple and significant aggravating factors in triple murder, also involving arson and burglary).

The government takes issue with our statements that Vanyur's testimony regarding the BOP practices and ability to confine inmates under strict conditions of confinement for as long as necessary was "false." Govt. Resp. at 16-18. We believe it is fair to say that we have now proven that Warden Vanyur's testimony was false, but it is of no consequence because proof of "perjury" is not a prerequisite for the relief sought. Under the law, whether Vanyur's testimony is determined to be "false" (as we believe we have shown, or just "misleading" having created a "false impression" (as the government concedes), it makes no difference.

First, it is fairly clear now that Vanyur's testimony on these issues was, in fact, false. Indeed, that is not Petitioner's counsel making the claim, it is former BOP Warden Bezy who specifically described significant pieces of Vanyur's testimony as "false." *See* Pet. Supp. Brief on IAC, Ex. D, Bezy Supp. Affid. at ¶20 [Docket No. 85] ("the suggestion that Mr. Johnson was not eligible for placement at ADX immediately after sentencing, if deemed necessary and appropriate, is false and is belied by ADX's history. Similarly, the notion that the BOP is somehow powerless to prohibit specific inmates from committing serious crimes while incarcerated is also false."); *id*. at ¶27 ("Dr. Vanyur's assertion that it would be "extremely difficult, at best" for officials at a BOP facility such as USP-Marion to separate Mr. Johnson from other Gangster Disciples is simply false."). Indeed, this Court has already found that Mr. Bezy's affidavit "outlines a pattern of evidence that appears to contradict much of what the government's expert testified to" and "provides a factual foundation for Johnson's claim that the government expert's testimony misled the jury regarding the BOP's ability to confine him immediately and indefinitely while at the same time minimizing the risk that Johnson would continue to be a danger to society." (Mem. Opin. and Order dated May 15, 2009 at 6-7 [Docket No. 71]).

Regardless, the government's sophisitc "this was not technically perjury" defense is irrelevant to the issue presented. Constitutional error occurs not just based on perjured or false testimony, but with testimony that creates a false impression, even if technically accurate. *Napue v. Illinois*, 360 U.S. 264 (1959) (failing to correct testimony that creates a false impression, though not perjured, violates due process). ***Due process is equally offended by direct statements which are untrue and the eliciting of testimony which "taken as a whole" gives the jury a "false impression."*** *Alcorta v. Texas*, 355 U.S. 28, 31 (1957) (emphasis added). This is true even where the particular prosecutor acts in the utmost good faith and/or does not know that the testimony being presented is false or misleading. *See Giglio*, 405 U.S. at 153-54. Even under the most generous reading of Warden Vanyur's testimony, relief is required here.

> 4.      The Government's Attempts to Avoid The Implications of Warden Vanyur's
> <u>Misleading Testimony Are Unpersuasive</u>

The government next tries to dismiss the relevance of the *Anthony Ayeni Jones* case discussed in our opening brief with the quip, "each case and each jury is unique." Govt. Resp. at 19 [Docket No. 99]. While true as a metaphysical point, it begs the question, and the government offers no substantive discussion nor attempt to distinguish the *Jones* case in the context of the issue presented here. That failure is telling.

In our lead brief, we discussed at some length the striking factual similarities between Anthony Ayeni Jones' case and Darryl Johnson's case. Both were gang leaders. Both had been convicted of ordering acts of violence, including murder. Indeed, Jones' case presented facts regarding his future dangerousness that were more alarming than Darryl Johnson's because Jones, unlike Darryl Johnson, had actually ordered violence from inside a BOP prison prior to his trial and

11

sentencing hearing.  *See* Pet. Supp. Brief on IAC at 21-25 [Docket No. 85].

The central point bears repeating:  the lone significant difference between the findings of the jury in Jones' case versus that of the jury in Johnson's case was that, after hearing accurate and complete information about the available conditions of confinement, seven jurors in *Jones* found that:

> ***Any concern respecting future dangerousness of Anthony Jones is significantly reduced since the federal [BOP] is empowered to classify a prisoner serving a life sentence without possibility of release to the highest security level federal prison, under conditions of confinement that eliminate any reasonable probability that the prisoner will be a continuing and serious threat to society***.

Init. Memo in Support of §2255 Pet., Ex. D, Jones Verdict forms at 7, (mitigating factor #3) [Docket No. 4] (emphasis added).  By contrast, after hearing Warden Vanyur's testimony, *zero jurors in Johnson's case found this mitigating factor*, and consequently he was sentenced to death.  *Id*., Ex. C, Johnson Special Verdict forms at Part IV, ques. 4 (Blunt Johnson murder); Part IV, ques. 5 (Charles Banks murder).

In light of these facts, the government's attempt to cavalierly dismiss the importance of the *Anthony Ayeni Jones* case to this Court's prejudice analysis by saying "every case is unique" logically means that no argument based on other similar cases has any value.  This, of course, is absurd.  The use of precedent is one of the cornerstones of the rule of law.  *See generally, Gonzales v. Carhart*, 550 U.S. 124, 190-91 (2007) ("[T]he very concept of the rule of law underlying our own Constitution requires such continuity over time that a respect for precedent is, by definition, indispensable.").  The *Anthony Ayeni Jones* case provides compelling evidence of *Strickland* prejudice in Darryl Johnson's case.

Next, the government makes much of the fact that the jury did not find any mitigating factors "unanimously."  Govt. Resp. at 12, 14 [Docket No. 99].  This is yet another misguided argument for at least two reasons.  First, it only takes a single juror to stop a death sentence.  *Wiggins*, 539 U.S. at 537; *Emerson v. Gramley*, 91 F.3d 898, 907 (7th Cir. 1996); 18 U.S.C. §3593(e) (requiring unanimous vote of jury to impose death sentence).  Thus, unanimity may be a very telling fact with respect to *aggravating factors*, like future dangerousness, but because it only takes one juror to stop a death sentence, unanimity (or the lack thereof) offers little if any relevant information in the context of *mitigating factors*.  As this Court has already found in a prior decision in this case,

> In order to succeed on this claim, Johnson must establish that but for counsel's failure, there is a reasonable probability that a jury may have declined to reject Johnson's proposed finding on future dangerousness and reached a different outcome in its decision to sentence him to death. *Eckstein v. Kingston*, 460 F.3d 844, 848-50 (7th Cir. 2006).  And because 'it takes only one juror to nix a death sentence,' *United States v. Johnson*, 223 F.3d at 670, that threshold is even lower here.

Ex. B to Pet. Supp. Brief on IAC, Memorandum Opin. and Order dated May 15, 2009 at 6 (emphasis added).

Second, on the single most important factor to juries considering whether or not to impose death – *i.e.* future dangerousness – the jury was given admittedly misleading information by Warden Vanyur, and the government argued that misleading evidence most pointedly to the jury in its closing arguments.  The error of Vanyur's admittedly misleading testimony was compounded by the vehemence of the prosecutors' false arguments based on that misleading (if not false) testimony.

## CONCLUSION

For all the reasons set forth above, as well as those contained in our prior pleadings with the Court, Petitioner Darryl Lamont Johnson respectfully requests that the Court grant Johnson's §2255 petition based on a finding of ineffective assistance of counsel (as well as on the other grounds raised in his Petition), vacate his sentence, order a new sentencing hearing, and grant whatever other relief it deems just and proper.

Respectfully submitted,

/s/ Terence H. Campbell
An attorney for Defendant Darryl Johnson

Terence H. Campbell                        Lorinda Meier Youngcourt
Cotsirilos, Tighe & Streicker, Ltd.        Post Office Box 206
33 North Dearborn Street, Suite 600        Huron, IN 47437-0206
Chicago, Illinois  60602                   (812)849-9852
(312) 263-0345

*Counsel for Petitioner Darryl Johnson*

14

## **CERTIFICATE OF SERVICE**

Terence H. Campbell, an attorney, hereby certifies that in accordance with hereby certifies that in accordance with Fed.R.Crim.P. 49, LR 5.5, and the General Order on Electronic Case Filing (ECF), the following document:

1.      Petitioner's Final Reply in Support of His Ineffective Assistance of Counsel Claim was served pursuant to the District Court's ECF system as to ECF filers, including the United States Attorney's Office.

/s/  Terence H. Campbell
Terence H. Campbell

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff – Appellee – Respondent, | ) | |
| | ) | No. 02 C 6998 |
| vs. | ) | |
| | ) | Hon. William J. Hibbler |
| DARRYL JOHNSON | ) | |
| | ) | Death Sentence Imposed |
| Defendant – Appellant – Petitioner. | ) | |

**DARRYL JOHNSON'S FINAL REPLY IN SUPPORT OF HIS**
***BRADY v. MARYLAND* AND *JOHNSON v. MISSISSIPPI* CLAIMS**

Defendant Darryl Johnson, by his attorneys, Terence H. Campbell of Cotsirilos, Tighe &

Streicker, and Lorinda Meier Youngcourt, respectfully submits this Reply in Support of His

*Brady v. Maryland* and *Johnson v. Mississippi* Claims.

**I.      Pursuant to Rule 54(b), this Court may, at any time prior to entry of final judgment, reconsider the prior ruling on Johnson's *Brady* and *Johnson* claims**

The government questions, in an "aside," whether this Court has the authority to revisit

the *Brady* and *Johnson* claims.  Govt. Resp. at 1 [Docket No. 99].  However, it is unclear where

the government comes out on this issue, as it then admits that "a partial final judgment is final as

to the claims it adjudicates "only if the court expressly determines that there is no just reason for

delay."  Govt. Resp. at 2, citing Fed.R.Civ.P. 54(b).  The government further acknowledges "[i]f

a partial judgment is not final, it 'may be revised at any time before the entry of a judgment

adjudicating all the claims and all the parties' rights and liabilities.'"  *Id*. (again citing Rule

54(b)).  The government concludes its aside by stating,

1

> Judge Conlon's memorandum opinion and order does not contain
> an express statement that there is no just reason to delay an appeal
> from the claims she adjudicated. ***The partial judgment is
> therefore not a final judgment as to those claims.***

Govt. Resp. at 2 [Docket No. 99] (emphasis added).  Thus, it seems that the government agrees

with Petitioner that his *Brady* and *Johnson* claims **can** be revisited by this Court, pursuant to the

express language of Rule 54(b).

To the extent that the government's argument is that Petitioner's *Brady* and *Johnson*

claims are *not* reviewable by this Court because Judge Conlon previously denied those claims

(Govt. Resp. at 2 [Docket No.99]), that argument is without merit.  Because that judgment was

not a "final judgment" on those claims – a fact acknowledged by the government – this Court

clearly retains the authority to revisit those claims.

Under the Federal Rules of Civil Procedure, judgment on a legal action involving

multiple claims is governed by Rule 54(b), which states as follows:

> **(b) Judgment on Multiple Claims of Involving Multiple Parties.**  When an
> action presents more than one claim for relief – whether as a claim, counterclaim,
> or third-party claim – or when multiple parties are involved, the court may direct
> entry of a final judgment as to one or more, but fewer than all, claims or parties
> *only if the court expressly determines that there is no just reason for delay.*
> *Otherwise, any order or other decision, however designated, that adjudicates*
> *fewer than all the claims* or the rights and liabilities of fewer than all the parties
> *does not end the action as to any of the claims* or parties *and may be revised at*
> *any time before the entry of a judgment adjudicating all the claims* and all the
> parties' rights and liabilities.

Fed.R.Civ.P. 54(b) (emphasis added).

Under the plain text of Rule 54(b), a district court *may* direct entry of a final judgment as

to some, but not all, of the claims raised by an action "only if the court expressly determines that

there is no just reason for delay."  Rule 54(b).  The Seventh Circuit has therefore repeatedly

stated that in order for a partial judgment to be considered final, the judgment must literally

2

contain an express statement that states that there is "no just reason for delay" on those adjudicated claims:

> [A] partial final judgment under Rule 54(b) must contain "an express determination that there is no just reason for delay." The operation of Rule 54(b) is mechanical, and if the judgment does not contain an express statement, it is not final.

*Granack v. Continental Casualty Co.*, 977 F.2d 1143, 1144-1145 (7th Cir. 1992) (citation omitted).

In light of the mandates of both Rule 54(b) and the Seventh Circuit, it is clear that the judgment entered on March 11, 2003, by Judge Conlon was not a partial final judgment because it did not comply with the "express determination" requirement of Rule 54(b). The March 11, 2003 judgment stated:

> IT IS HEREBY ORDERED AND ADJUDGED that the § 2255 petition is denied with prejudice as to Grounds I-V and VII-VIII and without prejudice as to Ground VI.

Judgment [Docket No. 21]. *See The Construction Indus. Retirement Fund of Rockford v. Kasper Trucking, Inc.*, 10 F.3d 465, 468 (7th Cir. 1993) ("[W]e insist, in the language of the rule, that the determination and direction be 'express,' so that everyone knows exactly which mid-case decision are appealable and which are not.").

Moreover, if there were any doubt, the Seventh Circuit has counseled that it is particularly appropriate for a district court to exercise its inherent authority to reopen and reconsider a prior order when, as is the case here, there has been a significant change in the factual record since the initial submission of the issue to the court. *See Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) ("A further basis for a motion

3

to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court.") (citation omitted).

That condition has been met here. As this Court stated in its May 15, 2009 ruling on Mr. Johnson's motion for discovery:

> The affidavit of the BOP Warden [Mark A. Bezy] provides a factual foundation for Johnson's claim that the government expert's testimony misled the jury regarding the BOP's ability to confine him immediately and indefinitely while at the same time minimizing the risk that Johnson would continue to be a danger to society. Moreover, the government has produced some information regarding other inmates held in strict conditions of confinement, also which seems to contradict the testimony of the government's expert and which could lend credibility to the testimony Johnson's expert might provide.

Opinion & Order at 7 [Doc. No. 71].

For all these reasons, Petitioner's *Brady* and *Johnson* claims are properly before the Court, and consideration of them in light of the current law and facts of record is appropriate.

## II. The suppressed evidence is impeaching under Brady

The government argues that all of the evidence presented in these proceedings concerning Warden Vanyur testimony and future dangerousness is merely cumulative to that available to him in his post-trial and direct appeal. Govt. Resp. at 3 [Docket No. 99]. The government goes on to claim that inmates held under precisely the type of strict conditions of confinement Johnson's trial counsel proposed, but which Vanyur claimed were not possible, do nothing to impeach Vanyur's testimony if the inmates so housed were put there for disciplinary reasons. Govt. Resp. at 4-7 [Docket No. 99]. The government further offers that inmates who were ordered to be housed under such strict conditions directly by the sentencing court were a matter

of public record, and therefore cannot be *Brady* material.  *Id*.  Each of these arguments is without

merit.

### A.      Inmates held in highly restrictive conditions for disciplinary reasons

The government suggests that because BOP inmates Silverstein and Fountain committed

crimes while incarcerated, the fact that they were each placed into highly restrictive conditions of

confinement following their conviction and sentence would not impeach Vanyur's testimony.

The government is mistaken.  Both Vanyur and the government overlook the safety and security

policy reasons for such terms of incarceration.  Silverstein and Fountain were placed in highly

restrictive conditions of confinement, at least in part, to protect other inmates and staff. Tr. 2466.

Similarly, Felipe was so placed to protect others on the street that he might have ordered killed.

In both situations, the additional punishment suffered by the inmate goes hand in hand with the

goal of insuring the safety of other inmates, staff, and the people on the streets.

The BOP's ability to implement and maintain conditions of confinement necessary to

ensure the safety of others was the point of Dr. Cunningham's testimony, while the government's

goal with Vanyur's testimony and its arguments at the penalty phase was to convince the jury

that the BOP was simply powerless to do what was necessary to maintain the safety and security

of others, both inside and outside the prison walls.  Thus, the government repeatedly emphasized

Warden Vanyur's now discredited testimony in its closing arguments, stating, *inter alia*:

> [A]s long as the defendant has the ability to convey his orders to his followers,
> either on the street or in prison with him, nobody is safe; no witness, no witness's
> family, anybody who stands in his way, they are not safe.  It doesn't matter where
> he is locked up.
>                                      * * *

5

[I]nmates with no outdates, those inmates that are facing life, like the defendant, they are the most dangerous, they have nothing to lose.  And that's why people like Mr. Johnson poses [sic] this threat.  Tr. 2593.

Mr. Johnson, no matter where he is, no matter when he is, is a future danger, he poses it to society as a whole, because through his own actions, his own words, and use your common
sense, that no one is safe from the defendant. Tr. 2594.

[A]fter he is locked up when we as a society should feel safe, he is out there ordering more people killed. That is the type of evidence that is here. And that is why no one is safe as long as the defendant, Darryl Lamont Johnson, is allowed to live. Tr. 2598.

[T]he federal regulations do not allow somebody to go directly to the control unit. . . .The control unit at ADX Florence, you know he will not be going there.  Tr. 2646.

And is there any system, any prison system under the laws of our Nation that can stop the violence when your weapon is only one thing, your voice? That is the weapon that the defendant uses. Tr. 2647.

The evidence in this case shows beyond any reasonable doubt that there is a substantial danger that another witness or a witness's family member will be dead, because the defendant is a danger in prison. As long as he is alive he cannot be stopped from communicating, and that is all he needs. He does not need a weapon . . . all he needs is a telephone.

* * *

There is no innocent bystander who is safe as long as the defendant can communicate with the outside world.  No prison system can stop him.  Tr. 2647-48.

The government correctly points out that "no law authorizes the BOP to commit a prisoner to a control unit for life, refusing to reassess risk periodically."  (Govt. Resp. at 7 [Docket No. 99]).  However, the government uses this fact to shoot down an argument never advanced by Johnson.  Contrary to the government's suggestion, Darryl Johnson's argument has never been that these strict conditions can be ordered "permanently," never to be revisited no matter how much time passes or what facts or conditions change.  Rather, Johnson's argument is now, and always has been, that the BOP has the power and the facilities to order and implement

6

highly restrictive conditions of confinement "*for as long as the BOP deems it necessary* to ensure the security and safety or either prison staff other inmates, or the public (*i.e.* to reduce or eliminate the inmates' future dangerousness)."  Pet. Mot. For Consideration of *Brady* and *Johnson* Claims, Ex. C, Bezy Affid. at ¶¶ 12, 14; Ex. D, Bezy Supp. Affid. at ¶¶ 18, 22, 25, 34 [Docket No. 88] (emphasis added).  Johnson's longstanding position on this point has now been proven correct, and indisputably so, by former Warden Bezy's affidavits.

### B.      Warden Vanyur's Testimony About "Specific Instances" In the BOP

The government next says, Vanyur "was called to testify about general policies and procedures, not specific instances."  Govt. Resp. at 5 [Docket No. 99].  This assertion both misstates Vanyur's testimony, and is largely irrelevant to the issue presented by Johnson.

First, Warden Vanyur *did* testify about any number of "specific instances" involving various gang-affiliated inmates with convictions similar to Johnson, as well as about "specific instances" of mayhem allegedly initiated by certain prisoners.  He spoke specifically about the head of the Mexican mafia, the head of the Mexicana Mi gang, and the head of the Aryan Brotherhood, stating that they were not at ADX because they were gang leaders but because of "violent or escape-prone behavior" they engaged in after conviction and while incarcerated.  Tr. 2468.  Further, Vanyur offered a very fact-specific opinion that Darryl Johnson eventually – indeed in the near future -- would be housed in general population where "he would have open and frequent contact unrestrained with staff and inmates."  Tr. 2475.  He specifically opined that while in general population "it would be virtually impossible" to have Johnson "separate[d] from other Gangster Disciples."  Tr. 2475.  Vanyur testified that Johnson "would have a great deal of open contact visiting with his family, probably in excess of twelve visits a month" and he "would

have virtually unlimited phone access" and "unlimited correspondence privileges." Tr. 2477.
"The only time we would limit his telephone access or his visiting privileges is if [he] actually tried to violate the rules in the process of a visit or in the process of a phone call." Tr. 2478 In short, Warden Vanyur told the jury in very specific terms that Darryl Johnson would have the unfettered ability to use his "weapon of choice," his voice, to communicate within the prison and to the outside world. All of this testimony was a means to drive home the points that "[No one] is safe as long as [Johnson] can communicate with the outside world. No prison system can stop him." Tr. At 2647-48.

According to Vanyur, the overwhelming majority of convicted murderers in the BOP were housed in "open population" where they have "constant contact, unrestrained with other staff and inmates" and "virtually unlimited access to telephone and a great deal of open visiting contact." Tr. 2472. This type of relatively liberal confinement, Vanyur said, is where Darryl Johnson was inevitably headed.

Vanyur testified that Johnson did "not fit the profile for a person to be assigned to the ADX." Tr. 2483, citing 28 CFR §541. Further, even if Johnson made his way to the ADX control unit, Vanyur testified he would "never [be] placed in a control unit on a permanent status" and even while he was there, he would have at least "one 15 minute phone call per month," "up to five visits per month," and "virtually unlimited correspondence with the outside world." Tr. 2485. Further, Vanyur testified that, given his convictions and history, Darryl Johnson almost certainly would be housed in general population facility, where "he would have open and frequent contact unrestrained with staff and inmates" and it would be a virtual certainty that he would be housed with fellow Black Gangster Disciples. Tr. 2475. And even if he went

to ADX temporarily, Vanyur said, Johnson would "have contact with staff on a frequent and daily basis. They're constantly coming in contact with staff," implying that great danger existed regardless of the facility, and the BOP had no precautions or procedures to deal with cases where dangerous conduct was truly a concern. Tr. 2485.

In sum, through Warden Vanyur, the government starkly, and under the authoritative auspices of a high-ranking officer of the BOP, told the jury that the only way to keep Johnson from ordering another murder was to put him to death. As the evidence now before this Court makes clear, that evidence and argument was, and is, false.

Based on Vanyur's testimony, both that quoted here and the more voluminous quotes in our prior pleadings, the government very pointedly argued to the jury that "the federal regulations do not allow somebody to go directly to the control unit. . . .The control unit at ADX Florence, you know he will not be going there." (Tr. 2646). "There is no innocent bystander who is safe as long as the defendant can communicate with the outside world. No prison system can stop him." Tr. 2647-48. In sum, the government argued, unless the jury ordered Johnson's execution, he would not be stopped — indeed, pursuant to BOP policies and practices, *could not* be stopped — from ordering further violence from prison. Again, this argument, the centerpiece of the government's closing argument, was based on grossly misleading, if not outright false, testimony by Warden Vanyur.

## C.    Inmates ordered by the courts to be housed under highly restrictive conditions

The government next argues that "the Solicitor General, conceded at the *certiorari* stage on direct appeal the [sic] Vanyur's testimony was incomplete and may have left the jury with the

9

mistaken impression that no such authority existed" only because he did not testify about

"regulations authorizing the Attorney General to direct the BOP Director to have an inmate

housed in restrictive conditions straight from the sentencing court."  Govt. Resp. at 8 [Docket

No. 99].  Since these regulations and statute are publicly available, says the government, they

cannot be the basis of a *Brady* claim.

Johnson has never asserted in support of his *Brady* claim that the government suppressed

statutes, regulations and court cases.  To the extent this was not clear to anyone previously, let us

be precise now.  ***What was suppressed in this case that constitutes a Brady violation were the***

***facts regarding the actual practices the BOP employed both before and at the time of***

***Johnson's penalty phase hearing***.  Johnson has now both discovered and proven that the BOP

was routinely housing — for as long as the BOP deemed necessary — any number of inmates

under the very types of strict conditions of confinement Vanyur testified were neither possible

nor permissible to impose for any length of time, and the BOP was doing so fairly routinely at

any number of different BOP facilities.

As set out in some detail in former Warden Bezy's two affidavits, the BOP was, prior to

and at the time of Darryl Johnson's sentencing hearing, housing inmates in highly restrictive

conditions of confinement whenever necessary and for as long as was deemed necessary by the

BOP.  The government's argument reads as though we have discovered just one or two isolated

instances of BOP prisoners being housed under strict conditions of confinement for as long as

deemed necessary.  Having obtained only a small amount of Court-ordered discovery from the

government, we have identified no less than 24 specific inmates *by name*[1] who have been held

under the very strict conditions of confinement that Warden Vanyur testified could not be

imposed for any extended length of time.  And, as former Warden Bezy's two affidavits makes

clear, these situations are a normal part of the BOP's operations – and had been for a long time

prior to Darryl Johnson's sentencing hearing.

Indeed, contrary to Vanyur's testimony that there were essentially no places to impose

these highly restrictive conditions of confinement, the BOP was using "side pockets" or "special

cells", and Special Housing Units ("SHU's") within every maximum security BOP facility, for

inmates deemed exceptionally dangerous at the time of Johnson's trial.  Pet. Mot. For

Consideration of His *Brady* and *Johnson* Claims, Ex. C, Bezy Affid., at ¶11, 13; Ex. D, Bezy

Supp. Affid. at ¶¶23, 30-32 [Docket No. 88].  Other individuals deemed to be dangerous or a

security threat were housed in "Control Units," sometimes for up to five years, based on their

offense.  Pet. Mot. For Consideration of His *Brady* and *Johnson* Claims, Ex. C, Bezy Affid. at ¶7

---

[1] These inmates that we have been able to specifically identify include: (1) Barry Mills, (2) T.D. Bingham, (3) Jeff Fort, (4)John Walker, (5) Ed Wilson, (6) Jonathon Pollard, (7) Christopher Boyce, (8) David Sahakian, (9) Luis Felipe, (10) Rodney Hamrick, (11) Thomas Silverstein, (12) Clayton Fountain, (13) Theodore Kaczynski, (14) Manuel Noriega, (15) Eric Rudolph, (16) Ramzi Yousef, (17) Anthony Ayeni Jones, (18) Terry Nichols, (19) Hakeem Shaheed, (20) Tyrone Davis, (21) John Gotti, and (22) Yu Kikumura, (23) Norman Matthews, and (24) Adolph Reynoso.  (*See* Ex. D. to Pet's Lead Brief, Bezy Supp. Affid. at ¶¶5, 23, 25, 26, 31, and 38).  This number does not include the general knowledge about other, unnamed individuals who were housed under strict conditions of confinement, whether in a Control Unit, a SHU, the "K-Unit," the "I-Up Unit," or any other "side-pocket" or other detention unit where these types of strict conditions of confinement are "***routinely imposed*** on high-risk inmates by the BOP for as long as it deems those conditions necessary to ensure the security and safety of BOP staff, other inmates, and the public (*i.e.* to reduce or eliminate the inmate's future dangerousness)." *Id.* at ¶34 (emphasis added); *see id.* at ¶¶23-33, 37-39.

[Docket No. 88].  At the BOP's Marion facility, there were also housing units known as the "K-Unit" and the "I-Up Unit" where inmates who were deemed to be a future danger were housed under strict conditions of confinement.  Pet. Mot. For Consideration of His *Brady* and *Johnson* Claims, Ex. C, Bezy Affid. at ¶9-10 [Docket No. 88].

The knowledge about, and documentary evidence of, these actions by the BOP were contained in confidential records maintained within the exclusive possession of the BOP, and thus were not discoverable by the defense thru any means other disclosure by the government. *See* Pet. Mot. For Consideration of His *Brady* and *Johnson* Claims, Ex. C, Bezy Affid., at ¶15 [Docket No. 88](records kept at individual BOP facilities and in inmate files).  And there can be no doubt, in light of the testimony by Warden Vanyur and the closing arguments of government counsel, that this information was "favorable to the defense" and/or "impeachment evidence" that should have been turned over to the defense.  As summarized in Johnson's lead brief,

> Mr. Johnson has demonstrated that the government was in possession of significant impeachment evidence that it failed to turn over to the defense.  This includes the information which the government has belatedly disclosed regarding other inmates held in strict conditions of confinement, as well as all the extensive information contained in Warden Bezy's two affidavits regarding the policies and procedures in place at the time of Mr. Johnson's trial that were routinely used to neutralize the risk of future dangerousness posed by certain inmates, and a large and growing number of inmates who were, at the time of Mr. Johnson's trial, being held under those conditions.

Pet. Mot. For Consideration of His *Brady* and *Johnson* Claims at 3 [Docket No. 88].

In sum, in light of the information contained in the two Bezy affidavits, as well as the information turned over by the government pursuant to this Court's prior order, Johnson presents a textbook *Brady* claim.  Johnson's *Brady* claim is premised not on "a statute, a set of publicly

published regulations, and public court cases applying them" (Govt. Resp. at 8), but on the *factual matters* that have now come to light about the ***actual practices of the BOP*** and the numerous instances we have since discovered in which the BOP was housing inmates, for as long as deemed necessary, under exactly the type of strict conditions of confinement that Warden Vanyur testified it would not, could not, and did not impose.  *See* Pet. Mot. For Consideration of His *Brady* and *Johnson* Claims [Docket No. 88].  Relief pursuant to *Brady v. Maryland* and its progeny is clearly warranted under these facts.


**III.   Under the Facts of This Case, Information Known To Vanyur and the BOP Falls Under *Brady*,  Irrespective of the Good Faith of The Prosecutors**

The government asserts that the *Kyles v. Whitley*, 514 U.S.419 (1995) holds that prosecutors only "have a duty to discover and disclose exculpatory information in the possession of the police department that investigated the crime." Govt. Resp. at 9-10 [Docket No. 88]. Because neither Warden Vanyur nor the BOP was a member of the "prosecution team that investigated" Johnson's case, they had no professional interest in the outcome, and therefore, argues the government, the prosecution was not required to disclose all of the evidence which contradicted and impeached Vanyur's testimony.  Govt. Resp. at 10 [Docket No. 88].  The government's argument is contrary to *Kyles*.

In *Kyles*, the Supreme Court reiterated "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  514 U.S. at 432, quoting, *Brady v. Maryland*, 408 U.S. 786, 794-795 (1972).  In discussing materiality, the Court stated that an "individual prosecutor has a duty to learn of any

favorable evidence known to the ***others acting on the government's behalf in the case***, including the police." *Kyles*, 514 U.S. at 437 (emphasis added).

Here, there can be no doubt that Warden Vanyur, a high-ranking official of the BOP, was someone "acting on the government's behalf in the case." In Johnson's case, Vanyur and the BOP were assisting the government in attempting to secure a sentence of death. His assistance included meeting with prosecutors (Tr. 2495) gathering statistics concerning the prison population (Tr. 2466, 2469, 2472-74) reviewing Johnson's prison records (Tr. 2495, 2498), and listening to the testimony of Dr. Cunningham and commenting on the same (Tr. 2467-68, 2470, 2482, 2484, 2487, 2491). He works for an arm of the Department of Justice (*i.e.*, the BOP), just as the prosecutors did. And quite importantly, he acted as a DOJ-employed expert witness for the prosecution at Johnson's penalty phase trial. While the BOP may not have investigated the underlying crimes, it clearly participated in the prosecution of the death sentence against Johnson and was certainly "acting on the government's behalf in [Johnson's] case." *Kyles*, 514 U.S. at 437. The government's *post-facto* attempt to distance itself from Warden Vanyur rings hollow in light of the facts.

The government argues that the Seventh Circuit has further restricted responsibility of prosecutors to evidence or information in the hands of members of the prosecution team such as DEA and police, citing to *United State v. Morris*, 80 F.3d 1151, 1169 (1996). Govt. Resp. at 9-10 [Docket No. 99]. In *Morris*, the defendant in post-trial motions and on direct appeal argued that the government suppressed material exculpatory information in the hands of the Office of Thrift Supervision, the Securities and Exchange Commission, and the Internal Revenue Service in violation of *Brady*. The district court found that the "defendants had failed to show that the

14

government's prosecution team had been aware of the existence of the allegedly suppressed documents." *Id.* at 1168.  According to the district court findings, there were over 700 boxes of documents which "were generally open and available to litigants and their counsel in this criminal prosecution" and "that defendants had been given the same opportunity as the government to discover the identified documents." *Id.* at 1168, n13.  Further, the court found that the defendants "knew as much about the OTS, SEC, and IRS investigations as the prosecution team itself did" because they were part of separate litigation brought by those agencies. *Id.* at 1170.

The relevant facts of the instant case bear no resemblance to *Morris*.  Here, unlike *Morris*, Vanyur was clearly "part of prosecution team" and certainly was "acting on the government's behalf."  Here, unlike *Morris*, the information claimed to have been suppressed was not "generally open and available to [Johnson] and [his] counsel in this criminal prosecution."  Here, unlike *Morris*, Johnson had no opportunity to "discover the identified documents" because the suppressed information was in the sole custody and knowledge of Warden Vanyur's BOP.  Under these facts, to hold, as the government argues, that the government was not responsible for disclosing evidence that (a) was plainly and particularly within the knowledge of the BOP and Warden Vanyur, and (b) directly contradicted (or at least severely impeached) Warden Vanyur's testimony would run afoul of *Kyles*.

To find that the government was not responsible for disclosing evidence plainly in the hands of the BOP that directly contradicted Warden Vanyur's expert testimony given on behalf of the prosecution would fly in the face of *Kyles*. *Kyles* charges prosecutors with "a duty to learn of ***any favorable evidence*** known to ***the others acting on the government's behalf in the case***,

including the police." *Kyles*, 514 U.S. at 437 (emphasis added).  The government's argument that its prosecutors were exempt from any duty to disclose evidence that directly contradicted Vanyur's testimony is merely another attempt to direct this Court's attention away from the merits of Johnson's claim.

## IV.    Procedural Default

Finally, the government's argument that Johnson's *Brady* claim is procedurally defaulted is without merit.  Pointing to Judge Conlon's memorandum opinion and order, the government asserts that because Johnson did not raise his *Brady* claim on direct appeal, it is procedurally defaulted.  Govt. Resp. at 3 [Docket No. 99].   Further the government misconstrues Johnson's argument, claiming that Johnson merely argues that "the legal landscape has changed."  Govt. Resp. at 3 [Docket No. 99].

The most significant import of the change in the legal landscape brought about by *Massaro v. United States*, 538 U.S. 500 (2003) is that this Court ordered certain discovery for Johnson.  That discovery led to Johnson uncovering extensive facts in support of his *Brady* claim, including those directly disclosed by the government in response to the discovery ordered in this case and those discussed in the affidavit of former BOP Warden Mark A. Bezy.  Pet. Mot. For Consideration of *Brady* and *Johnson* Claims, Exs. C and D [Docket No. 88].  As noted by this Court, Mr. Bezy's affidavit "provides a factual foundation for Johnson's claim that the government expert's testimony misled the jury regarding the BOP's ability to confine him immediately and indefinitely while at the same time minimizing the risk that Johnson would continue to be a danger to society" and "outlines a pattern of evidence that appears to contradict

16

much of what the government's expert testified to." Opinion & Order at 6-7 [Docket No. 71].

These facts were not discovered prior to direct appeal, nor could they have been.  As stated in

*Strickler v. Greene*, 527 U.S. 263, 287 (1999), "In the context of a *Brady* claim, a defendant

cannot conduct the "reasonable and diligent investigation" mandated by *McCleskey[1] [v. Zant]* to

preclude a finding of procedural default when the evidence is in the hands of the State."

The government cites *Lewis v. Sternes*, 390 F.3d 1019, 1028 (7th Cir. 2004) for the

proposition that *Massaro*, "says nothing about *Brady* claims, which the Seventh Circuit . . . still

treats as procedurally defaulted if they could have been raised, but were not, prior to collateral

attack." Govt. Resp. at 3 [Docket No. 99].  In short the court held that Lewis' *Brady* claim had

been defaulted when it was not raised in the appeal of the denial of his state post-conviction

petition.  *Id.* at 1028.  *Lewis* is decidedly unenlightening given the starkly different facts

presented regarding Darryl Johnson's *Brady* claim.

Johnson's trial record was not developed for the purpose of litigating either his

ineffectiveness claim or his *Brady* claim.  The record on direct appeal was both incomplete and

inadequate for the purpose of the appellate court determining whether and what evidence was

suppressed by Vanyur and the BOP and its prejudicial effect.  It has only been through the

discovery ***during this Sec. 2255 proceeding*** of the names of additional inmates who were housed

under highly restrictive conditions of confinement by the BOP at the time of Johnson's trial and

the evidence supplied in Mr. Bezy's affidavits that Petitioner has been able to acquire the

evidence to fully establish his *Brady* claim.  It would be a strange result, indeed, if one were

found to have procedurally defaulted a *Brady* claim prior to coming into possession of the

---

[1] *McCleskey v. Zant*, 499 U.S. 467 (1996).

17

information that establishes the *Brady* violation.  There was no procedural default here, and the government's attempt to avoid the merits of Johnson's *Brady* claim should be rejected.

## V.  Petitioner's *Johnson v. Mississippi* Claim

The government acknowledges, as it must, that the 8th Amendment prohibits "imposition of a death sentence based on constitutionally impermissible or inaccurate information."  *Johnson v. Mississippi*, 486 U.S. 578, 584 (1988).  Here, the government secured Johnson's death sentence in no small part through use of the misleading, inaccurate, and prejudicial testimony of Warden Vanyur.   The government devotes little of its response to addressing the merits of this claim, merely stating in a single paragraph that the claim is procedurally defaulted and is only a reprisal of the "argument that Vanyur's testimony was materially false and inaccurate," claim rejected by the Seventh Circuit in Johnson's direct appeal.  Govt. Resp. at 10-11 [Docket No. 99].  These arguments are without merit.

As set out above, Johnson's trial record was not developed for the purpose of litigating his ineffectiveness claim or his *Brady* claim.  The same holds true for his *Johnson v. Mississippi* claim.  As trial counsel was admittedly unprepared for Warden Vanyur's rebuttal testimony and likely unaware that it was inaccurate if not out and out false, the record before the appellate court was "incomplete" and "inadequate" to allow the appellate court to review the claim.  It has only been through the discovery of the actual practices of the BOP, the ever-growing number of names of additional inmates who were housed under highly restrictive conditions of confinement by the BOP at the time of Johnson's trial, and the evidence supplied in Mr. Bezy's affidavits that this issue has been able to be sufficiently factually developed.

Based upon the facts presently before the Court, there can be no doubt that Johnson's jury was misinformed by Vanyur of both the BOP's and the court's ability to impose individualized highly restrictive conditions of confinement for as long as the BOP deemed necessary in order to eliminate any risk of future danger to prison staff, other inmates, witnesses, witnesses' families, innocent bystanders, society as a whole, or anyone else mentioned by the government in its closing argument.  Tr. 2593, 2594, 2598, 2647-48.  This is the essence of a claim under *Johnson v. Mississippi*, and relief, therefore, is warranted.

### CONCLUSION

For all the reasons set forth above, as well as those contained in our prior pleadings with the Court, Petitioner Darryl Lamont Johnson respectfully requests that the Court grant Johnson's §2255 petition based on his *Brady v. Maryland* and *Johnson v. Mississippi* claims (as well as on the other grounds raised in his Petition), vacate his sentence, order a new sentencing hearing, and grant whatever other relief it deems just and proper.

Respectfully submitted,

/s/ Terence H. Campbell_____          /s/ Lorinda M Youngcourt_____

Terence H. Campbell                               Lorinda Meier Youngcourt
Cotsirilos, Tighe & Streicker, Ltd.               Youngcourt Law Office
33 North Dearborn Street, Suite 600               P.O. Box 206
Chicago, Illinois 60602                           Huron, Indiana 47437-0206
(312) 263-0345                                    (866) 274-3218

*Counsel for Darryl Lamont Johnson*

**Certificate of Service**

Terence H. Campbell, an attorney, hereby certifies that in accordance with Fed.R.Crim.P.

49, LR 5.5, and the General Order on Electronic Case Filing (ECF), the following document:

1. Darryl Johnson's Final Reply In Support of His *Brandy v. Maryland* and *Johnson v. Mississippi* Claims

was served pursuant to the District Court's ECF system as to ECF filers, including the United

States Attorney's Office.

/s/ Terence H. Campbell
Terence H. Campbell

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff - Appellee - Respondent, | ) | No. 02 C 6998 |
| | ) | |
| vs. | ) | Hon. William J. Hibbler |
| | ) | |
| DARRYL JOHNSON, | ) | |
| | ) | Death Sentence Imposed |
| Defendant - Appellant - Petitioner. | ) | |

**PETITIONER'S CORRECTED FINAL REPLY IN SUPPORT OF
HIS INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM**

We have extensively briefed the issues now before the Court and will not attempt in this final

Reply brief to re-cover all the ground previously plowed.  We would respectfully ask the Court to

review our prior substantive briefs, including particularly (1) Petitioner's Initial Memorandum in

Support of His §2255 Petition [Docket No. 4]; (2) Petitioner's Initial Reply in Support of His §2255

Petition [Docket No. 19]; (3) Petitioner's Response to the Government's Motion to Reconsider in

Light of *Massaro v. United States* [Docket No. 29]; (4) Petitioner's Supplement to His Ineffective

Assistance of Counsel Claim [Docket No. 39]; (5) Petitioner's Supplemental Brief in Support of His

Ineffective Assistance of Counsel Claim [Docket No. 85]; and (6) Darryl Johnson's Motion for

Consideration of His *Brady v. Maryland* and *Johnson v. Mississippi* Claims and Supplemental

Memorandum in Support [Docket No. 88], in coming to its decision.  Each of these prior

submissions presents substantial facts, law and argument in support of our requests for relief.  In this

final submission, we will attempt, primarily, to respond to the points made in the government's most

recent response brief.  By doing so, we are not in any way waiving or abandoning any part of our

prior arguments, all of which are squarely before the Court at this time.

## ARGUMENT

**I.      Darryl Johnson's Ineffective Assistance of Counsel Claim**

As the Court is well aware, the government has conceded the first prong of *Strickland – i.e.*, that Mr. Johnson's trial counsel provided deficient performance by failing to investigate, research and present evidence about the statues, regulations, and case law which would have directly impeached government witness Warden John Vanyur, who testified about "future dangerousness" at Mr. Johnson's penalty-phase hearing.  The government, however, persists in its position that Petitioner has not satisfied the second prong of *Strickland*, a showing "prejudice" from the deficient performance, which requires Petitioner to establish merely a "***reasonable probability***" that, absent counsel's errors, the outcome of the sentencing hearing may have been different.  *Strickland v. Washington*, 466 U.S. 668 (1984).  As detailed both in this brief and in our prior submissions, Mr. Johnson has clearly established prejudice under *Strickland* and its progeny, and relief, in the form of a new sentencing hearing, is plainly required.

A.      The Government's Factual Admission That Warden Vanyur's Testimony Was Incomplete and Misleading, By Itself, Establishes Prejudice In This Context

After the Seventh Circuit Court of Appeals affirmed Mr. Johnson's convictions and death sentence on direct appeal, the government finally conceded that Warden Vanyur's testimony was "incomplete" and that based on the evidence it heard during the sentencing proceedings, "the jury may have held the mistaken impression that no legal authority existed to limit [defendant's] communications and contacts while in prison in order to curtail his future dangerousness. ... As we have acknowledged, there is in fact such authority [to limit petitioner's communications and contacts while in prison in order to curtail his future dangerousness]."  Govt. Opp. to Cert. at 21, 29 (attached

as Exhibit A to Johnson's Initial Memorandum in support of his § 2255 Motion [Docket No. 4]). Thus, the government acknowledges that Vanyur's testimony regarding BOP's ability to limit Mr. Johnson's contacts and communications while in prison – testimony which went to the heart of the penalty phase hearing (*i.e.*, Darryl Johnson's supposed future dangerousness) and was the centerpiece of the prosecution's closing arguments to the jury – was misleading and created a false impression. This is not in dispute.

Boiled down to its essence, the government's argument at sentencing was, "the BOP cannot, and will not, house Darryl Johnson under strict conditions of confinement to eliminate the risk of him being a future danger, so he must be executed." This was a false argument based on admittedly misleading testimony from Warden Vanyur. That Warden Vanyur's testimony and the government's argument based on it were false and misleading is not mere argument or speculation; it is a fact. We now know, *as an undisputed factual matter*, that the BOP can, and did at the time of Darryl Johnson's sentencing hearing, house inmates under precisely the type of strict conditions of confinement that the defense proposed, and for as long as deemed necessary to ensure safety both within and outside the prison – exactly what Warden Vanyur testified was not possible or even legal.

It is difficult to fathom how – in light of (1) the undeniable importance of the "future dangerousness" factor, both as a general matter and more particularly in the government's penalty phase presentation and argument in *this case*; and (2) the applicable legal standard, *i.e.*, a "reasonable probability that the result might have been different – the government can maintain that *Strickland* prejudice has not been established. Prejudice would be apparent under these circumstances in a run-of-the-mill criminal case where an error impacting an issue central to the prosecution's case was conceded, but it is even more so in a case like this one involving imposition of the death penalty,

3

where it takes just ***one juror*** to stop a death sentence from being imposed. *United States v. Johnson*, 223 F.3d 665, 670 (7th Cir. 2000).

The government's concession that the jury may well have been misled by Warden Vanyur's testimony on the possible conditions of confinement and future dangerousness, by itself, establishes *Strickland* prejudice under the facts of this case. For this plainly evident reason, as well as those discussed in more detail below, relief is warranted.

B.      *Strickland* And Its Progeny Require Petitioner to Establish Merely a "Reasonable Probability" That The Outcome May Have Been Different

As the Supreme Court has made abundantly clear, in order to establish prejudice, it is required only that Petitioner establish that, absent counsel's errors, there is a "***reasonable probability***" that the outcome of the sentencing hearing may have been different. *Strickland*, 466 U.S. 668; *United States v. Cronic*, 466 U.S. 648 (1984)*; Strickler v. Greene*, 527 U.S. 263 (1999); *Williams v. Taylor*, 529 U.S. 362 (2000); *Wiggins v. Smith*, 539 U.S. 510 (2003); *Rompilla v. Beard*, 545 U.S. 374 (2005). Moreover, those decisions make clear if there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting its verdict, "then we ***must*** find prejudice." *Strickland*, 466 U.S. at 695 (emphasis added). And notably, the Supreme Court has made clear that ***a "reasonable probability" is a lesser burden than a preponderance standard.*** *Strickland* at 693 ("a defendant need not show that counsel's deficient conduct more likely than not altered the outcome of the trial."); *see also Williams,* 529 U.S. at 405-06 (2000) (O'Connor, J., concurring) (state court rejection of ineffectiveness claim on grounds that prisoner failed to establish by "a preponderance of the evidence" that the outcome would have differed would be contrary to clearly established precedent).

4

     1.        "Future Dangerousness" Is The Most Significant Factor For Juries Deciding Death Penalty Cases, And It Was Clearly The Most Significant Factor Argued At Darryl Johnson's Penalty Phase Hearing

Viewed under the light of the applicable legal standard, the government's position cannot withstand scrutiny.  For the most part, the government's argument against a finding of prejudice attempts simply to ignore the unmistakable fact that "future dangerousness" is **the most significant** factor for jurors deciding a death penalty case.  Again, this is not opinion or argument, it is a *fact* established beyond peradventure by multiple empirical and unrebutted research studies over at least the past two decades.  *See* Marla Sandys, Ph.D. et al., *Aggravation and Mitigation: Findings and Implications*, Journal of Psychiatry & Law, 37/Summer-Fall 2009, 189 at 215-216 ("the research indicated that the most persuasive aggravator is juror perceptions of the defendant's future dangerousness; ... [T]he issue of future dangerousness is the crux of a juror's preference for death."); John H. Blume, Stephen P. Garvey, and Sheri Lynn Johnson, *Future Dangerousness in Capital Cases: Always "At Issue"*, 86 Cornell L. Rev. 397, 398 (2001) (future dangerousness is central issue for most jurors, regardless of whether prosecutor argues it explicitly); Sally Costanzo and Mark Costanzo, *Life or Death Decisions: An Analysis of Capital Jury Decision Under the Special Issues Sentencing Framework*, 18 Law & Hum. Behav. 151, 160 (1994) ("Nearly all jurors also offered the observation that the penalty decision hinged on the issue of whether the defendant will pose a continuing threat to society") *id*. at 168 ("[F]uture dangerousness plays a prominent, if not central role * * *.  Jurors clearly perceived the penalty decision as hinging on this issue."); Stephen P. Garvey, *Aggravation and Mitigation in Capital Cases: What Do Jurors Think?*, 98 Colum. L. Rev. 1538, 1559 (1998) (future dangerousness evidence is highly aggravating and 60% of jurors interviewed were more likely to vote for death if they believed the defendant might be dangerous in

the future); Eisenberg & Wells, *Deadly Confusion: Juror Instructions in Capital Cases*, 79 Cornell L. Rev. 1, 7 (1992) ("[O]ver three-quarters fo the jurors believe that the evidence in their case established that the defendant would be dangerous in the future.  And the more the jurors agree on this fact, the more likely they are to impose a death sentence."); James W. Marquart et al., *Gazing Into the Crystal Ball: Can Jurors Accurately Predict Dangerousness in Capital Cases?*, 23 L.& Soc. Rev. 449, 463 (1989) ("[D]ata show[s] that the decision to give life versus death in Texas rests squarely on Question 2 – future dangerousness.").  *See generally, Skipper v. South Carolina*, 476 U.S. 1, 5 n.1 (1986) (discussing importance of ensuring that the jury understands the actual facts to assess the "prosecutor's closing argument, which urged the jury to return a sentence of death in part because petitioner could not be trusted to behave if he were simply returned to prison").

Indeed, based on a recent study of jury findings and verdicts in 72 federal death-penalty cases over the last 13 years, ***82.4 percent of those defendants who were found to constitute a future danger were sentenced to death, while 81.6 percent of those who were not so found were not sentenced to death***.  Mark D. Cunningham, Jon R. Sorensen, Thomas J. Reidy, *Capital Jury Decision-Making: The Limitations of Predictions of Future Violence*, 15 Psychology, Public Policy & Law 223, 234-35, 244-45 & Table 1 (2009).  Even the government is compelled reluctantly to admit that "future dangerousness played an important role in the government's argument at the sentencing hearing."  Govt. Resp. at 14 [Docket No. 99].  There is no doubt that future dangerousness – the factor on which the government concedes Mr. Johnson's counsel offered deficient assistance – is the most critical factor in a death penalty case.

Moreover, as we have argued in prior filings, one need only look to the government's closing arguments to see how much it was stressed by the prosecutors in order to gauge the importance of

6

"future dangerousness" to the government's penalty case. (*See* Pet. Supp. Brief on *Brady* and *Johnson* Claims at 10-11 [Docket No. 88] (quoting Govt. closing arguments); Pet. Supp. Brief on IAC at 11-12 [Docket No. 85] (same). The fact that the government so forcefully argued future dangerousness in its sentencing summation as the basis for imposing a death sentence on Darryl Johnson is highly probative of prejudice. *See Johnson v. Mississippi*, 486 U.S. 578, 590 & n.8 (1988) (agreeing with lower court that improper reliance on aggravating evidence of prior conviction was not harmless, since the district attorney argued this particular aggravating circumstance as a reason to impose the death penalty). All of this further cements the conclusion that there is a "reasonable probability" that the result may have been different, absent counsel's deficient performance and prejudice has been established.

### 2. The Government Attempts to Turn The Applicable Legal Standard On Its Head

The government attempts to turn the legal standard on its head, and its argument on the "prejudice" prong of Johnson's ineffective assistance claim seems to suggest a legal standard that is exactly the opposite of what the Supreme Court has, now repeatedly, emphasized. That is, the question is ***not***, as the government's argument seems to suggest, whether there is a reasonable probability that the outcome might have been the ***same*** despite counsel's errors. Rather, relief *must* be granted if Petitioner can establish that, absent counsel's errors, there is a ***reasonable probability*** that the outcome of the sentencing hearing may have been ***different***. *Strickland*, 466 U.S. 668; *Cronic*, 466 U.S. 648; *Strickler*, 527 U.S. 263; *Williams*, 529 U.S. 362; *Wiggins*, 539 U.S. 510; *Rompilla*; 545 U.S. 374. Thus, the government argues, *inter alia*, that the Court should reject Petitioner's claim because "there were significant aggravating factors found by the jury other than

future dangerousness." Govt. Resp. at 19 [Docket No. 99]. From this, the government then leaps

to the conclusion that

> the jury would have found future dangerousness based on the evidence
> that even the most secure environment available in the BOP can be
> circumvented, and even if future dangerousness had not been found, or
> had been found to be mitigated, the outcome would have been the same.
> The other aggravating factors, the absence of any significant consensus
> on any mitigating factors, and the evidence of petitioner's life of
> violence, would have led the jury to impose the death sentence even [if]
> it had rejected future dangerousness because of SAMs and §3582(d).

Govt. Resp. at 20 [Docket No. 99]. This is rank speculation, pure and simple. It certainly does

nothing to undercut the claim of prejudice under the correct legal standard governing Darryl

Johnson's ineffective assistance claim.

Indeed, in order for the government to prevail here, it must prove that the misleading

testimony and false argument by government counsel was harmless ***beyond a reasonable doubt***, for

that is the standard on a constitutional claim such as we have here. *See Satterwhite v. Texas*, 486

U.S. 249, 257 (1988) (applying constitutional harmless-error rule of *Chapman v. California*, 386

U.S. 18 (1967), to state capital sentencing proceedings); *see also* 18 U.S.C. §3595(c)(2) (requiring

reversal of death sentence unless government proves on appeal that jury's erroneous special finding

of an aggravating factor was harmless beyond a reasonable doubt). And, since, as to a death

sentence, potential impact on ***one juror's vote*** establishes harm (or "prejudice"), the issue is whether

the erroneous consideration of Darryl Johnson's future dangerousness may have influenced even a

***single juror*** in favor of death.[1] *See, e.g., Wiggins*, 539 U.S. at 537; *Johnson*, 223 F.3d at 670. There

---

[1] This must also be viewed in light of the fact that the jury deliberations in Darryl
Johnson's penalty phase case were lengthy – more than 13 hours (R.208) which indicates the
decision was reached neither easily nor readily. In that context, any shift in the evidence could
have made a difference, at least to one juror.

can be no doubt that there is a reasonable probability at least one juror would have been dissuaded from voting for death had defense counsel not rendered the deficient performance on the central issue at sentencing, as the government concedes they did.[2]

> 3.   Whether Vanyur's Testimony Is Determined To Be "False," "Misleading," Or To Have Created A "False Impression," Relief Is Required

As noted above, the government has conceded that the testimony of Warden John Vanyur, who testified for the government in the penalty-phase hearing, was "incomplete" and may well have "left the jury with a mistaken impression" of BOP policy and practices. *See* Ex. A to Johnson's Initial Memo [Docket No. 4], Govt. Opp. to *cert.* at 14, 20, 21, 28-29. Indeed, directly contrary to the distinct impression conveyed by Warden Vanyur, there is also now no dispute that the BOP has both the legal authority and the prison facilities to house inmates under strict conditions of confinement – *not to mention the pattern and practice of doing so* – "for as long as the BOP deems it necessary to ensure the security and safety of either prison staff, other inmates, or the public (*i.e.* to reduce or eliminate the inmate's future dangerousness)." Pet. Supp. Brief on IAC, Ex. D, Bezy Supp. Affid. at ¶18 [Docket No. 85].

---

[2] The government's argument that there were other aggravating factors loses even further force when one considers other factually more severe cases in which prejudice based on ineffective assistance of counsel at a penalty phase hearing was found. *Hall v. Washington*, 106 F.3d 742, 752 (7th Cir. 1997) (granting habeas relief based on ineffective assistance for failing to investigate and proffer certain mitigating evidence, which left the court with "a significantly different view of the balance between aggravating and mitigating circumstances when it [decided to impose the death penalty]"; the court found *Strickland* prejudice [*i.e.* a reasonable probability that the result may have been different] despite the despite the heinousness of the crime); *Lockett v. Anderson*, 230 F.3d 695 (5th Cir. 2000) (habeas relief granted based on ineffective assistance of counsel for failing to investigate and present certain mitigation evidence; finding prejudice prong of *Strickland* met notwithstanding "the inherent unforgivable viciousness of this murder."); *Anderson v. Sirmons*, 476 F.3d 1131 (10th Cir. 2007) (relief granted under *Strickland* for counsel's failure to present certain mitigation evidence, despite multiple and significant aggravating factors in triple murder, also involving arson and burglary).

The government takes issue with our statements that Vanyur's testimony regarding the BOP practices and ability to confine inmates under strict conditions of confinement for as long as necessary was "false." Govt. Resp. at 16-18. We believe it is fair to say that we have now proven that Warden Vanyur's testimony was false, but it is of no consequence because proof of "perjury" is not a prerequisite for the relief sought. Under the law, whether Vanyur's testimony is determined to be "false" (as we believe we have shown), or just "misleading" or having created a "false impression" (as the government concedes), it makes no difference.

First, it is fairly clear now that Vanyur's testimony on these issues was, in fact, false. Indeed, that is not Petitioner's counsel making the claim, it is former BOP Warden Bezy who specifically described significant pieces of Vanyur's testimony as "false." *See* Pet. Supp. Brief on IAC, Ex. D, Bezy Supp. Affid. at ¶20 [Docket No. 85] ("the suggestion that Mr. Johnson was not eligible for placement at ADX immediately after sentencing, if deemed necessary and appropriate, is false and is belied by ADX's history. Similarly, the notion that the BOP is somehow powerless to prohibit specific inmates from committing serious crimes while incarcerated is also false."); *id*. at ¶27 ("Dr. Vanyur's assertion that it would be "extremely difficult, at best" for officials at a BOP facility such as USP-Marion to separate Mr. Johnson from other Gangster Disciples is simply false."). Indeed, this Court has already found that Mr. Bezy's affidavit "outlines a pattern of evidence that appears to contradict much of what the government's expert testified to" and "provides a factual foundation for Johnson's claim that the government expert's testimony misled the jury regarding the BOP's ability to confine him immediately and indefinitely while at the same time minimizing the risk that Johnson would continue to be a danger to society." (Mem. Opin. and Order dated May 15, 2009 at 6-7 [Docket No. 71]).

Regardless, the government's sophisitc "this was not technically perjury" defense is irrelevant to the issue presented. Constitutional error occurs not just based on perjured or false testimony, but with testimony that creates a false impression, even if technically accurate. *Napue v. Illinois*, 360 U.S. 264 (1959) (failing to correct testimony that creates a false impression, though not perjured, violates due process). ***Due process is equally offended by direct statements which are untrue and the eliciting of testimony which "taken as a whole" gives the jury a "false impression."*** *Alcorta v. Texas*, 355 U.S. 28, 31 (1957) (emphasis added). This is true even where the particular prosecutor acts in the utmost good faith and/or does not know that the testimony being presented is false or misleading. *See Giglio*, 405 U.S. at 153-54. Even under the most generous reading of Warden Vanyur's testimony, relief is required here.

4.  The Government's Attempts to Avoid The Implications of Warden Vanyur's
    <u>Misleading Testimony Are Unpersuasive</u>

The government next tries to dismiss the relevance of the *Anthony Ayeni Jones* case discussed in our opening brief with the quip, "each case and each jury is unique." Govt. Resp. at 19 [Docket No. 99]. While true as a metaphysical point, it begs the question, and the government offers no substantive discussion nor attempt to distinguish the *Jones* case in the context of the issue presented here. That failure is telling.

In our lead brief, we discussed at some length the striking factual similarities between Anthony Ayeni Jones' case and Darryl Johnson's case. Both were gang leaders. Both had been convicted of ordering acts of violence, including murder. Indeed, Jones' case presented facts regarding his future dangerousness that were more alarming than Darryl Johnson's because Jones, unlike Darryl Johnson, had actually ordered violence from inside a BOP prison prior to his trial and

sentencing hearing.  *See* Pet. Supp. Brief on IAC at 21-25 [Docket No. 85].

The central point bears repeating:  the lone significant difference between the findings of the jury in Jones' case versus that of the jury in Johnson's case was that, after hearing accurate and complete information about the available conditions of confinement, seven jurors in *Jones* found that:

> ***Any concern respecting future dangerousness of Anthony Jones is significantly reduced since the federal [BOP] is empowered to classify a prisoner serving a life sentence without possibility of release to the highest security level federal prison, under conditions of confinement that eliminate any reasonable probability that the prisoner will be a continuing and serious threat to society***.

Init. Memo in Support of §2255 Pet., Ex. D, Jones Verdict forms at 7, (mitigating factor #3) [Docket No. 4] (emphasis added).  By contrast, after hearing Warden Vanyur's testimony, *zero jurors in Johnson's case found this mitigating factor*, and consequently he was sentenced to death.  *Id*., Ex. C, Johnson Special Verdict forms at Part IV, ques. 4 (Blunt Johnson murder); Part IV, ques. 5 (Charles Banks murder).

In light of these facts, the government's attempt to cavalierly dismiss the importance of the *Anthony Ayeni Jones* case to this Court's prejudice analysis by saying "every case is unique" logically means that no argument based on other similar cases has any value.  This, of course, is absurd.  The use of precedent is one of the cornerstones of the rule of law.  *See generally, Gonzales v. Carhart*, 550 U.S. 124, 190-91 (2007) ("[T]he very concept of the rule of law underlying our own Constitution requires such continuity over time that a respect for precedent is, by definition, indispensable.").  The *Anthony Ayeni Jones* case provides compelling evidence of *Strickland* prejudice in Darryl Johnson's case.

12

Next, the government makes much of the fact that the jury did not find any mitigating factors "unanimously." Govt. Resp. at 12, 14 [Docket No. 99]. This is yet another misguided argument for at least two reasons. First, it only takes a single juror to stop a death sentence. *Wiggins*, 539 U.S. at 537; *Emerson v. Gramley*, 91 F.3d 898, 907 (7th Cir. 1996); 18 U.S.C. §3593(e) (requiring unanimous vote of jury to impose death sentence). Thus, unanimity may be a very telling fact with respect to *aggravating factors*, like future dangerousness, but because it only takes one juror to stop a death sentence, unanimity (or the lack thereof) offers little if any relevant information in the context of *mitigating factors*. As this Court has already found in a prior decision in this case,

> In order to succeed on this claim, Johnson must establish that but for counsel's failure, there is a reasonable probability that a jury may have declined to reject Johnson's proposed finding on future dangerousness and reached a different outcome in its decision to sentence him to death. *Eckstein v. Kingston*, 460 F.3d 844, 848-50 (7th Cir. 2006). And because 'it takes only one juror to nix a death sentence,' *United States v. Johnson*, 223 F.3d at 670, that threshold is even lower here.

Ex. B to Pet. Supp. Brief on IAC, Memorandum Opin. and Order dated May 15, 2009 at 6 (emphasis added).

Second, on the single most important factor to juries considering whether or not to impose death – *i.e.* future dangerousness – the jury was given admittedly misleading information by Warden Vanyur, and the government argued that misleading evidence most pointedly to the jury in its closing arguments. The error of Vanyur's admittedly misleading testimony was compounded by the vehemence of the prosecutors' false arguments based on that misleading (if not false) testimony.

## CONCLUSION

For all the reasons set forth above, as well as those contained in our prior pleadings with the

Court, Petitioner Darryl Lamont Johnson respectfully requests that the Court grant Johnson's §2255

petition based on a finding of ineffective assistance of counsel (as well as on the other grounds raised

in his Petition), vacate his sentence, order a new sentencing hearing, and grant whatever other relief

it deems just and proper.

Respectfully submitted,

/s/ Terence H. Campbell
An attorney for Defendant Darryl Johnson

Terence H. Campbell                         Lorinda Meier Youngcourt
Cotsirilos, Tighe & Streicker, Ltd.         Post Office Box 206
33 North Dearborn Street, Suite 600         Huron, IN 47437-0206
Chicago, Illinois  60602                    (812)849-9852
(312) 263-0345

*Counsel for Petitioner Darryl Johnson*

## CERTIFICATE OF SERVICE

Terence H. Campbell, an attorney, hereby certifies that in accordance with hereby certifies

that in accordance with Fed.R.Crim.P. 49, LR 5.5, and the General Order on Electronic Case Filing

(ECF), the following document:

1.      Petitioner's Final Reply in Support of His Ineffective Assistance of Counsel Claim

was served pursuant to the District Court's ECF system as to ECF filers, including the United States

Attorney's Office.


                                        /s/  Terence H. Campbell
                                        Terence H. Campbell

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff – Appellee – Respondent, | ) | |
| | ) | No. 02 C 6998 |
| vs. | ) | |
| | ) | Hon. William J. Hibbler |
| DARRYL JOHNSON | ) | |
| | ) | Death Sentence Imposed |
| Defendant – Appellant – Petitioner. | ) | |

**DARRYL JOHNSON'S CORRECTED FINAL REPLY IN SUPPORT OF HIS**
***BRADY v. MARYLAND* AND *JOHNSON v. MISSISSIPPI* CLAIMS**

Defendant Darryl Johnson, by his attorneys, Terence H. Campbell of Cotsirilos, Tighe &

Streicker, and Lorinda Meier Youngcourt, respectfully submits this Reply in Support of His

*Brady v. Maryland* and *Johnson v. Mississippi* Claims.

**I.      Pursuant to Rule 54(b), This Court May, At Any Time Prior to Entry of a Final
Judgment, Reconsider The Prior Ruling on Johnson's *Brady* and *Johnson* Claims**

The government questions, in an "aside," whether this Court has the authority to revisit

the *Brady* and *Johnson* claims.  Govt. Resp. at 1 [Docket No. 99].  However, it is unclear where

the government comes out on this issue, as it then admits that "a partial final judgment is final as

to the claims it adjudicates "only if the court expressly determines that there is no just reason for

delay."  Govt. Resp. at 2, citing Fed.R.Civ.P. 54(b).  The government further acknowledges "[i]f

a partial judgment is not final, it 'may be revised at any time before the entry of a judgment

adjudicating all the claims and all the parties' rights and liabilities.'"  *Id*. (again citing Rule

54(b)).  The government concludes its aside by stating,

1

> Judge Conlon's memorandum opinion and order does not contain
> an express statement that there is no just reason to delay an appeal
> from the claims she adjudicated. ***The partial judgment is
> therefore not a final judgment as to those claims.***

Govt. Resp. at 2 [Docket No. 99] (emphasis added).  Thus, it seems that the government agrees

with Petitioner that his *Brady* and *Johnson* claims **can** be revisited by this Court, pursuant to the

express language of Rule 54(b).

To the extent that the government's argument is that Petitioner's *Brady* and *Johnson*

claims are *not* reviewable by this Court because Judge Conlon previously denied those claims

(Govt. Resp. at 2 [Docket No.99]), that argument is without merit.  Because that judgment was

not a "final judgment" on those claims – a fact acknowledged by the government – this Court

clearly retains the authority to revisit those claims.

Under the Federal Rules of Civil Procedure, judgment on a legal action involving

multiple claims is governed by Rule 54(b), which states as follows:

> **(b) Judgment on Multiple Claims of Involving Multiple Parties.**   When an
> action presents more than one claim for relief – whether as a claim, counterclaim,
> or third-party claim – or when multiple parties are involved, the court may direct
> entry of a final judgment as to one or more, but fewer than all, claims or parties
> *only if the court expressly determines that there is no just reason for delay.*
> *Otherwise, any order or other decision, however designated, that adjudicates*
> *fewer than all the claims* or the rights and liabilities of fewer than all the parties
> *does not end the action as to any of the claims* or parties *and may be revised at*
> *any time before the entry of a judgment adjudicating all the claims* and all the
> parties' rights and liabilities.

Fed.R.Civ.P. 54(b) (emphasis added).

Under the plain text of Rule 54(b), a district court *may* direct entry of a final judgment as

to some, but not all, of the claims raised by an action "only if the court expressly determines that

there is no just reason for delay."   Rule 54(b).  The Seventh Circuit has therefore repeatedly

stated that in order for a partial judgment to be considered final, the judgment must literally

contain an express statement that states that there is "no just reason for delay" on those adjudicated claims:

> [A] partial final judgment under Rule 54(b) must contain "an express determination that there is no just reason for delay." The operation of Rule 54(b) is mechanical, and if the judgment does not contain an express statement, it is not final.

*Granack v. Continental Casualty Co.*, 977 F.2d 1143, 1144-1145 (7th Cir. 1992) (citation omitted).

In light of the mandates of both Rule 54(b) and the Seventh Circuit, it is clear that the judgment entered on March 11, 2003, by Judge Conlon was not a partial final judgment because it did not comply with the "express determination" requirement of Rule 54(b). The March 11, 2003 judgment stated:

> IT IS HEREBY ORDERED AND ADJUDGED that the § 2255 petition is denied with prejudice as to Grounds I-V and VII-VIII and without prejudice as to Ground VI.

Judgment [Docket No. 21]. *See The Construction Indus. Retirement Fund of Rockford v. Kasper Trucking, Inc.*, 10 F.3d 465, 468 (7th Cir. 1993) ("[W]e insist, in the language of the rule, that the determination and direction be 'express,' so that everyone knows exactly which mid-case decision are appealable and which are not.").

Moreover, if there were any doubt, the Seventh Circuit has counseled that it is particularly appropriate for a district court to exercise its inherent authority to reopen and reconsider a prior order when, as is the case here, there has been a significant change in the factual record since the initial submission of the issue to the court. *See Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) ("A further basis for a motion

3

to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court.") (citation omitted).

That condition has been met here. As this Court stated in its May 15, 2009 ruling on Mr. Johnson's motion for discovery:

> The affidavit of the BOP Warden [Mark A. Bezy] provides a factual foundation for Johnson's claim that the government expert's testimony misled the jury regarding the BOP's ability to confine him immediately and indefinitely while at the same time minimizing the risk that Johnson would continue to be a danger to society. Moreover, the government has produced some information regarding other inmates held in strict conditions of confinement, also which seems to contradict the testimony of the government's expert and which could lend credibility to the testimony Johnson's expert might provide.

Opinion & Order at 7 [Doc. No. 71].

For all these reasons, Petitioner's *Brady* and *Johnson* claims are properly before the Court, and consideration of them in light of the current law and facts of record is appropriate.

## II.      The Suppressed Evidence Is Impeaching Under *Brady*

The government argues that all of the evidence presented in these proceedings concerning Warden Vanyur's testimony and future dangerousness is merely cumulative to that available to Petitioner in his post-trial and direct appeal. Govt. Resp. at 3 [Docket No. 99]. The government goes on to claim that inmates held under precisely the type of strict conditions of confinement Johnson's trial counsel proposed, but which Vanyur claimed were not possible, do nothing to impeach Vanyur's testimony if the inmates so housed were put there for disciplinary reasons. Govt. Resp. at 4-7 [Docket No. 99]. The government further offers that inmates who were ordered to be housed under such strict conditions directly by the sentencing court were a matter

4

of public record, and therefore cannot be *Brady* material.  *Id.*  Each of these arguments is without merit.

### A.    Inmates Held Under Highly Restrictive Conditions For Disciplinary Reasons

The government suggests that because BOP inmates Silverstein and Fountain committed crimes while incarcerated, the fact that they were each placed into highly restrictive conditions of confinement following their conviction and sentence would not impeach Vanyur's testimony. The government is mistaken.  Both Vanyur and the government ignore the overall safety and security policy reasons for such conditions of confinement.  Silverstein and Fountain were placed in highly restrictive conditions of confinement, at least in part, to protect other inmates and staff from their "future dangerousness." Tr. 2466.  Similarly, Felipe was so placed to protect others on the street that he might have ordered killed.  In both situations, the additional punishment suffered by the inmate, in the form of strict conditions of confinement, goes hand in hand with the goal of insuring the safety of other inmates, staff, and the general public.  It is, in short, to mitigate or eliminate the inmate's future dangerousness.

The BOP's ability to implement and maintain conditions of confinement necessary to ensure the safety of others was the point of Dr. Cunningham's testimony, while the government's goal with Vanyur's testimony and its arguments at the penalty phase was to convince the jury that the BOP was simply powerless to do what was necessary to maintain the safety and security of others, both inside and outside the prison walls.  Thus, the government repeatedly emphasized Warden Vanyur's now discredited testimony in its closing arguments, stating, *inter alia*:

> [A]s long as the defendant has the ability to convey his orders to his followers, either on the street or in prison with him, nobody is safe; no witness, no witness's

5

family, anybody who stands in his way, they are not safe.  It doesn't matter where he is locked up.

<div align="center">* * *</div>

[I]nmates with no outdates, those inmates that are facing life, like the defendant, they are the most dangerous, they have nothing to lose.  And that's why people like Mr. Johnson poses [sic] this threat.  Tr. 2593.

Mr. Johnson, no matter where he is, no matter when he is, is a future danger, he poses it to society as a whole, because through his own actions, his own words, and use your common sense, that no one is safe from the defendant. Tr. 2594.

[A]fter he is locked up when we as a society should feel safe, he is out there ordering more people killed. That is the type of evidence that is here. And that is why no one is safe as long as the defendant, Darryl Lamont Johnson, is allowed to live. Tr. 2598.

[T]he federal regulations do not allow somebody to go directly to the control unit. . . .The control unit at ADX Florence, you know he will not be going there.  Tr. 2646.

And is there any system, any prison system under the laws of our Nation that can stop the violence when your weapon is only one thing, your voice? That is the weapon that the defendant uses. Tr. 2647.

The evidence in this case shows beyond any reasonable doubt that there is a substantial danger that another witness or a witness's family member will be dead, because the defendant is a danger in prison. As long as he is alive he cannot be stopped from communicating, and that is all he needs. He does not need a weapon . . . all he needs is a telephone.

<div align="center">* * *</div>

There is no innocent bystander who is safe as long as the defendant can communicate with the outside world.  No prison system can stop him.  Tr. 2647-48.

The government correctly points out that "no law authorizes the BOP to commit a prisoner to a control unit for life, refusing to reassess risk periodically."  (Govt. Resp. at 7 [Docket No. 99]).  However, the government uses this fact to shoot down an argument never advanced by Johnson.  Contrary to the government's suggestion, Darryl Johnson's argument has never been that these strict conditions can be ordered "permanently," never to be revisited no matter how much time passes, or regardless of what facts or conditions might change.  Rather,

<div align="center">6</div>

Johnson's argument is now, and always has been, that the BOP has the power and the facilities to order and implement highly restrictive conditions of confinement "*for as long as the BOP deems it necessary* to ensure the security and safety or either prison staff other inmates, or the public (*i.e.* to reduce or eliminate the inmates' future dangerousness)."  Pet. Mot. For Consideration of *Brady* and *Johnson* Claims, Ex. C, Bezy Affid. at ¶¶ 12, 14; Ex. D, Bezy Supp. Affid. at ¶¶ 18, 22, 25, 34 [Docket No. 88] (emphasis added).  Johnson's longstanding position on this point has now been proven correct, and indisputably so, by former Warden Bezy's affidavits.

### B.     Warden Vanyur's Testimony About "Specific Instances" In the BOP

The government next says, Vanyur "was called to testify about general policies and procedures, not specific instances."  Govt. Resp. at 5 [Docket No. 99].  This assertion both misstates Vanyur's testimony, and is largely irrelevant to the issue presented by Johnson.

First, Warden Vanyur *did* testify about any number of "specific instances" involving various gang-affiliated inmates with convictions similar to Johnson, as well as about "specific instances" of mayhem allegedly initiated by certain prisoners.  He spoke specifically about the head of the Mexican mafia, the head of the Mexicana Mi gang, and the head of the Aryan Brotherhood, stating that they were not at ADX because they were gang leaders but because of "violent or escape-prone behavior" they engaged in after conviction and while incarcerated.  Tr. 2468.  Further, Vanyur offered a very fact-specific opinion that Darryl Johnson eventually – indeed in the near future -- would be housed in general population where "he would have open and frequent contact unrestrained with staff and inmates."  Tr. 2475.  He specifically opined that while in general population "it would be virtually impossible" to have Johnson "separate[d] from other Gangster Disciples."  Tr. 2475.  Vanyur testified that Johnson "would have a great deal of

7

open contact visiting with his family, probably in excess of twelve visits a month" and he "would have virtually unlimited phone access" and "unlimited correspondence privileges." Tr. 2477. "The only time we would limit his telephone access or his visiting privileges is if [he] actually tried to violate the rules in the process of a visit or in the process of a phone call." Tr. 2478 In short, Warden Vanyur told the jury in very specific terms that Darryl Johnson would have the unfettered ability to use his "weapon of choice," his voice, to communicate within the prison and to the outside world. All of this testimony was a means to drive home the points that "[No one] is safe as long as [Johnson] can communicate with the outside world. No prison system can stop him." Tr. At 2647-48.

According to Vanyur, the overwhelming majority of convicted murderers in the BOP were housed in "open population" where they have "constant contact, unrestrained with other staff and inmates" and "virtually unlimited access to telephone and a great deal of open visiting contact." Tr. 2472. This type of relatively liberal confinement, Vanyur said, is where Darryl Johnson was inevitably headed.

Vanyur testified that Johnson did "not fit the profile for a person to be assigned to the ADX." Tr. 2483, citing 28 CFR §541. Further, even if Johnson made his way to the ADX control unit, Vanyur testified he would "never [be] placed in a control unit on a permanent status" and even while he was there, he would have at least "one 15 minute phone call per month," "up to five visits per month," and "virtually unlimited correspondence with the outside world." Tr. 2485. Further, Vanyur testified that, given his convictions and history, Darryl Johnson almost certainly would be housed in general population facility, where "he would have open and frequent contact unrestrained with staff and inmates" and it would be a virtual certainty

8

that he would be housed with fellow Black Gangster Disciples.  Tr. 2475.  And even if he went

to ADX temporarily, Vanyur said, Johnson would "have contact with staff on a frequent and

daily basis.  They're constantly coming in contact with staff," implying that great danger existed

regardless of the facility, and the BOP had no precautions or procedures to deal with cases where

dangerous conduct was truly a concern.  Tr. 2485.

In sum, through Warden Vanyur, the government starkly, and under the authoritative

auspices of a high-ranking officer of the BOP, told the jury that the only way to keep Johnson

from ordering another murder was to put him to death.  As the evidence now before this Court

makes clear, that evidence and argument was, and is, false.

Based on Vanyur's testimony, both that quoted here and the more voluminous quotes in

our prior pleadings, the government very pointedly argued to the jury that "the federal

regulations do not allow somebody to go directly to the control unit. . . .The control unit at ADX

Florence, you know he will not be going there."  (Tr. 2646).  "There is no innocent bystander

who is safe as long as the defendant can communicate with the outside world.  No prison system

can stop him." Tr. 2647-48.  In sum, the government argued, unless the jury ordered Johnson's

execution, he would not be stopped ― indeed, pursuant to BOP policies and practices, ***could not***

be stopped ― from ordering further violence from prison.  Again, this argument, the centerpiece

of the government's closing argument, was based on grossly misleading, if not outright false,

testimony by Warden Vanyur.

9

**C.      Inmates Ordered By The Courts To Be Housed Under Highly Restrictive Conditions**

The government next argues that "the Solicitor General, conceded at the *certiorari* stage on direct appeal the [sic] Vanyur's testimony was incomplete and may have left the jury with the mistaken impression that no such authority existed" only because he did not testify about "regulations authorizing the Attorney General to direct the BOP Director to have an inmate housed in restrictive conditions straight from the sentencing court."  Govt. Resp. at 8 [Docket No. 99].  Since these regulations and statute are publicly available, says the government, they cannot be the basis of a *Brady* claim.

Johnson has never asserted as the basis for his *Brady* claim that the government suppressed "a statute, a set of publicly published regulations, public court cases applying them," as the government suggests.  Govt. Resp. at 8 [Docket No. 99].  To the extent this was not clear, let us be precise now.  ***What was suppressed in this case that constitutes a Brady violation were the facts regarding the actual practices the BOP employed both before and at the time of Johnson's penalty phase hearing***.  Johnson has now both discovered and proven that the BOP was routinely housing — for as long as the BOP deemed necessary — any number of inmates under the very types of strict conditions of confinement Vanyur testified were neither possible nor permissible to impose for any length of time, and the BOP was doing so fairly routinely at any number of different BOP facilities.

As set out in some detail in former Warden Bezy's two affidavits, the BOP was, prior to and at the time of Darryl Johnson's sentencing hearing, housing inmates in highly restrictive conditions of confinement whenever necessary and for as long as was deemed necessary by the

BOP.  The government's argument reads as though we have discovered just one or two isolated

instances of BOP prisoners being housed under strict conditions of confinement for as long as

deemed necessary.  Having obtained only a small amount of Court-ordered discovery from the

government, we have identified no less than 24 specific inmates *by name*[1] who have been held

under the very strict conditions of confinement that Warden Vanyur testified could not be

imposed for any extended length of time.  And, as former Warden Bezy's two affidavits makes

clear, these situations are a normal part of the BOP's operations – and had been for a long time

prior to Darryl Johnson's sentencing hearing.

Indeed, contrary to Vanyur's testimony that there were essentially no places to impose

these highly restrictive conditions of confinement, the BOP was using "side pockets" or "special

cells", and Special Housing Units ("SHU's") within every maximum security BOP facility, for

inmates deemed exceptionally dangerous at the time of Johnson's trial.  Pet. Mot. For

Consideration of His *Brady* and *Johnson* Claims, Ex. C, Bezy Affid., at ¶11, 13; Ex. D, Bezy

---

[1] These inmates that we have been able to specifically identify include: (1) Barry Mills, (2) T.D. Bingham, (3) Jeff Fort, (4)John Walker, (5) Ed Wilson, (6) Jonathon Pollard, (7) Christopher Boyce, (8) David Sahakian, (9) Luis Felipe, (10) Rodney Hamrick, (11) Thomas Silverstein, (12) Clayton Fountain, (13) Theodore Kaczynski, (14) Manuel Noriega, (15) Eric Rudolph, (16) Ramzi Yousef, (17) Anthony Ayeni Jones, (18) Terry Nichols, (19) Hakeem Shaheed, (20) Tyrone Davis, (21) John Gotti, and (22) Yu Kikumura, (23) Norman Matthews, and (24) Adolph Reynoso.  (*See* Ex. D. to Pet's Lead Brief, Bezy Supp. Affid. at ¶¶5, 23, 25, 26, 31, and 38). This number does not include the general knowledge about other, unnamed individuals who were housed under strict conditions of confinement, whether in a Control Unit, a SHU, the "K-Unit," the "I-Up Unit," or any other "side-pocket" or other detention unit where these types of strict conditions of confinement are "***routinely imposed*** on high-risk inmates by the BOP for as long as it deems those conditions necessary to ensure the security and safety of BOP staff, other inmates, and the public (*i.e.* to reduce or eliminate the inmate's future dangerousness)."  *Id*. at ¶34 (emphasis added); *see id.* at ¶¶23-33, 37-39.

Supp. Affid. at ¶¶23, 30-32 [Docket No. 88].  Other individuals deemed to be dangerous or a

security threat were housed in "Control Units," sometimes for up to five years, based on their

offense.  Pet. Mot. For Consideration of His *Brady* and *Johnson* Claims, Ex. C, Bezy Affid. at ¶7

[Docket No. 88].  At the BOP's Marion facility, there were also housing units known as the "K-

Unit" and the "I-Up Unit" where inmates who were deemed to be a future danger were housed

under strict conditions of confinement.  Pet. Mot. For Consideration of His *Brady* and *Johnson*

Claims, Ex. C, Bezy Affid. at ¶9-10 [Docket No. 88].

The knowledge about, and documentary evidence of, these actions by the BOP were

contained in confidential records maintained within the exclusive possession of the BOP, and

thus were not discoverable by the defense thru any means other disclosure by the government.

*See* Pet. Mot. For Consideration of His *Brady* and *Johnson* Claims, Ex. C, Bezy Affid., at ¶15

[Docket No. 88](records kept at individual BOP facilities and in inmate files).  And there can be

no doubt, in light of the testimony by Warden Vanyur and the closing arguments of government

counsel, that this information was "favorable to the defense" and/or "impeachment evidence"

that should have been turned over to the defense.  As summarized in Johnson's lead brief,

> Mr. Johnson has demonstrated that the government was in
> possession of significant impeachment evidence that it failed to
> turn over to the defense.  This includes the information which the
> government has belatedly disclosed regarding other inmates held in
> strict conditions of confinement, as well as all the extensive
> information contained in Warden Bezy's two affidavits regarding
> the policies and procedures in place at the time of Mr. Johnson's
> trial that were routinely used to neutralize the risk of future
> dangerousness posed by certain inmates, and a large and growing
> number of inmates who were, at the time of Mr. Johnson's trial,
> being held under those conditions.

Pet. Mot. For Consideration of His *Brady* and *Johnson* Claims at 3 [Docket No. 88].

In sum, in light of the information contained in the two Bezy affidavits, as well as the information turned over by the government pursuant to this Court's prior order, Johnson presents a textbook *Brady* claim.  Johnson's *Brady* claim is premised not on "a statute, a set of publicly published regulations, and public court cases applying them" (Govt. Resp. at 8), but on the *factual matters* that have now come to light about the ***actual practices of the BOP*** and the numerous instances we have since discovered in which the BOP was housing inmates, for as long as deemed necessary, under exactly the type of strict conditions of confinement that Warden Vanyur testified it would not, could not, and did not impose.  *See* Pet. Mot. For Consideration of His *Brady* and *Johnson* Claims [Docket No. 88].  Relief pursuant to *Brady v. Maryland* and its progeny is clearly warranted under these facts.

### III.     Under the Facts of This Case, Information Known To Vanyur and the BOP Falls Under *Brady*,  Irrespective of the Good Faith of The Prosecutors

The government asserts that the *Kyles v. Whitley*, 514 U.S.419 (1995) holds that prosecutors only "have a duty to discover and disclose exculpatory information in the possession of the police department that investigated the crime." Govt. Resp. at 9-10 [Docket No. 88].  Because neither Warden Vanyur nor the BOP was a member of the "prosecution team that investigated" Johnson's case, they had no professional interest in the outcome, and therefore, argues the government, the prosecution was not required to disclose all of the evidence which contradicted and impeached Vanyur's testimony.  Govt. Resp. at 10 [Docket No. 88].  The government's argument is contrary to *Kyles*.

In *Kyles*, the Supreme Court reiterated "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is

material either to guilt or to punishment, irrespective of the good faith or bad faith of the

prosecution."  514 U.S. at 432, quoting, *Brady v. Maryland*, 408 U.S. 786, 794-795 (1972).  In

discussing materiality, the Court stated that an "individual prosecutor has a duty to learn of any

favorable evidence known to the ***others acting on the government's behalf in the case***,

including the police."  *Kyles*, 514 U.S. at 437 (emphasis added).

Here, there can be no doubt that Warden Vanyur, a high-ranking official of the BOP, was

someone "acting on the government's behalf in the case."  In Johnson's case, Vanyur and the

BOP were assisting the government in attempting to secure a sentence of death.  His assistance

included meeting with prosecutors (Tr. 2495) gathering statistics concerning the prison

population (Tr. 2466, 2469, 2472-74) reviewing Johnson's prison records (Tr. 2495, 2498), and

listening to the testimony of Dr. Cunningham and commenting on the same (Tr. 2467-68, 2470,

2482, 2484, 2487, 2491).  He works for an arm of the Department of Justice (*i.e.*, the BOP), just

as the prosecutors did.  And quite importantly, he acted as a DOJ-employed expert witness for

the prosecution at Johnson's penalty phase trial.  While the BOP may not have investigated the

underlying crimes, it clearly participated in the prosecution of the death sentence against Johnson

and was certainly "acting on the government's behalf in [Johnson's] case."  *Kyles*, 514 U.S. at

437.  The government's *post-facto* attempt to distance itself from Warden Vanyur rings hollow

in light of the facts.

The government argues that the Seventh Circuit has further restricted responsibility of

prosecutors to evidence or information in the hands of members of the prosecution team such as

DEA and police, citing to *United State v. Morris*, 80 F.3d 1151, 1169 (1996).  Govt. Resp. at 9-

10 [Docket No. 99].  In *Morris*, the defendant in post-trial motions and on direct appeal argued

that the government suppressed material exculpatory information in the hands of the Office of Thrift Supervision, the Securities and Exchange Commission, and the Internal Revenue Service in violation of *Brady*. The district court found that the "defendants had failed to show that the government's prosecution team had been aware of the existence of the allegedly suppressed documents." *Id.* at 1168. According to the district court findings, there were over 700 boxes of documents which "were generally open and available to litigants and their counsel in this criminal prosecution" and "that defendants had been given the same opportunity as the government to discover the identified documents." *Id.* at 1168, n13. Further, the court found that the defendants "knew as much about the OTS, SEC, and IRS investigations as the prosecution team itself did" because they were part of separate litigation brought by those agencies. *Id.* at 1170.

The relevant facts of the instant case bear no resemblance to *Morris*. Here, unlike *Morris*, Vanyur was clearly "part of prosecution team" and certainly was "acting on the government's behalf." Here, unlike *Morris*, the information claimed to have been suppressed was not "generally open and available to [Johnson] and [his] counsel in this criminal prosecution." Here, unlike *Morris*, Johnson had no opportunity to "discover the identified documents" because the suppressed information was in the sole custody and knowledge of Warden Vanyur's BOP. Under these facts, to hold, as the government argues, that the government was not responsible for disclosing evidence that (a) was plainly and particularly within the knowledge of the BOP and Warden Vanyur, and (b) directly contradicted (or at least severely impeached) Warden Vanyur's testimony would run afoul of *Kyles*.

To find that the government was not responsible for disclosing evidence plainly in the hands of the BOP that directly contradicted Warden Vanyur's expert testimony given on behalf of the prosecution would fly in the face of *Kyles*.  *Kyles* charges prosecutors with "a duty to learn of ***any favorable evidence*** known to ***the others acting on the government's behalf in the case***, including the police."  *Kyles*, 514 U.S. at 437 (emphasis added).  The government's argument that its prosecutors were exempt from any duty to disclose evidence that directly contradicted Vanyur's testimony is merely another attempt to direct this Court's attention away from the merits of Johnson's claim.

## IV.    There Is No Procedural Default

Finally, the government's argument that Johnson's *Brady* claim is procedurally defaulted is without merit.  Pointing to Judge Conlon's memorandum opinion and order, the government asserts that because Johnson did not raise his *Brady* claim on direct appeal, it is procedurally defaulted.  Govt. Resp. at 3 [Docket No. 99].   Further the government misconstrues Johnson's argument, claiming that Johnson merely argues that "the legal landscape has changed."  Govt. Resp. at 3 [Docket No. 99].

The most significant import of the change in the legal landscape brought about by *Massaro v. United States*, 538 U.S. 500 (2003) is that this Court ordered certain discovery for Johnson.  That discovery led to Johnson uncovering extensive facts in support of his *Brady* claim, including those directly disclosed by the government in response to the discovery ordered in this case and those discussed in the affidavit of former BOP Warden Mark A. Bezy.  Pet. Mot. For Consideration of *Brady* and *Johnson* Claims, Exs. C and D [Docket No. 88].  As noted by

16

this Court, Mr. Bezy's affidavit "provides a factual foundation for Johnson's claim that the

government expert's testimony misled the jury regarding the BOP's ability to confine him

immediately and indefinitely while at the same time minimizing the risk that Johnson would

continue to be a danger to society" and "outlines a pattern of evidence that appears to contradict

much of what the government's expert testified to."  Opinion & Order at 6-7 [Docket No. 71].

These facts were not discovered prior to direct appeal, nor could they have been.  As stated in

*Strickler v. Greene*, 527 U.S. 263, 287 (1999), "In the context of a *Brady* claim, a defendant

cannot conduct the "reasonable and diligent investigation" mandated by *McCleskey[1] [v. Zant]* to

preclude a finding of procedural default when the evidence is in the hands of the State."

The government cites *Lewis v. Sternes*, 390 F.3d 1019, 1028 (7th Cir. 2004) for the

proposition that *Massaro*, "says nothing about *Brady* claims, which the Seventh Circuit . . . still

treats as procedurally defaulted if they could have been raised, but were not, prior to collateral

attack."  Govt. Resp. at 3 [Docket No. 99].  In short the court held that Lewis' *Brady* claim had

been defaulted when it was not raised in the appeal of the denial of his state post-conviction

petition.  *Id.* at 1028.  *Lewis* is decidedly unenlightening given the starkly different facts

presented regarding Darryl Johnson's *Brady* claim.

Johnson's trial record was not developed for the purpose of litigating either his

ineffectiveness claim or his *Brady* claim.  The record on direct appeal was both incomplete and

inadequate for the purpose of the appellate court determining whether and what evidence was

suppressed by Vanyur and the BOP and its prejudicial effect.  It has only been through the

discovery ***during this Sec. 2255 proceeding*** of the names of additional inmates who were housed

---

[1] *McCleskey v. Zant*, 499 U.S. 467 (1996).

under highly restrictive conditions of confinement by the BOP at the time of Johnson's trial and the evidence supplied in Mr. Bezy's affidavits that Petitioner has been able to acquire the evidence to fully establish his *Brady* claim. It would be a strange result, indeed, if one were found to have procedurally defaulted a *Brady* claim prior to coming into possession of the information that establishes the *Brady* violation. There was no procedural default here, and the government's attempt to avoid the merits of Johnson's *Brady* claim should be rejected.

## V.      Petitioner's *Johnson v. Mississippi* Claim

The government acknowledges, as it must, that the 8th Amendment prohibits "imposition of a death sentence based on constitutionally impermissible or inaccurate information." *Johnson v. Mississippi*, 486 U.S. 578, 584 (1988). Here, the government secured Johnson's death sentence in no small part through use of the misleading, inaccurate, and prejudicial testimony of Warden Vanyur. The government devotes little of its response to addressing the merits of this claim, merely stating in a single paragraph that the claim is procedurally defaulted and is only a reprisal of the "argument that Vanyur's testimony was materially false and inaccurate," claim rejected by the Seventh Circuit in Johnson's direct appeal. Govt. Resp. at 10-11 [Docket No. 99]. These arguments are without merit.

As set out above, Johnson's trial record was not developed for the purpose of litigating his ineffectiveness claim or his *Brady* claim. The same holds true for his *Johnson v. Mississippi* claim. As trial counsel was admittedly unprepared for Warden Vanyur's rebuttal testimony and likely unaware that it was inaccurate if not out and out false, the record before the appellate court was "incomplete" and "inadequate" to allow the appellate court to review the claim. It has only

been through the discovery of the actual practices of the BOP, the ever-growing number of names of additional inmates who were housed under highly restrictive conditions of confinement by the BOP at the time of Johnson's trial, and the evidence supplied in Mr. Bezy's affidavits that this issue has been able to be sufficiently factually developed.

Based upon the facts presently before the Court, there can be no doubt that Johnson's jury was misinformed by Vanyur of both the BOP's and the court's ability to impose individualized highly restrictive conditions of confinement for as long as the BOP deemed necessary in order to eliminate any risk of future danger to prison staff, other inmates, witnesses, witnesses' families, innocent bystanders, society as a whole, or anyone else mentioned by the government in its closing argument. Tr. 2593, 2594, 2598, 2647-48. This is the essence of a claim under *Johnson v. Mississippi*, and relief, therefore, is warranted.

## CONCLUSION

For all the reasons set forth above, as well as those contained in our prior pleadings with the Court, Petitioner Darryl Lamont Johnson respectfully requests that the Court grant Johnson's §2255 petition based on his *Brady v. Maryland* and *Johnson v. Mississippi* claims (as well as on the other grounds raised in his Petition), vacate his sentence, order a new sentencing hearing, and grant whatever other relief it deems just and proper.

Respectfully submitted,


/s/ Terence H. Campbell_____        /s/ Lorinda M Youngcourt_____

Terence H. Campbell                            Lorinda Meier Youngcourt
Cotsirilos, Tighe & Streicker, Ltd.            Youngcourt Law Office

33 North Dearborn Street, Suite 600                    P.O. Box 206
Chicago, Illinois 60602                                 Huron, Indiana 47437-0206
(312) 263-0345                                          (866) 274-3218

*Counsel for Darryl Lamont Johnson*

## Certificate of Service

Terence H. Campbell, an attorney, hereby certifies that in accordance with Fed.R.Crim.P.

49, LR 5.5, and the General Order on Electronic Case Filing (ECF), the following document:

1. Darryl Johnson's Final Reply In Support of His *Brandy v. Maryland* and *Johnson v. Mississippi* Claims

was served pursuant to the District Court's ECF system as to ECF filers, including the United

States Attorney's Office.

/s/ Terence H. Campbell
Terence H. Campbell



IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLONIS

EASTERN DIVISION

**FILED**

NOV - 5 2010

Nov 5 2010

MICHAEL W. DOBBINS

CLERK, U.S. DISTRICT COURT

DARRYL JOHNSON,

    Petitioner,

vs.

               Case No. # **02C6998**

UNITED STATES OF AMERICA,

    Respondent.

---

## MOTION FOR LEAVE TO CONDUCT DISCOVERY AND SUPPORTING MEMORANDUM OF LAW

The Petitioner Darryl Johnson (hereafter referred to as "Johnson" and/or "Petitioner"), acting pro se, pursuant to the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and pursuant to Rule 6 of the Rules Governing §2255 Proceedings, files his initial Motion for Leave to Conduct Discovery and Supporting Memorandum. This pro se request for leave to conduct discovery, which includes request for production of records, documents, FBI rough notes, taped interviews with confidential informants and other adverse witnesses and other germane evidence, is necessary for the investigation and presentation of the constitutional claims to be raised in Johnson's 28 U.S.C. §2255 motion. Further discovery request will likely be forthcoming once the Court has ruled upon Johnson's initial discovery request and Johnson has had a reasonable opportunity to conduct to conduct whatever additional discovery is necessary, if

1.

any, that this Court determines appropriate under governing law. Because of appointed habeas counsels deep rooted obstinacy to filing authorized discovery in these capital proceedings, and because Johnson is without redress or remedy under law for habeas counsels ineffectiveness during habeas proceedings he is asking the Court to accept and rule under applicable law to the discovery requested presented herein fully with consideration to the paramount seriousness of these capital proceedings.

As a general matter, discovery is authorized by Rule 6 of the Rules Governing 28 U.S.C. § 2255 Proceedings. The requested discovery as set forth in more detail below is essential to guarantee the Petitioner a full and fair opportunity to discover, develope and fairly present in his §2255 motion (and any subsequent amendments to that motion) all possible constitutional claims for relief in his case and the factual bases for such claims. The contents of any §2255 motion filed prior to the authorization of such discovery (and sufficient time thereafter to investigate fully all possible leads arising from such initial discovery) will necessarily be incomplete both as to the scope and content of the claims to be presented as well as to the underlying factual predicate for any claims that are presented in the initial § 2255 motion. In addition, unless the Court authorizes Johnson to conduct such discovery, this Court will be deprived of any meaningful opportunity to review and resolve all such claims and their underlying factual bases.

For these reasons, Petitioner request that this Court resolve the issues contained in this and any subsequent motion for discovery prior to foreclosing Johnson from a final opportunity to amend his § 2255 motion, and prior to the scheduling of an evidentiary hearing on any claims set forth in Johnson's amended § 2255 motion.

2.

## I.   LEGAL AUTHORITY FOR DISCOVERY

### A. Introduction

Rule 6 of the Rules Governing § 2255 Proceedings for the United States District Courts gives this Court express authority to order discovery:

> A party may invoke the process of discovery available under the Federal Rules of Criminal Procedure, which includes corresponding discovery rule for § 2254 available under both the Federal Rules of Criminal Procedure and the Federal Rules of Civil Procedure, and elsewhere in the usage and principles of law if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so.

Rule 6(a) incorporates the United States Supreme Court's directive that a federal ahbeas corpus petition is "entitled to careful consideration and plenary processing of [his claims,] including full opportunity for presentation of the relevant facts." Harris v. Nelson, 394 U.S. 286, 298 (1969); see also Blackledge v. Allison, 431 U.S. 63, 82-83 (1977); cf. Rules Governing § 2254 Cases in the United States District Courts, Advisory Committee Note to Rule 6 ("Subdivision (a) is consistent with Harris v. Nelson, supra at 298. Here Johnson clearly satisfies the consideration of requirements for the Court to grant his discovery request.

### B.   Good Cause

The Court may grant § 2255 petitioners such as Johnson leave to conduct discovery when "good cause" for doing so is shown. Under guiding principles set out by the United States Supreme Court, "good cause" for discovery in habeas corpus proceedings is established "where specific allegations before the court show reason to believe that the petition may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." Bracy v. Gramley, 520 U.S. 899, 908-909 (1971).

In granting certiorari review, the Supreme Court found both the district courts, as well as the Seventh Circuit's determinations that Bracy was not entitled

to requested discovery to be erroneous, not properly considered under the applicable standards of law. <u>Bracy II, 520 U.S. at 903.</u> The Supreme Court, held, inter alia, that, the proper review of a habeas petitioner's discovery request is:

> In any event, difficulties of proof of claims sets aside, there is no question that, if the materials requested could prove claims presented, as Bracy'- made against Judge Maloney such would violate the Due Process Clause of the Fourteenth Amendment.

Briefly touching on the facts underlying Bracy's discovery request, he was convicted of capital murder and sentenced to death in 1981 by Cook County Circuit Judge Thomas J. Maloney. He sought discovery to demonstrate Judge Maloney's bias in his conviction, inasmuch as Judge Maloney accepting bribes from criminal defendants in his court, and either arranging for acquicals or convictions reduced to low grade offensive. Whereas, because Bracy did not afford Judge Maloney with expected bribes he was convicted of capital murder and actually ruled against him in numerous pre-trial proceedings to compensate for the many pro-defendant rulings previous to and after Bracy's case. Bracy sought discovery under Rule 6(a) "so he could try to find out whether there was actual bias by Judge Maloney at his trial. The district court denied such as being too speculative and the Seventh Circuit, although with a strong dissent affirmed such discovery being denied. Granting certiorari review the Supreme Court reversed such holding that the district court and Seventh Circuit used the wrong analysis in considering Bracy's discovery request. Even those the Supreme Court aggreed that the theory of compensatory judicial bais was "quite speculative," the Court maintained that speculative considerations are not sole determinative for granting Rule 6(a) discovery.

Applying the governing law to the facts, the Court explained the proper application of Habeas Rule 6:

In <u>Harris</u> [v. Nelson, 394 U.S. 286 (1969)], we stated that "where specific

allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." 394 U.S. at 300. Habeas Corpus Rule 6 is meant to be "consistent' with harris . . . It may well be, that a petitioner will not be able to obtain sufficient evidence to . . . [prove his claim], but we hold that he has established a sufficient showing, as required by Habeas Corpus Rule 6(a), to establish "good cause" for discovery when the claims presented are tenable. Bracy II, 520 U.S. at 908-09.

So long as the information before the court "support[s] the inferences" of constitutional deprivation alleged by the petitioner, "good cause" exist and discovery is mandated if "[t]he information requested by the petitioner would tend to prove or disprove the validity of such inferences and is relevant to petitioner's claim. Rice v. Black, 112 F.R.D. 620, 626 (D.Neb.1986). See e.g., Rice v. Clarke, 923 F.2d 117, 118-19 (8th Cir. 1991)(discovery of relevant FBI records required); East v. Scott, 55 F.3d 996, 1001 (5th Cir. 1995)(where petitioner alleged Brady violation, entitled to discovery tp prove allegations), granting relief after discovery, East v. Johnson, 1997 WL 570214 (5th Cir. 1997); Teague v. Scott, 60 F.3d 1167 (5th Cir. 1995); Toney v. gammon, 79 F.3d 693 (8th Cir. 1996)(petitioner entitled to discovery of physical evidence to establish constitutional claims).

It should also be noted that in a §2255 case, like a civil case, discovery necessarily precedes resolution of claims on summary judgment. To be entitled to discovery, Johnson need not conclusively establish his entitlement to relief on the merits of his claims. Payne v. Bell, 89 F.Supp.2d 967, 971 (W.D.Tenn.2000)(good cause to grant discovery is not as high as the standard for granting relief

5.

or even as that for granting an evidentiary hearing).  Johnson's discovery request presented with specific identification and reeasoning predicating such more than satisfies the "good cause" standard for granting such.

### C.  McClesky v. Zant

In McCleskey v. zant, 449 U.S. 467, 489 (1991), the United States Supreme Court held that a habeas petitioner abuses the writ of habeas corpus by raising a claim in a subsequent petition that he could of raised in the first, regardless of whether the failure was deliberate or not.  A federal habeas petitioner must include in his initial petition "what petitioner knows or could have discovered upon reasonable investigation. . ." Id. at 498.  Otherwise, he will later be foreclosed from having new claims considered on the merits in subsequent habeas actions.

Here, Johnson now seeks to make a "reasonable investigation" into all claims or potential claims for which he has a good faith basis to believe exist in his case, and to "pursue the matter through the habeas process" of discovery under Rule 6, the procedure expressly articulated by the Supreme Court in McCleskey. Having placed an affirmative duty upon those seeking habeas relief to raise all claims in their initial petition, McCleskey places a concomitant duty upon the federal courts to provide petitioners with the necessary tools to meet this obligation, including discovery and services necessary for Johnson to effectively utilize these discovery tools.  Because this is Johnson's first §2255 motion and he sets forth below sufficent basis for alleging possible deprivations of his constitutional rights, McCleskey entitles him to discover evidence and information which could prove that he is entitled to relief.

### D.  The AEDPA

The severe and potential fatal consequences of any perceived failure on the part of a habeas petitioner to raise, as soon as practicable, all constitutional

claims in a habeas corpus petition have been codified and expnaded upon by
Congress with passage of the Anti-Terrorism and Effective Death Penalty Act
["AEDPA"] of 1996.  Under the AEDPA, claims not raised in an initial petition
must be cerified by the Circuit Court as either based on newly discovered evidence
establishing actual innocence or based upon a new rule of constitutional law
that was previously unavailable.  See 28 U.S. §2255.  In short, the AEDPA expands
upon the limitations set forth in McCleskey concerning the litigation of new
claims in second or successive habeas corpus petitions, thereby underscoring the
necessity of raising all possible claims in the first petition.  With that nec-
essity, therefore, comes a corollary duty on the part of the federal judiciary
to provide habeas petitioners the means for discovering, developing and presenting
all such claims and their factual bases through the recognized and available
tools of claims/fact development, including discovery.

F.   Discovery Is Especially Warranted in a Capital Case

The policies favoring discovery are even stronger in capital cases than
in noncapital cases because the "finality" of death and its "qualitative[]diff-
erences from a sentence of imprisonment, however long," magnifies the "need for
reliability" and, accordingly, the need for reliable fact-determination pro-
cedures.  Woodson v. North Carolina, 428 U.S. 280, 305 (1976); McFarland v.
Scott, 512 U.S. 849, 855 (1994).  Because this is a death penalty case, broad
discovery is necessary to ensure that extra measure of process is taken which
are demanded in capital cases.  "[I]f death is involved, the petitioner should
be presented every possible opportunity . . . to present facts relevant to his
constitutional claims."  Wilson v. Butler, 825 F.2d 879, 883 (5th Cir. 1987).  In
fact, the capital petitioner who fails to request discovery in his initial
habeas petition may lose his life because he failed to investigate his case

7.

earlier. <u>Tucker v. Kemp</u>, 819 F.2d 978, 981 (11th Cir. 1987)(on the eve of his execution, the court found abuse of the writ and denied relief where capital petitioner failed to timely seek discovery during the filing of his first habeas petition). Given the gravity of this capital case, Johnson requests this Court's leave to conduct discovery which will enable him to fully investigate, deveop, and present any and all relevant constitutional claims for relief in his capital habeas 2255 motion

## II. DISCOVERY REQUESTS

### A. Investigation Files

The Petitioner moves this Court to order the Government to produce any and all records, notes, 302s, including initial drafts of 302s, and other documents possessed by the Federal Bureau of Investigation ("FBI") pertaining to the investigation and prosecution in his capital conviction. Upon information and belief, Johnson is claiming that the Government engaged in misconduct in numerous ways in this case, including, but not limited to: falsifying declarations and/or testimny to the grant jury in obtaining a indictment, altered and/or manufactured both physical and testimony evidence in transcripts, as well as knowingly using suborn testimony by confidential informants for establishing probable cause for issuance of warrants and in gaining a capital conviction.

### B. Charles Banks

The Petitioner moves this court to order the Government to produce any and all records, notes (including rough notes taken by the FBI), including initial drafts or 302s, and other documents possessed by the FBI and/or Prosecuting Attorney's Office pertaining to questioning of **Charles Banks** relevant to Johnson's capital conviction and collateral investigation. More specifically, Johnson

8.

moves the Court to order the Government to produce and turn over to him all relevant rough notes and/or notes taken by agents during the January, 1995 surveillance of his residence by the FBI, which includes specifically on the date that Charles Bank alleges to have made contact with Johnson. Johnson request a copy of the tape that recorded the alleged contact Bank's claims to of encountered with Johnson on that date, as well as the transcript of that tape.

<div align="center">CONCLUSION</div>

Given the gravity of this capital case Darryl Johnson, request leave to conduct the requested discovery, including production of records and evidence, which will enable him to fully investigation, develop, and present any and all relevant constitutional claims, but not limited to prosecutorial misconduct and ineffective assistance of counsel. Thereis "good cause" for this discovery, there the Court should readily grant Johnson to conduct discovery and order the materials delineated through the above to be produced, and if not produced by the Government then reasons set forth by the Government for its failure to produce relevant documents, records and tapes, and other requested evidence.

For all the reasons set forth above, Johnson respectfully request that this Court grant him the requested discovery and other relief set forth in this motion.

Dated: November 1st., 2010

RESPECTFULLY SUBMITTED,

Darryl Johnson # 06710 – 424
United States Penitentiary
P.O. Box 33
Terre Haute, IN 47808

<div align="center">9.</div>

## Certificate Of Service

This is to certify that the undersigned did serve a true and correct of the foregoing "Motion For Leave To Conduct Discovery And Supporting Memorandum of Law" on the United States Attorney, United States Attorney's Office, United States Courthouse, 219 South Dearborn Street, Chicago, Ill 60604 via U.S. Mail, First Class postage prepaid on this 1st. day of November, 2010.

Darryl Johnson
Deponent

10.

Order Form (01/2005)

*MHN*

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6998 | **DATE** | 12/13/2010 |
| **CASE TITLE** | UNITED STATES of AMERICA v. DARRYL LAMONT JOHNSON | | |

**DOCKET ENTRY TEXT:**

Enter Memorandum Opinion and Order. The Court GRANTS Defendant-Movant's motion to vacate his sentence [1]. All other motions are terminated as moot.

■[For further details see separate order(s).]

Docketing to mail notice and AO-450.



Page 1 of 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | No. 02 C 6998 |
| v. | ) | |
| | ) | The Honorable William J. Hibbler |
| | ) | |
| DARRYL LAMONT JOHNSON, | ) | |
| | ) | |
| Defendant-Movant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

In 1997, a jury convicted Darryl Lamont Johnson for ordering the murder of a person assisting in a federal criminal investigation and ordering the murder of that person and another in furtherance of a continuing criminal enterprise, among 41 other counts. The jury later concluded that death was the appropriate sentence. The Seventh Circuit denied Johnson's appeal and the Supreme Court denied his petition for a writ of *certiorari. United States v. Johnson*, 223 F.3d 665 (7th Cir. 2000); *Johnson v. United States*, 534 U.S. 829, 122 S. Ct. 71, 151 L.Ed.2d 37 (2001).

Johnson then sought to set aside his sentence pursuant to 28 U.S.C. § 2255. In his petition, Johnson raised a number of claims, including a claim of ineffective assistance of counsel, a claim that the Government withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963), and a claim that his sentence was based on materially incomplete, false and/or inaccurate information in violation of the Eighth Amendment, *see Johnson v. Mississippi*, 486 U.S. 578, 584-86, 108 S. Ct. 1981, 1986-87, 100 L.Ed.2d 575 (1988). The Court denied Johnson's

1

§ 2255 motion, holding that he procedurally defaulted all three of the aforementioned claims because he failed to raise those claims in his direct appeal.

A few years after the initial ruling on Johnson's § 2255 motion, the Supreme Court announced its decision in *Massaro v. United States*. 538 U.S. 500, 509, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003). In *Massaro*, the Supreme Court held that a petitioner may bring an ineffective assistance of counsel claim in a collateral proceeding whether or not the petitioner could have raised the claim on direct appeal. *Id.* Consequently, the Court vacated the portion of its ruling concerning Johnson's ineffective assistance of counsel claim.[1] Following discovery, the parties provided the Court with supplemental briefing on the merits of that claim. In addition, Johnson moves the Court to once again address his *Brady* and *Johnson* claims based on what he believes to be changes in relevant law and facts. For the following reasons, the Court grants Johnson's § 2255 motion based on his ineffective assistance of counsel claim. The Court therefore vacates his death sentence and awards him a new sentencing hearing. In addition, Johnson's motion for consideration of his other claims is therefore moot.

## I. Background

Johnson's ineffective assistance claim centers on trial counsel's efforts to convince the jury to impose a sentence of life imprisonment rather than one of death. At Johnson's sentencing, counsel presented evidence about the custodial options for housing him. In particular, Johnson presented evidence to suggest that if he were placed permanently in the control unit in ADX-Florence, where inmates are confined to their cells 23 hours per day and not allowed contact with other inmates, he

---

[1] Another judge in this district initially ruled on Johnson's § 2255 motion and the motion to reconsider pursuant to *Massaro*. The executive committee has since reassigned the case.

would have no opportunity to carry out a continuing criminal enterprise and his dangerousness to society would be mitigated.

In rebuttal, the Government called an expert, a Bureau of Prisons (BOP) warden, who had formerly served as Assistant Warden at ADX-Florence. That witness testified generally about what BOP placement was likely in Johnson's case. He testified that typically gang leaders like Johnson go to the general prison population, rather than some more restrictive setting. He also testified that even prisoners in strictly controlled environments had managed to commit crimes, including ordering the killing of other inmates. He stated that the BOP could not house prisoners in such strict conditions indefinitely. Finally, he claimed that prisoners cannot be directly assigned to the ADX-Florence control unit based solely on the offenses in the community. Instead, he said, the BOP could temporarily impose restrictions on an inmate, such as limited communication and association, if the inmate committed some infraction while in prison.

Not even one member of the jury accepted Johnson's proposed finding that he would not be "a serious and continuing danger to the society because the government has the power to imprison him for the rest of his life in a maximum security federal prison designed to control and monitor his behavior." The jury did find a number of aggravating factors, both statutory and non-statutory. In particular, the jury found that Johnson caused the killing after substantial planning and premeditation in the course of a continuing criminal enterprise that involved distribution of drugs to persons under the age of 21. It also found that he ordered the murder to obstruct justice by preventing the victim from testifying and caused harm to the victim's family. After its somewhat lengthy deliberations, the jury sentenced Johnson to death.

3

In Johnson's § 2255 motion, he argues that he was prejudiced by his trial counsel's failure to investigate the law and facts necessary to subject the Government's case on future dangerousness to meaningful adversarial testing. In short, Johnson suggests that trial counsel was ineffective in allowing the Government expert's testimony to go unrebutted.

Johnson argues that, contrary to the Government expert's testimony, there are laws which allow for the application of strict conditions of confinement for extended periods of time absent any infraction within prison in order to alleviate the risk a particular inmate poses to society. First, the BOP can control the conditions of confinement by employing Special Administrative Measures ("SAMs") authorized by 28 C.F.R. § 501.3(a). Second, courts can order restrictions on communication and association as part of a sentence pursuant to 18 U.S.C. § 3582(d). In fact, Johnson has presented evidence of a number of examples of such inmates in addition to those in his original motion.

## II. Standard of Review

In order to succeed on his claim of ineffective assistance of counsel, a § 2255 movant must meet both prongs of a test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed. 2d 674 (1984). First, he must show that his counsel's performance was deficient. *Id.* at 687, 104 S. Ct. at 2064. In this case, the Government concedes the point, agreeing with Johnson that his trial counsel did not effectively impeach the testimony of the Government's expert regarding Johnson's future dangerousness. Instead, the Government disputes only whether Johnson can satisfy the second prong of the *Strickland* test. Thus, Johnson must show that his counsel's deficient performance prejudiced his defense. *Id.* More specifically, he must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S. Ct. at 2068.

A "reasonable probability," for purposes of this standard, is "a probability sufficient to undermine confidence in the outcome" of the penalty phase of Johnson's trial. *Id.* The standard is lower than the more familiar "preponderance of the evidence" standard because an ineffective assistance claim "asserts the absence of one of the crucial assurances that the result of the proceeding is reliable, so finality concerns are somewhat weaker." *Id.* However, Johnson must show more than that his counsel's errors "had some conceivable effect on the outcome of the proceeding." *Id.* at 693, 104 S. Ct. at 2067.

## III. Analysis

In addition to conceding that Johnson's counsel was deficient, the Government conceded at the *certiorari* stage of Johnson's direct appeal that the testimony of the Government's expert was incomplete because he failed to mention 28 C.F.R. § 501.3 and 18 U.S.C. § 3582(d). The Government admitted that the testimony may have left the jury with the mistaken impression that neither the BOP nor the Court had the authority to impose certain restrictions on an inmate immediately upon sentencing. Nonetheless, the Government argues that Johnson cannot show that defense counsel's failure to impeach the witness on those matters created a reasonable probability that the jury would not have sentenced Johnson to death.

For a number of reasons, the Court rejects the Government's argument. First, the Court finds that the probability that the errors affected Johnson's sentence is higher in this case than in some because the errors were relevant to the issue of future dangerousness. The Court recognizes the importance of the fact that the jury in Johnson's case found a number of aggravating factors that did not relate to Johnson's future dangerousness. But the Court finds that future dangerousness, and the Government's ability to protect against it, is an especially important factor in death penalty cases generally, as well as in this case particularly.

On this point, the Government's closing argument from the penalty phase of Johnson's trial is telling. The Government devoted a significant portion of its arguments in closing and rebuttal to the issue of future dangerousness and the likelihood that Johnson could not be controlled in prison - perhaps more than to any other aggravating or mitigating factor. The Government's language on these points was strong and clear. The Government stated that "as long as [Johnson] has the ability to convey his orders to his followers, either on the street or in prison with him, nobody is safe; no witness, no witness's family, anybody who stands in his way, they are not safe. It doesn't matter where he is locked up." (Tr. 2593.) Moreover, the Government reiterated the admittedly incomplete and misleading testimony of its expert by stating, among other things, that Johnson would not be going to the control unit at ADX-Florence because federal regulations would not allow it. (Tr. 2645.) The Government's focus on these points suggests that it recognized the potential importance of this factor on the jury's decision in this case.

This conclusion also finds support in the empirical research on the subject. A number of studies suggest that future dangerousness is one of the most issues, if not the most significant, for juries deciding whether or not to sentence a defendant to death. *See, e.g.,* John H. Blume, et al., *Future Dangerousness in Capital Cases: Always "At Issue"*, 86 Cornell L. Rev. 397, 404 (2001); Stephen P. Garvey, *Aggravation and Mitigation in Capital Cases: What do Jurors Think?*, 98 Colum. L. Rev. 1538, 1559-60 (1998); Sally Costanzo & Mark Costanzo, *Life or Death Decisions: An Analysis of Capital Jury Decision Making Under the Special Issues Sentencing Framework*, 18 Law & Hum. Behav. 151, 160 (1994) ("[n]early all jurors [surveyed]...offered the observation that the penalty decision hinged on the issue of whether the defendant would pose a continuing threat to society").

6

Johnson also points to an analogous case that illustrates the importance that this factor can have on a jury. In that case, *United States v. Jones*, No. CR-96-458-WMN (D. Md.), a jury convicted Jones of ordering the murders of federal witnesses, including one while he was incarcerated in a federal prison. The *Jones* jury found a number of the same aggravating factors as the jury did in this case, including that he was a future danger and a "continuing and serious threat to society." However, seven members of the jury also found that:

> Any concern respecting future dangerousness of Anthony Jones is significantly reduced since the Federal Bureau of Prisons is empowered to classify a prisoner serving a life sentence without possibility of release to the highest security level federal prison, under conditions of confinement that eliminate any reasonable probability that the prisoner will be a continuing and serious threat to society.

The jury did not sentence Jones to death. Johnson notes that the jury in the *Jones* case heard testimony regarding the restrictive conditions that could be imposed on Jones and that had been imposed in another case.

The Government is right to note that the fact of every case and make-up of every jury varies, and that it would be wrong to assume that the jury would do the same in Johnson's case as the jury did in Jones's case if Johnson had effective assistance of counsel. But, the Government is notably silent in its brief on how the two cases are distinguishable. And the similarities between the facts of these two cases which have different results undermines the reliability of the result in Johnson's case further.

As discussed above, Johnson faces a relatively low burden in this case. Given that "it only takes one juror to nix a death sentence," *United States v. Johnson*, 223 F.3d 665, 670 (7th Cir. 2000), he only needs to show a reasonable probability that one juror would have changed his or her mind during the course of the lengthy deliberations in this case. Johnson has shown that his future dangerousness, the

7

factor admittedly affected by his counsel's errors, was likely an important factor in the jurors' minds,

weighing heavily on the scale for measuring aggravating and mitigating factors. Given this showing,

the Court finds that there is a reasonable probability that if Johnson had effective assistance of counsel,

the jury would not have sentenced him to death. He has sufficiently undermined the reliability of the

penalty phase of his trial. Thus, the Court GRANTS Johnson's § 2255 motion, VACATES his death

sentence, and ORDERS that he be given a new hearing before a jury to determine his sentence.


IT IS SO ORDERED.


12/13/10

Dated

Hon. William J. Hibbler
United States District Court

# UNITED STATES DISTRICT COURT
## for the
### Northern District of Illinois

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*Plaintiff*<br>v.<br>DARRYL LAMONT JOHNSON<br>*Defendant* | )<br>)<br>)<br>)<br>)     Civil Action No.    02 C 6998 |

## JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

❏ the plaintiff *(name)*               recover from the defendant *(name)*              the amount of       dollars ($     ), which includes prejudgment interest at the rate of     %, plus postjudgment interest at the rate of     %, along with costs.

❏ the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* recover costs from the plaintiff *(name)*

X other:    Respondent's motion to vacate his sentence is granted.

This action was *(check one)*:

❏ tried by a jury with Judge             presiding, and the jury has rendered a verdict.

❏ tried by Judge           without a jury and the above decision was reached.

X decided by Judge     William J. Hibbler     on a motion to   vacate sentence.

Date:   Dec. 13, 2010             Michael W. Dobbins, Clerk of Court

                                      /s/ Jacquelyn H. Collier
                                             Deputy Clerk

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

Date:                                    Case No.

Case Title:                              Judge:


### NOTICE OF CORRECTION


**The following error was found in document no.**

    The document has been filed in the incorrect case.

    The document is filed in the correct case, but the case number and case title do not match.

    The incorrect document (PDF file) was linked to the entry

    The incorrect file date was entered.

    The incorrect type of event was used to describe the document.

    The title of the document does not match the text of the entry.

    The entry is a duplicate of entry no.

    Other:


**Corrective action taken by the Clerk:**

    The text of the entry has been edited and the PDF file has been replaced.

    The following notation has been added to the text of the entry: (*Linked document has the incorrect case title or linked document has the incorrect case number.*)

    The correct document (PDF file) has been linked to the entry.

    The file date has been corrected.

    The text of the entry has been edited.

    The text of the entry has been edited to read "Duplicate filing of document number."

    Other:


**Corrective action required by the filer:**
    The document must be refiled.

    Other:




Michael W. Dobbins, Clerk of Court

By:      s/_____
Deputy Clerk

NDIL (10/05) Notice of Correction

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,        )
       Plaintiff-Respondent,        )
                               )
    vs.                       )   No. 02 C 6998
                               )   Hon. William J. Hibbler,
DARRYL LAMONT JOHNSON,        )   Judge Presiding
       Defendant-Movant.        )

**GOVERNMENT'S NOTICE OF APPEAL**

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, hereby gives notice of appeal to the United States Court of Appeals for the Seventh Circuit from the judgment of the District Court, entered December 16, 2010, granting defendant's motion under 28 U.S.C. § 2255.

                               Respectfully Submitted,

                               PATRICK J. FITZGERALD,
                               United States Attorney

      By:     /s/ David E. Bindi
             DAVID E. BINDI
             Assistant U.S. Attorney
             219 South Dearborn Street
             5th Floor
             Chicago, Illinois 60604
             (312) 886-7643

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 02 C 6998 |
| | ) | Hon. William J. Hibbler, |
| DARRYL LAMONT JOHNSON, | ) | Judge Presiding |
| Defendant-Movant. | ) | |

**GOVERNMENT'S DOCKETING STATEMENT**

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, submits the following docketing statement pursuant to Circuit Rule 3(c):

This is the government's appeal from the judgment of the district court granting defendant's motion under 28 U.S.C. § 2255.

Defendant's federal convictions, and sentences of death, were affirmed by the Court of Appeals for the Seventh Circuit on August 3, 2000. *United States v. Johnson*, 223 F.3d 665 (7th Cir. 2000). Certiorari was denied on October 1, 2001. *Johnson v. United States*, 534 U.S. 829 (2001).

On September 30, 2002, defendant filed a motion under § 2255 to vacate, set aside, or correct his federal sentences. The district court had jurisdiction pursuant to 28 U.S.C. § 2255(a). On December 13, 2010, the district court issued a memorandum opinion and order granting the § 2255 motion. A judgment, dated December 13, 2010, was entered on December 16, 2010.

The government's notice of appeal was filed February 10, 2011.  The

Court of Appeals for the Seventh Circuit has jurisdiction pursuant to 28 U.S.C.

§§ 1291 and 2253(a).

Defendant is incarcerated at USP Terre Haute, under sentence of death.

Respectfully Submitted,

PATRICK J. FITZGERALD,
United States Attorney

By:   ___/s/ David E. Bindi_____
DAVID E. BINDI
Assistant U.S. Attorney
219 South Dearborn Street
5th Floor
Chicago, Illinois 60604
(312) 886-7643

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**219 SOUTH DEARBORN STREET**
**CHICAGO, ILLINOIS 60604**

**MICHAEL W. DOBBINS**
**CLERK**

**312-435-5670**

February 10, 2011


02cv6998                                    USA v. Johnson                                    Judge Hibbler

The attached copy of the Notice of Appeal is being mailed to all parties pursuant to F.R.A.P.3 (d). The record on this appeal is due on or before 3/3/2011.

Circuit Rule 10 provides that the entire record except for certain miscellaneous procedural documents be forwarded to the Court of Appeals. If any of the automatically excluded items need to be included in the record, counsel has until 2/24/2011 to inform the Clerk of the District Court; specifying in writing which are so required and the date of their filing (i.e. Descriptive list).

Counsel must ensure that Trial Exhibits to be included in the record which are not listed on the District Court docket and/or in the possession of the District Court Clerk are furnished to the Clerk on or before 2/24/2011, together with a Exhibit List.

F.R.A.P. 10 (b) requires that within fourteen (14) days of the filing of the Notice of Appeal, the appellant order a transcript of such parts of the proceedings not already on file which he/she deems necessary for the record. Should appellant order less than the entire transcript, he/she is required to file and serve on appellee a description of the parts he/she intends to order. Under such circumstances, appellee has fourteen110 (14) days after service within which to order any additional parts of the transcript. Counsel in criminal cases should also be familiar with Circuit Rule 11(a) and 11(b).

In the event it becomes necessary to supplement the record on appeal with documents already on file with the Clerk, a court order will be required prior to any supplement being transmitted.

Sincerely,

Michael W. Dobbins, Clerk

By: _____
      G. Lewis, Deputy Clerk


*INCLUDED ITEMS*: ALL BRIEFS, MEMORANDA.
*ITEMS NOT INCLUDED*: NOTICE OF FILING, NOTICE OF MOTION, SUBPOENAS, SUMMONS, BONDS, STATUS HEARINGS, EXTENSIONS OF TIME, AFFIDAVITS, AFFIDAVITS OF SERVICE, NOTICES OF SETTING, DEPOSITION AND NOTICES, AND JURY LIST.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,    )
        Plaintiff-Respondent,    )
                           )
    vs.                   )   No. 02 C 6998
                           )   Hon. William J. Hibbler,
DARRYL LAMONT JOHNSON,    )   Judge Presiding
        Defendant-Movant.    )

**GOVERNMENT'S NOTICE OF APPEAL**

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, hereby gives notice of appeal to the United States Court of Appeals for the Seventh Circuit from the judgment of the District Court, entered December 16, 2010, granting defendant's motion under 28 U.S.C. § 2255.

                       Respectfully Submitted,

                       PATRICK J. FITZGERALD,
                       United States Attorney

By:    /s/ David E. Bindi
             DAVID E. BINDI
             Assistant U.S. Attorney
             219 South Dearborn Street
             5th Floor
             Chicago, Illinois 60604
             (312) 886-7643

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA, )
   Plaintiff-Respondent, )
         )
vs.        ) No. 02 C 6998
         ) Hon. William J. Hibbler,
DARRYL LAMONT JOHNSON, ) Judge Presiding
   Defendant-Movant. )

## GOVERNMENT'S DOCKETING STATEMENT

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, submits the following docketing statement pursuant to Circuit Rule 3(c):

This is the government's appeal from the judgment of the district court granting defendant's motion under 28 U.S.C. § 2255.

Defendant's federal convictions, and sentences of death, were affirmed by the Court of Appeals for the Seventh Circuit on August 3, 2000. *United States v. Johnson*, 223 F.3d 665 (7th Cir. 2000). Certiorari was denied on October 1, 2001. *Johnson v. United States*, 534 U.S. 829 (2001).

On September 30, 2002, defendant filed a motion under § 2255 to vacate, set aside, or correct his federal sentences. The district court had jurisdiction pursuant to 28 U.S.C. § 2255(a). On December 13, 2010, the district court issued a memorandum opinion and order granting the § 2255 motion. A judgment, dated December 13, 2010, was entered on December 16, 2010.

The government's notice of appeal was filed February 10, 2011. The Court of Appeals for the Seventh Circuit has jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(a).

Defendant is incarcerated at USP Terre Haute, under sentence of death.

Respectfully Submitted,

PATRICK J. FITZGERALD,
United States Attorney

By:   /s/ David E. Bindi
DAVID E. BINDI
Assistant U.S. Attorney
219 South Dearborn Street
5th Floor
Chicago, Illinois 60604
(312) 886-7643

## SEVENTH CIRCUIT COURT OF APPEALS INFORMATION SHEET

Include the names of all plaintiffs (petitioners) and defendants (respondents) who are parties to the appeal.  Use a separate sheet if needed.

NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION DOCKET NUMBER:   02cv6998

PLAINTIFF (Petitioner)  v.  DEFENDANT (Respondent)

| USA/Appellant | Darryl Lamont Johnson/Appellee |
|---|---|

(Use separate sheet for additional counsel)

| PETITIONER'S COUNSEL | | RESPONDENT'S COUNSEL | |
|---|---|---|---|
| Name | David E. Bindi | Name | Terence H. Campbell |
| Firm | USAO | Firm | Cotsirilos, Tighe & Streicker |
| Address | 219 South Dearborn Suite 500 Chicago, IL 60604 | Address | 33 North Dearborn St. Suite 600 Chicago, IL 60602 |
| Phone | 312-353-5300 | Phone | 312-263-0345 |

| Other Information | | | |
|---|---|---|---|
| District Judge | Hibbler | Date Filed in District Court | 9/30/2002 |
| Court Reporter | A. Roth     5038 | Date of Judgment | 12/16/2010 |
| Nature of Suit Code | 510 | Date of Notice of Appeal | 2/10/2011 |

COUNSEL:  Appointed [X]  Retained [ ]  Pro Se [ ]

FEE STATUS:  Paid [ ]  Due [ ]  IFP [ ]

IFP Pending [ ]  U.S. [X]  Waived [ ]

Has Docketing Statement been filed with the District Court Clerk's Office?  Yes [ ]  No [x]

If State/Federal Habeas Corpus (28 USC 2254/28 USC 2255), was Certificate of Appealability:

Granted [ ]  Denied [ ]  Pending [ ]

If Certificate of Appealability was granted or denied, date of order: _____

If defendant is in federal custody, please provide U.S. Marshall number (USM#): _____

**IMPORTANT: THIS FORM IS TO ACCOMPANY THE SHORT RECORD SENT TO THE CLERK OF THE U.S. COURT OF APPEALS PURSUANT TO CIRCUIT RULE 3(A).   Rev 04/01**

MHN

Order Form (01/2005)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6998 | **DATE** | 12/13/2010 |
| **CASE TITLE** | UNITED STATES of AMERICA v. DARRYL LAMONT JOHNSON | | |

**DOCKET ENTRY TEXT:**

Enter Memorandum Opinion and Order. The Court GRANTS Defendant-Movant's motion to vacate his sentence [1]. All other motions are terminated as moot.

■[For further details see separate order(s).]

Docketing to mail notice and AO-450.



Page 1 of 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNITED STATES OF AMERICA,            )
                                     )
    Plaintiff-Respondent,        )
                                     )       No. 02 C 6998
    v.                           )
                                     )       The Honorable William J. Hibbler
                                     )
DARRYL LAMONT JOHNSON,               )
                                     )
    Defendant-Movant.            )
                                     )

## MEMORANDUM OPINION AND ORDER

In 1997, a jury convicted Darryl Lamont Johnson for ordering the murder of a person assisting in a federal criminal investigation and ordering the murder of that person and another in furtherance of a continuing criminal enterprise, among 41 other counts. The jury later concluded that death was the appropriate sentence. The Seventh Circuit denied Johnson's appeal and the Supreme Court denied his petition for a writ of *certiorari*. *United States v. Johnson*, 223 F.3d 665 (7th Cir. 2000); *Johnson v. United States*, 534 U.S. 829, 122 S. Ct. 71, 151 L.Ed.2d 37 (2001).

Johnson then sought to set aside his sentence pursuant to 28 U.S.C. § 2255. In his petition, Johnson raised a number of claims, including a claim of ineffective assistance of counsel, a claim that the Government withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963), and a claim that his sentence was based on materially incomplete, false and/or inaccurate information in violation of the Eighth Amendment, *see Johnson v. Mississippi*, 486 U.S. 578, 584-86, 108 S. Ct. 1981, 1986-87, 100 L.Ed.2d 575 (1988). The Court denied Johnson's

1

§ 2255 motion, holding that he procedurally defaulted all three of the aforementioned claims because he failed to raise those claims in his direct appeal.

A few years after the initial ruling on Johnson's § 2255 motion, the Supreme Court announced its decision in *Massaro v. United States*. 538 U.S. 500, 509, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003). In *Massaro*, the Supreme Court held that a petitioner may bring an ineffective assistance of counsel claim in a collateral proceeding whether or not the petitioner could have raised the claim on direct appeal. *Id.* Consequently, the Court vacated the portion of its ruling concerning Johnson's ineffective assistance of counsel claim.[1] Following discovery, the parties provided the Court with supplemental briefing on the merits of that claim. In addition, Johnson moves the Court to once again address his *Brady* and *Johnson* claims based on what he believes to be changes in relevant law and facts. For the following reasons, the Court grants Johnson's § 2255 motion based on his ineffective assistance of counsel claim. The Court therefore vacates his death sentence and awards him a new sentencing hearing. In addition, Johnson's motion for consideration of his other claims is therefore moot.

## I. Background

Johnson's ineffective assistance claim centers on trial counsel's efforts to convince the jury to impose a sentence of life imprisonment rather than one of death. At Johnson's sentencing, counsel presented evidence about the custodial options for housing him. In particular, Johnson presented evidence to suggest that if he were placed permanently in the control unit in ADX-Florence, where inmates are confined to their cells 23 hours per day and not allowed contact with other inmates, he

---

[1] Another judge in this district initially ruled on Johnson's § 2255 motion and the motion to reconsider pursuant to *Massaro*. The executive committee has since reassigned the case.

2

would have no opportunity to carry out a continuing criminal enterprise and his dangerousness to society would be mitigated.

In rebuttal, the Government called an expert, a Bureau of Prisons (BOP) warden, who had formerly served as Assistant Warden at ADX-Florence. That witness testified generally about what BOP placement was likely in Johnson's case. He testified that typically gang leaders like Johnson go to the general prison population, rather than some more restrictive setting. He also testified that even prisoners in strictly controlled environments had managed to commit crimes, including ordering the killing of other inmates. He stated that the BOP could not house prisoners in such strict conditions indefinitely. Finally, he claimed that prisoners cannot be directly assigned to the ADX-Florence control unit based solely on the offenses in the community. Instead, he said, the BOP could temporarily impose restrictions on an inmate, such as limited communication and association, if the inmate committed some infraction while in prison.

Not even one member of the jury accepted Johnson's proposed finding that he would not be "a serious and continuing danger to the society because the government has the power to imprison him for the rest of his life in a maximum security federal prison designed to control and monitor his behavior." The jury did find a number of aggravating factors, both statutory and non-statutory. In particular, the jury found that Johnson caused the killing after substantial planning and premeditation in the course of a continuing criminal enterprise that involved distribution of drugs to persons under the age of 21. It also found that he ordered the murder to obstruct justice by preventing the victim from testifying and caused harm to the victim's family. After its somewhat lengthy deliberations, the jury sentenced Johnson to death.

3

In Johnson's § 2255 motion, he argues that he was prejudiced by his trial counsel's failure to investigate the law and facts necessary to subject the Government's case on future dangerousness to meaningful adversarial testing. In short, Johnson suggests that trial counsel was ineffective in allowing the Government expert's testimony to go unrebutted.

Johnson argues that, contrary to the Government expert's testimony, there are laws which allow for the application of strict conditions of confinement for extended periods of time absent any infraction within prison in order to alleviate the risk a particular inmate poses to society. First, the BOP can control the conditions of confinement by employing Special Administrative Measures ("SAMs") authorized by 28 C.F.R. § 501.3(a). Second, courts can order restrictions on communication and association as part of a sentence pursuant to 18 U.S.C. § 3582(d). In fact, Johnson has presented evidence of a number of examples of such inmates in addition to those in his original motion.

## II. Standard of Review

In order to succeed on his claim of ineffective assistance of counsel, a § 2255 movant must meet both prongs of a test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed. 2d 674 (1984). First, he must show that his counsel's performance was deficient. *Id.* at 687, 104 S. Ct. at 2064. In this case, the Government concedes the point, agreeing with Johnson that his trial counsel did not effectively impeach the testimony of the Government's expert regarding Johnson's future dangerousness. Instead, the Government disputes only whether Johnson can satisfy the second prong of the *Strickland* test. Thus, Johnson must show that his counsel's deficient performance prejudiced his defense. *Id.* More specifically, he must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S. Ct. at 2068.

A "reasonable probability," for purposes of this standard, is "a probability sufficient to undermine confidence in the outcome" of the penalty phase of Johnson's trial. *Id.* The standard is lower than the more familiar "preponderance of the evidence" standard because an ineffective assistance claim "asserts the absence of one of the crucial assurances that the result of the proceeding is reliable, so finality concerns are somewhat weaker." *Id.* However, Johnson must show more than that his counsel's errors "had some conceivable effect on the outcome of the proceeding." *Id.* at 693, 104 S. Ct. at 2067.

## III. Analysis

In addition to conceding that Johnson's counsel was deficient, the Government conceded at the *certiorari* stage of Johnson's direct appeal that the testimony of the Government's expert was incomplete because he failed to mention 28 C.F.R. § 501.3 and 18 U.S.C. § 3582(d). The Government admitted that the testimony may have left the jury with the mistaken impression that neither the BOP nor the Court had the authority to impose certain restrictions on an inmate immediately upon sentencing. Nonetheless, the Government argues that Johnson cannot show that defense counsel's failure to impeach the witness on those matters created a reasonable probability that the jury would not have sentenced Johnson to death.

For a number of reasons, the Court rejects the Government's argument. First, the Court finds that the probability that the errors affected Johnson's sentence is higher in this case than in some because the errors were relevant to the issue of future dangerousness. The Court recognizes the importance of the fact that the jury in Johnson's case found a number of aggravating factors that did not relate to Johnson's future dangerousness. But the Court finds that future dangerousness, and the Government's ability to protect against it, is an especially important factor in death penalty cases generally, as well as in this case particularly.

5

On this point, the Government's closing argument from the penalty phase of Johnson's trial is telling. The Government devoted a significant portion of its arguments in closing and rebuttal to the issue of future dangerousness and the likelihood that Johnson could not be controlled in prison - perhaps more than to any other aggravating or mitigating factor. The Government's language on these points was strong and clear. The Government stated that "as long as [Johnson] has the ability to convey his orders to his followers, either on the street or in prison with him, nobody is safe; no witness, no witness's family, anybody who stands in his way, they are not safe. It doesn't matter where he is locked up." (Tr. 2593.) Moreover, the Government reiterated the admittedly incomplete and misleading testimony of its expert by stating, among other things, that Johnson would not be going to the control unit at ADX-Florence because federal regulations would not allow it. (Tr. 2645.) The Government's focus on these points suggests that it recognized the potential importance of this factor on the jury's decision in this case.

This conclusion also finds support in the empirical research on the subject. A number of studies suggest that future dangerousness is one of the most issues, if not the most significant, for juries deciding whether or not to sentence a defendant to death. *See, e.g.,* John H. Blume, et al., *Future Dangerousness in Capital Cases: Always "At Issue"*, 86 Cornell L. Rev. 397, 404 (2001); Stephen P. Garvey, *Aggravation and Mitigation in Capital Cases: What do Jurors Think?*, 98 Colum. L. Rev. 1538, 1559-60 (1998); Sally Costanzo & Mark Costanzo, *Life or Death Decisions: An Analysis of Capital Jury Decision Making Under the Special Issues Sentencing Framework*, 18 Law & Hum. Behav. 151, 160 (1994) ("[n]early all jurors [surveyed]...offered the observation that the penalty decision hinged on the issue of whether the defendant would pose a continuing threat to society").

6

Johnson also points to an analogous case that illustrates the importance that this factor can have on a jury. In that case, *United States v. Jones*, No. CR-96-458-WMN (D. Md.), a jury convicted Jones of ordering the murders of federal witnesses, including one while he was incarcerated in a federal prison. The *Jones* jury found a number of the same aggravating factors as the jury did in this case, including that he was a future danger and a "continuing and serious threat to society." However, seven members of the jury also found that:

> Any concern respecting future dangerousness of Anthony Jones is significantly reduced since the Federal Bureau of Prisons is empowered to classify a prisoner serving a life sentence without possibility of release to the highest security level federal prison, under conditions of confinement that eliminate any reasonable probability that the prisoner will be a continuing and serious threat to society.

The jury did not sentence Jones to death. Johnson notes that the jury in the *Jones* case heard testimony regarding the restrictive conditions that could be imposed on Jones and that had been imposed in another case.

The Government is right to note that the fact of every case and make-up of every jury varies, and that it would be wrong to assume that the jury would do the same in Johnson's case as the jury did in Jones's case if Johnson had effective assistance of counsel. But, the Government is notably silent in its brief on how the two cases are distinguishable. And the similarities between the facts of these two cases which have different results undermines the reliability of the result in Johnson's case further.

As discussed above, Johnson faces a relatively low burden in this case. Given that "it only takes one juror to nix a death sentence," *United States v. Johnson*, 223 F.3d 665, 670 (7th Cir. 2000), he only needs to show a reasonable probability that one juror would have changed his or her mind during the course of the lengthy deliberations in this case. Johnson has shown that his future dangerousness, the

7

factor admittedly affected by his counsel's errors, was likely an important factor in the jurors' minds, weighing heavily on the scale for measuring aggravating and mitigating factors. Given this showing, the Court finds that there is a reasonable probability that if Johnson had effective assistance of counsel, the jury would not have sentenced him to death. He has sufficiently undermined the reliability of the penalty phase of his trial. Thus, the Court GRANTS Johnson's § 2255 motion, VACATES his death sentence, and ORDERS that he be given a new hearing before a jury to determine his sentence.

IT IS SO ORDERED.

_12/13/10_
Dated

_Wm. J. Hibbler_
Hon. William J. Hibbler
United States District Court

8

# UNITED STATES DISTRICT COURT

for the

Northern District of Illinois

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.    02 C 6998 |
| DARRYL LAMONT JOHNSON | ) | |
| *Defendant* | ) | |

## JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

❏  the plaintiff *(name)*                                        recover from the
defendant *(name)*                                          the amount of
                                  dollars ($        ), which includes prejudgment
interest at the rate of          %, plus postjudgment interest at the rate of       %, along with costs.

❏  the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)*
recover costs from the plaintiff *(name)*

X  other:    Respondent's motion to vacate his sentence is granted.

This action was *(check one)*:

❏  tried by a jury with Judge                          presiding, and the jury has
rendered a verdict.

❏  tried by Judge                               without a jury and the above decision
was reached.

X  decided by Judge         William J. Hibbler           on a motion to    vacate sentence.

Date:   Dec. 13, 2010                         Michael W. Dobbins, Clerk of Court

                                            /s/ Jacquelyn H. Collier
                                                 Deputy Clerk

Case 1:02-cv-06998   Document 117   Filed 02/10/11   Page 15 of 25   PageID 1454
Case: 11-1443      Document: 4-6        Filed: 03/04/2011      Pages: 242

APPEAL, BROWN, TERMED

# United States District Court
# Northern District of Illinois - CM/ECF LIVE, Ver 4.2 (Chicago)
# CIVIL DOCKET FOR CASE #: 1:02-cv-06998
# Internal Use Only

| | |
|---|---|
| USA v. Johnson | Date Filed: 09/30/2002 |
| Assigned to: Honorable William J. Hibbler | Date Terminated: 03/11/2003 |
| Demand: $0 | Jury Demand: None |
| Case in other court: ND IL, :96-CR-00379 | Nature of Suit: 510 Prisoner: Vacate Sentence |
| Cause: 28:2255 Remedies on motion attacking sentence | Jurisdiction: U.S. Government Defendant |

**Plaintiff**

| | | |
|---|---|---|
| **United States of America** | represented by | **David E. Bindi** |
| | | United States Attorney's Office (NDIL) |
| | | 219 South Dearborn Street |
| | | Suite 500 |
| | | Chicago, IL 60604 |
| | | (312) 353-5300 |
| | | Email: david.bindi@usdoj.gov |
| | | *ATTORNEY TO BE NOTICED* |

V.

**Defendant**

| | | |
|---|---|---|
| **Darryl Lamont Johnson** | represented by | **Terence H. Campbell** |
| | | Cotsirilos, Tighe & Streicker |
| | | 33 North Dearborn Street |
| | | Suite 600 |
| | | Chicago, IL 60602 |
| | | (312) 263-0345 |
| | | Email: tcwolfram@aol.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Lorinda Meier Youngcourt** |
| | | Lorinda Meier Youngcourt |
| | | Attorney at Law |
| | | P.O. Box 206 |
| | | Huron, IN 47437 |
| | | (812)849-9852 |
| | | Email: lmyoungcourt@incrimlaw.org |
| | | *ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 09/30/2002 | 1 | MOTION by defendant to vacate conviction and sentence and for new trial pursuant to 28 USC Section 2255 and Rule 33 of the Federal Rules of Criminal Procedure; Civil cover sheet (Documents 1-1 through 1-2) (Forwarded copy of motion to U.S. Attorney's Office) (hp) Modified on 10/01/2002 (Entered: 10/01/2002) |
| 09/30/2002 | 2 | ATTORNEY APPEARANCE for defendant by Terence H. Campbell and Lorinda Meier Youngcourt. (hp) (Entered: 10/01/2002) |
| 09/30/2002 | 3 | MOTION by defendant for leave to file oversized brief ; Notice (hp) (Entered: 10/01/2002) |
| 09/30/2002 | 4 | INITIAL MEMORANDUM by defendant in support motion [1-1] (One volume) (hp) (Entered: 10/01/2002) |
| 10/01/2002 | 5 | MINUTE ORDER of 10/1/02 by Hon. Suzanne B. Conlon : Defendant Darry Johnson's motion to vacate conviction and sentence and for new trial pursuant to 28 U.S.C. Section 2255 and Rule 33 of the Federal Rules of Criminal Procedure is taken under advisement. The government shall repond by 12/2/02; any reply shall be filed by 12/16/02. Defendant's motion to file an 18-page brief is granted [3-1]. The motions will not be heard on 10/8/02 as noticed. Mailed notices by judge's staff (cem) (Entered: 10/02/2002) |
| 11/14/2002 | 6 | MOTION by Government for extension of time to answer Section 2255 motion ; Affidavit of David Bindi; Notice (rmm) (Entered: 11/22/2002) |
| 11/21/2002 | 7 | EX PARTE MOTION by defendant for interim payment of attorney's fees ; Notice (rmm) (Entered: 11/22/2002) |
| 11/21/2002 | 8 | MINUTE ORDER of 11/21/02 by Hon. Suzanne B. Conlon: Government's unopposed motion for extension of time to answer Section 2255 motion is granted [6-1]. Government's response to petition [1-1] is extended to 1/31/03; any reply shall be filed by 2/14/03. No further extensions. Notices mailed by judge's staff (rmm) (Entered: 11/22/2002) |
| 01/31/2003 | 9 | RESPONSE by plaintiff to the motion to vacate judgment pursuant to 28 U.S.C. Section 2255 [1-1]; Notice. (cem) (Entered: 02/03/2003) |
| 02/03/2003 | 10 | MOTION by defendant for leave to conduct discovery ; Notice. (cem) (Entered: 02/07/2003) |
| 02/06/2003 | 11 | MINUTE ORDER of 2/6/03 by Hon. Suzanne B. Conlon : Defendant's motion for leave to conduct discovery [10-1] is taken under advisement. Government to respond by 2/14/03. Mailed notices by judge's staff (cem) (Entered: 02/07/2003) |
| 02/06/2003 | 12 | AGREED MOTION by defendant for short extension of time to file reply brief in support of his initial memorandum in support of his Section 2255 motion ; Notice. (cem) (Entered: 02/11/2003) |
| 02/11/2003 | 13 | MINUTE ORDER of 2/11/03 by Hon. Suzanne B. Conlon : Defendant's agreed motion for extension of time to file reply is granted [12-1]. |

| | | |
|---|---|---|
| | | Defendant's reply in support of his Section 2255 motion is extended to 2/28/03. No further extensions. Mailed notices by judge's staff (cem) (Entered: 02/12/2003) |
| 02/14/2003 | 14 | RESPONSE by plaintiff to the motion for leave to conduct discovery [10-1]; Notice. (cem) (Entered: 02/18/2003) |
| 02/24/2003 | 15 | AGREED MOTION by defendant for short extension of time to file reply brief in support of his initial memorandum in support of his Section 2255 ; Notice. (cem) (Entered: 03/04/2003) |
| 02/27/2003 | 16 | MINUTE ORDER of 2/27/03 by Hon. Suzanne B. Conlon : Defendant's agreed motion for extension of time to file reply is granted [15-1]. Defendant's reply in support of his Section 2255 motion is extended to 3/3/03. Final extension. Mailed notices by judge's staff (cem) (Entered: 03/04/2003) |
| 03/03/2003 | 17 | MOTION by defendant for leave to file brief oversized brief in support of his motion for relief under Section 2255 ; Notice. (cem) (Entered: 03/07/2003) |
| 03/06/2003 | 18 | MINUTE ORDER of 3/6/03 by Hon. Suzanne B. Conlon : Defendant's motion for leave to file oversized reply brief in support of his Section 2255 motion is granted [17-1]. Mailed notice (cem) (Entered: 03/07/2003) |
| 03/06/2003 | 19 | INITIAL REPLY by defendant in support of his motion to vacate conviction and sentence and for new trial pursuant to 28 U.S.C. Section 2255 [1-1] (Attachments); Notice. (cem) (Entered: 03/07/2003) |
| 03/11/2003 | 20 | MINUTE ORDER of 3/11/03 by Hon. Suzanne B. Conlon : Petitioner's motion to vacate conviction and sentence and for new trial pursuant to 28 U.S.C. Section 2255 and Rule 33 of the Federal Rules of Criminal Procedure [1-1] and petitioner's motion for leave to conduct discovery [10-1] are denied with prejudice as to grounds I-V and VII-VIII and without prejudice as to grounds VI. Entered Memorandum Opinion and Order. Terminating case . Mailed notices by judge's staff (cem) (Entered: 03/12/2003) |
| 03/11/2003 | 21 | ENTERED JUDGMENT (cem) (Entered: 03/12/2003) |
| 03/24/2003 | 22 | MOTION by petitioner for appointment and funding of expert (Attachments). (cem) (Entered: 03/28/2003) |
| 03/24/2003 | 23 | MOTION by petitioner to alter, amend and make clarifying findings concerning the 3/11/03 judgment in favor of the respondent , or alternative to stay the judgment ; Notice. (cem) (Entered: 03/28/2003) |
| 03/27/2003 | 24 | MINUTE ORDER of 3/27/03 by Hon. Suzanne B. Conlon : Petitioner's motion for appointment and funding of expert [22-1] and motion to alter, amend and make clarifying findings concerning the 3/11/03 judgment in favor of the respondent [23-1], or alternatively to stay the judgment [23-2] are taken under advisement. Mailed notice (cem) (Entered: 03/28/2003) |
| 03/31/2003 | 25 | MINUTE ORDER of 3/31/03 by Hon. Suzanne B. Conlon : Petitioner's motion to alter, amend and make clarifying findings concerning the 3/11/03 judgment [23-1] is denied. His alternative motion to stay the judgment [23-2] is granted. The judgment entered 3/11/03 is stayed pending resolution of |

CM/ECF LIVE, Ver 4.2 - U.S. District Court, Northern Illinois       Page 4 of 11

Case 1:02-cv-06998   Document 117   Filed 02/10/11   Page 18 of 25   PageID 1457
Case: 11-1443      Document: 4-6       Filed: 03/04/2011      Pages: 242

| | | petitioner's mental retardation claim. Mailed notices by judge's staff (cem) (Entered: 03/31/2003) |
|---|---|---|
| 03/31/2003 | 26 | MINUTE ORDER of 3/31/03 by Hon. Suzanne B. Conlon : Petitioner's motion for appointment of Dennis R. Olvera, Ph.D., a licensed psychologist, to evaluate petitioner's adaptive functioning [22-1] is granted. Dr. Olvera's fees and costs shall not exceed $5,000. Requests for payment must be submitted on appropriate court forms with the required substantiation. Mailed notices by judge's staff (cem) (Entered: 03/31/2003) |
| 11/05/2007 | 27 | MOTION by Plaintiff United States of America for reconsideration *To Reconsider* (Bindi, David) (Entered: 11/05/2007) |
| 11/06/2007 | 32 | MINUTE entry before Judge Suzanne B. Conlon : United States' motion to reconsider basis for rejecting ineffective assistance claim and for entry of judgment 27 is taken under advisement. Defendant shall respond by January 7, 2008. The motion will not be heard on November 13, 2007 as noticed.Mailed notice (rbf, ) (Entered: 11/15/2007) |
| 11/08/2007 | 28 | *Motion to Reconsider* NOTICE of Motion by David E. Bindi for presentment of before Honorable Suzanne B. Conlon on 11/13/2007 at 09:00 AM. (Bindi, David) (Entered: 11/08/2007) |
| 11/13/2007 | 29 | RESPONSE by Darryl Lamont Johnson to MOTION by Plaintiff United States of America for reconsideration *To Reconsider* 27 *in Light of Massaro v. United States* (Campbell, Terence) (Entered: 11/13/2007) |
| 11/13/2007 | 30 | MOTION by Defendant Darryl Lamont Johnson for discovery - *Renewed Based on Massaro v. United States* (Campbell, Terence) (Entered: 11/13/2007) |
| 11/13/2007 | 31 | MEMORANDUM by Darryl Lamont Johnson in support of motion for discovery 30 - *Renewed in Light of Massaro v. United States* (Campbell, Terence) (Entered: 11/13/2007) |
| 01/14/2008 | 34 | MINUTE entry before Judge Suzanne B. Conlon :The government's unopposed motion to reconsider the basis for rejecting defendant's ineffective assistance of counsel claim 27 is granted. A hearing is set on this issue as well as defendant's most recent motion for leave to conduct discovery 30 on January 30, 2008 at 01:30 pm. Mailed notice (gmr, ) (Entered: 01/17/2008) |
| 01/16/2008 | 33 | ATTORNEY Appearance for Defendant Darryl Lamont Johnson by Terence H. Campbell (Campbell, Terence) (Entered: 01/16/2008) |
| 01/24/2008 | 35 | MOTION by Defendant Darryl Lamont Johnson to continue *Hearing Date Due to Counsel's Trial Schedule* (Campbell, Terence) (Entered: 01/24/2008) |
| 01/24/2008 | 36 | *AGREED* NOTICE of Motion by Terence H. Campbell for presentment of motion to continue 35 before Honorable Suzanne B. Conlon on 1/29/2008 at 09:00 AM. (Campbell, Terence) (Entered: 01/24/2008) |
| 01/29/2008 | 37 | MINUTE entry before Judge Suzanne B. Conlon : Agreed motion 35 to reset January 30, 2008 hearing due to counsel's trial schedule is granted. Hearing is reset on February 29, 2008 @ 1:30 p.m. Notices mailed by Judicial staff. |

| | | |
|---|---|---|
| | | notice (wyh, ) (Entered: 02/01/2008) |
| 02/05/2008 | 38 | MINUTE entry before Judge Suzanne B. Conlon :Set hearing. On the court's own motion, the motion hearing set on February 29, 2008 at 1:30 p.m. is reset to February 29, 2008 at 9:00 a.m. Notices mailed by Judicial staff. (wyh, ) (Entered: 02/08/2008) |
| 02/28/2008 | 39 | SUPPLEMENT by Darryl Lamont Johnson to *Ineffective Assistance of Counsel Claim* (Attachments: # 1 Exhibit Jill Miller Affidavit# 2 Exhibit Exhibit A Attachments# 3 Exhibit Exhibits B-G)(Campbell, Terence) (Entered: 02/28/2008) |
| 02/28/2008 | 40 | NOTICE by Darryl Lamont Johnson re supplement 39 *in Support of Ineffective Assistance of Counsel Claim* (Campbell, Terence) (Entered: 02/28/2008) |
| 02/29/2008 | 41 | MINUTE entry before Judge Suzanne B. Conlon :Hearing held on defendant's motion to vacate his sentence pursuant to 28 U.S.C. Section 2255, and the government's motion to reconsider the basis for rejecting defendant's ineffective assistance claim. The government unopposed motion 27 is granted. The court vacates portions of its Memorandum Opinion and Order issued March 11, 2003 finding that defendant procedurally defaulted his ineffective assistance of counsel claim by not raising this issue on direct appeal. See Massaro v United States, 538 U.S. 500 (2003) (ineffective assistance of counsel claims may be raised in a collateral proceeding under Section 2255 even if not raised on direct appeal). The court therefore shall consider the ineffective assistance of counsel claim fully on the merits. Defendant's renewed motion for leave to conduct discovery 30 is held in abeyance. Notices mailed by Judicial staff. (wyh, ) (Entered: 03/05/2008) |
| 03/06/2008 | 42 | EXECUTIVE COMMITTEE ORDER: Case reassigned to Judge William J. Hibbler Signed by Judge Executive Committee on 3/6/08. (vmj, ) (Entered: 03/10/2008) |
| 03/12/2008 | 43 | RESPONSE by Plaintiff United States of America (Bindi, David) (Entered: 03/12/2008) |
| 04/21/2008 | 44 | TRANSCRIPT of proceedings for the following dates: 2/29/2008; Before the Honorable Honorable Suzanne B. Conlon. (Document not scanned)(kjc, ) (Entered: 04/22/2008) |
| 05/20/2008 | 45 | MINUTE entry before the Honorable William J. Hibbler: Status hearing to set scheduling order set for 5/29/2008 at 09:30 AM. Mailed notice (jdh) (Entered: 05/22/2008) |
| 05/29/2008 | 46 | MINUTE entry before the Honorable William J. Hibbler: Status hearing reset to 6/3/2008 at 10:30 AM. Telephoned notice (jdh) (Entered: 06/03/2008) |
| 06/03/2008 | 48 | MINUTE entry before the Honorable William J. Hibbler: Status hearing held and continued to 8/26/08 at 10:30 am. At the next status, the government is to report on the state of Darryl Johnsons adjustment in the BOP, and turnover as discovery materials any instances of either special administrative measures under the BOP regulations or statutory provisions providing for extraordinary |

Case 1:02-cv-06998  Document 117  Filed 02/10/11  Page 20 of 25  PageID 1459
Case: 11-1443    Document: 4-6    Filed: 03/04/2011    Pages: 242

| | | security measures for inmates that were requested or imposed at the time of Darryl Johnson's sentencing that involved restrictions continuously. Defendants' counsel to tender to the Court a complete set of all pleadings since the 2255 petition was filed. Parties to tender to the Court any missing transcript pages. Mailed notice (kj, ) (Entered: 06/17/2008) |
|---|---|---|
| 06/17/2008 | 47 | TRANSCRIPT OF PROCEEDINGS held on 06/03/2008 before the Honorable William J. Hibbler. Court Reporter Contact Information: Alexandra Roth, 312/408-5038, Alexandra_Roth@ilnd.uscourts.gov.<br><br>**IMPORTANT:Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov. Under Quick Links select Electronic Transcript Procedures.**<br><br>Redaction Request due 7/8/2008. Redacted Transcript Deadline set for 7/18/2008. Release of Transcript Restriction set for 9/15/2008. (Roth, Alexandra) (Entered: 06/17/2008) |
| 08/26/2008 | 49 | MINUTE entry before the Honorable William J. Hibbler:Status hearing held on 8/26/2008 and continued to 10/21/2008 at 10:00 a.m.Mailed notice (jlj, ) (Entered: 08/27/2008) |
| 09/22/2008 | 50 | TRANSCRIPT OF PROCEEDINGS held on 08/26/2008 before the Honorable William J. Hibbler. Court Reporter Contact Information: ALEXANDRA ROTH, 312/408-5038, alexandra_roth@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 10/14/2008. Redacted Transcript Deadline set for 10/23/2008. Release of Transcript Restriction set for 12/22/2008. (Roth, Alexandra) (Entered: 09/22/2008) |
| 09/25/2008 | 51 | MINUTE entry before the Honorable William J. Hibbler: Petitioner's ex parte motion for interim payment of fees is granted. Payment of interim attorneys' fees and expenses is appropriate under the Criminal Justice Act because, due to the length and complexity of this case, the appointed attorneys in this matter will experience a hardship in undertaking the representation without compensation for a substantial period of time. Telephoned notice (aac, ) (Entered: 09/29/2008) |
| 09/29/2008 | | (Court only) FORWARDED Minute Order dated 9/25/2008 to Fiscal Department. (aac, ) (Entered: 09/29/2008) |

| | | |
|---|---|---|
| 10/21/2008 | 52 | MINUTE entry before the Honorable William J. Hibbler: Status hearing held on 10/21/2008 and continued to 1/8/2009 at 10:00 AM. Defendant to file discovery request by 11/21/0-8. Government to respond by 12/5/08. Defendant to reply by 12/15/08. Ruling set for 1/8/09 at 10:00 a.m. Mailed notice (jdh) (Entered: 10/22/2008) |
| 11/24/2008 | 53 | MOTION by Defendant Darryl Lamont Johnson for discovery - *Renewed and Amended* (Campbell, Terence) (Entered: 11/24/2008) |
| 11/24/2008 | 54 | MOTION by Defendant Darryl Lamont JohnsonLeave to File Expert Funding Requests Ex Parte and Under Seal (Campbell, Terence) (Entered: 11/24/2008) |
| 11/26/2008 | 55 | MOTION by Defendant Darryl Lamont Johnson for leave to file *Motions Instanter* (Campbell, Terence) (Entered: 11/26/2008) |
| 11/26/2008 | 56 | NOTICE of Motion by Terence H. Campbell for presentment of motion for leave to file 55 before Honorable William J. Hibbler on 12/4/2008 at 09:30 AM. (Campbell, Terence) (Entered: 11/26/2008) |
| 12/03/2008 | 57 | MINUTE entry before the Honorable William J. Hibbler: Agreed Motion for leave to file his renewed discovery and for leave to seek expert funding ex parte funding motions instanter 54 55 is granted. The previously set briefing schedule to stand. Mailed notice (jdh) (Entered: 12/03/2008) |
| 12/05/2008 | 58 | MOTION by Plaintiff United States of America for extension of time (Bindi, David) (Entered: 12/05/2008) |
| 12/05/2008 | 59 | NOTICE of Motion by David E. Bindi for presentment of extension of time 58 before Honorable William J. Hibbler on 12/11/2008 at 09:30 AM. (Bindi, David) (Entered: 12/05/2008) |
| 12/10/2008 | 60 | MINUTE entry before the Honorable William J. Hibbler: Government's Agreed Motion for an extension of time to respond to petitioner's discovery and expert witness motions 58 is granted. Government to respond by 12/19/2008. Petitioner to reply by 1/8/2009. Ruling to reset to 2/4/09 at 10:00 a.m. Mailed notice (jdh) (Entered: 12/10/2008) |
| 12/10/2008 | | (Court only) In Court hearing set for 2/4/2008 at 10:00 AM. (jdh) (Entered: 12/10/2008) |
| 12/19/2008 | 61 | RESPONSE by Plaintiff United States of America *to discovery motions* (Attachments: # 1 Appendix)(Bindi, David) (Entered: 12/19/2008) |
| 01/07/2009 | 62 | MOTION by Defendant Darryl Lamont Johnson for extension of time to file response/reply - *AGREED* (Campbell, Terence) (Entered: 01/07/2009) |
| 01/07/2009 | 63 | *AGREED* NOTICE of Motion by Terence H. Campbell for presentment of motion for extension of time to file response/reply 62 before Honorable William J. Hibbler on 1/13/2009 at 09:30 AM. (Campbell, Terence) (Entered: 01/07/2009) |
| 01/12/2009 | 64 | MINUTE entry before the Honorable William J. Hibbler: Defendant's Agreed Motion for short extension of time until 1/15/09 to file reply brief regarding MOTION by Defendant Darryl Lamont Johnson for discovery - *Renewed and* |

|  |  | *Amended* 53 , MOTION by Defendant Darryl Lamont Johnson for discovery - *Renewed Based on Massaro v. United States* 30 62 is granted. Ruling on motion for discovery 53 , motion for discovery 30 before Honorable William J. Hibbler on 2/4/2009 at 10:00 AM. Mailed notice (jdh) (Entered: 01/12/2009) |
| 01/15/2009 | 65 | REPLY by Defendant Darryl Lamont Johnson to Response 61 , motion for discovery 53 (Campbell, Terence) (Entered: 01/15/2009) |
| 01/15/2009 | 66 | INCORRECT Document Linked(Campbell, Terence) Modified on 1/16/2009 (aac, ). (Entered: 01/15/2009) |
| 01/16/2009 | 67 | NOTICE of Correction regarding 66 . (aac, ) (Entered: 01/16/2009) |
| 01/16/2009 | 68 | NOTICE by Darryl Lamont Johnson re reply 65 *In Support of Renewed and Amended Motion For Discovery* (Campbell, Terence) (Entered: 01/16/2009) |
| 02/04/2009 | 69 | MINUTE entry before the Honorable William J. Hibbler: Motion hearing held on 2/4/2009. The Court will rule on defendant's motion for discovery 53 by mail. Mailed notice (jdh) (Entered: 02/04/2009) |
| 05/15/2009 | 70 | MINUTE entry before the Honorable William J. Hibbler: Enter Memorandum Opinion and Order. The Court DENIES Defendant's Motion for Discovery (Doc. # 53 ). Status hearing set for 5/26/09 at 10:00 a.m. [ For further detail see separate order(s).] Mailed notice (aac, ) (Entered: 05/19/2009) |
| 05/15/2009 | 71 | MEMORANDUM Opinion and Order. Signed by the Honorable William J. Hibbler on 5/15/2009. (aac, ) (Entered: 05/19/2009) |
| 05/26/2009 | 72 | MINUTE entry before the Honorable William J. Hibbler: Status hearing reset to 6/9/2009 at 9:30 AM. Mailed notice (jdh) (Entered: 05/27/2009) |
| 06/09/2009 | 73 | MINUTE entry before the Honorable William J. Hibbler: Status hearing held. Petitioner to file additional motions with supporting memoranda by 7/31/09. Government to respond by 8/31/09. Petitioner to reply by 9/21/09. Ruling by mail. Mailed notice (aac, ) (Entered: 06/10/2009) |
| 07/17/2009 | 74 | MOTION by Defendant Darryl Lamont Johnson for extension of time to file *Brief in Support of Relief Under Sec. 2255 Petition* (Campbell, Terence) (Entered: 07/17/2009) |
| 07/17/2009 | 75 | *AGREED* NOTICE of Motion by Terence H. Campbell for presentment of motion for extension of time to file 74 before Honorable William J. Hibbler on 7/22/2009 at 09:30 AM. (Campbell, Terence) (Entered: 07/17/2009) |
| 07/21/2009 | 76 | MINUTE entry before the Honorable William J. Hibbler: Agreed motion to modify briefing schedule 74 is granted. Petitioner's brief in support of his claim for relief under Section 2255 to be filed by 8/28/2009. Government to respond by 9/28/2009. Petitioner to reply by 10/19/2009. Ruling by mail. Mailed notice (jdh) (Entered: 07/21/2009) |
| 08/19/2009 | 77 | MOTION by Defendant Darryl Lamont Johnson for extension of time to file *brief* (Campbell, Terence) (Entered: 08/19/2009) |
| 08/19/2009 | 78 | NOTICE of Motion by Terence H. Campbell for presentment of motion for |

| | | |
|---|---|---|
| | | extension of time to file 77 before Honorable William J. Hibbler on 8/25/2009 at 09:30 AM. (Campbell, Terence) (Entered: 08/19/2009) |
| 08/20/2009 | 79 | MOTION by Defendant Darryl Lamont Johnson for extension of time to file *brief* (Campbell, Terence) (Entered: 08/20/2009) |
| 08/20/2009 | 80 | *AGREED* NOTICE of Motion by Terence H. Campbell for presentment of motion for extension of time to file 79 before Honorable William J. Hibbler on 8/25/2009 at 09:30 AM. (Campbell, Terence) (Entered: 08/20/2009) |
| 08/24/2009 | 81 | MINUTE entry before the Honorable William J. Hibbler: Motion to modify briefing schedule 77 is withdrawn as moot. Agreed Amended Motion to modify briefing schedule 79 is granted. Petitioner's brief in support of his claim for relief under Section 2255 to be filed by 11/10/09. Government to respond by 12/10/09. Petitioner to reply by 1/11/10. Ruling by mail. Mailed notice (jdh) (Entered: 08/24/2009) |
| 10/30/2009 | 82 | MOTION by Defendant Darryl Lamont Johnson for extension of time to file *Brief* (Campbell, Terence) (Entered: 10/30/2009) |
| 10/30/2009 | 83 | *AGREED* NOTICE of Motion by Terence H. Campbell for presentment of motion for extension of time to file 82 before Honorable William J. Hibbler on 11/3/2009 at 09:30 AM. (Campbell, Terence) (Entered: 10/30/2009) |
| 11/02/2009 | 84 | MINUTE entry before the Honorable William J. Hibbler: Petitioner's Motion to modify briefing schedule 82 is granted. Petitioner's initial brief to be due by 12/17/09. Government to respond by 1/22/10. Petitioner to reply by 2/19/10. Ruling by mail. Mailed notice (jdh) (Entered: 11/02/2009) |
| 12/17/2009 | 85 | MEMORANDUM by Darryl Lamont Johnson - *Supplemental in Support of Ineffective Assistance Claim* (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Affidavit, # 4 Affidavit, # 5 Exhibit, # 6 Exhibit, # 7 Affidavit, # 8 Exhibit) (Campbell, Terence) (Entered: 12/17/2009) |
| 12/17/2009 | 86 | MEMORANDUM *In Support of Motion to Reconsider Brady Claim* (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Affidavit, # 4 Affidavit) (Campbell, Terence) (Entered: 12/18/2009) |
| 12/18/2009 | 87 | MEMORANDUM - *Corrected - In Support of Reconsideration of Brady and Johnson v. Mississippi Claims* (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Affidavit, # 4 Affidavit)(Campbell, Terence) (Entered: 12/18/2009) |
| 12/21/2009 | 88 | MOTION by Defendant Darryl Lamont JohnsonConsideration of Brady v. Maryland and Johnson v. Mississippi Claims (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Affidavit, # 4 Affidavit)(Campbell, Terence) (Entered: 12/21/2009) |
| 12/21/2009 | 89 | NOTICE of Correction regarding 87 . (aac, ) (Entered: 12/21/2009) |
| 01/15/2010 | 90 | MOTION by Plaintiff United States of America for extension of time to file response/reply (Bindi, David) (Entered: 01/15/2010) |
| 01/15/2010 | 91 | NOTICE of Motion by David E. Bindi for presentment of before Honorable William J. Hibbler on 1/21/2010 at 09:30 AM. (Bindi, David) (Entered: |

| | | |
|---|---|---|
| | | 01/15/2010) |
| 01/20/2010 | 92 | MINUTE entry before Honorable William J. Hibbler: Government's Motion for extension of time until 2/22/2010 to file response regarding MOTION by Defendant Darryl Lamont Johnson Consideration of Brady v. Maryland and Johnson v. Mississippi Claims 88 90 is granted. Petitioner's reply due by 3/31/2010. Ruling by mail. Mailed notice (jdh) (Entered: 01/20/2010) |
| 02/12/2010 | 93 | MOTION by Plaintiff United States of America for extension of time (Bindi, David) (Entered: 02/12/2010) |
| 02/12/2010 | 94 | NOTICE of Motion by David E. Bindi for presentment of extension of time 93 before Honorable William J. Hibbler on 2/18/2010 at 09:30 AM. (Bindi, David) (Entered: 02/12/2010) |
| 02/17/2010 | 95 | MINUTE entry before Honorable William J. Hibbler: Government's Agreed Motion for extension of time until 3/24/2010 to respond to petitioner's supplemental briefs 93 is granted. Mailed notice (jdh) (Entered: 02/17/2010) |
| 03/17/2010 | 96 | MOTION by Plaintiff United States of America for extension of time to file response/reply as to memorandum in support of motion 86 , memorandum, 85 (Bindi, David) (Entered: 03/17/2010) |
| 03/17/2010 | 97 | NOTICE of Motion by David E. Bindi for presentment of motion for extension of time to file response/reply, motion for relief, 96 before Honorable William J. Hibbler on 3/23/2010 at 09:30 AM. (Bindi, David) (Entered: 03/17/2010) |
| 03/22/2010 | 98 | MINUTE entry before Honorable William J. Hibbler: Government's Agreed Motion for an extension of time until 5/10/2010 to respond to petitioner's supplemental briefs 96 is granted. Petitioner's reply due by 6/28/2010. Ruling by mail. Mailed notice (jdh) (Entered: 03/22/2010) |
| 05/10/2010 | 99 | RESPONSE by Plaintiff United States of America *to supplemental briefs* (Bindi, David) (Entered: 05/10/2010) |
| 06/01/2010 | 100 | MOTION by Defendant Darryl Lamont Johnson for extension of time to file response/reply - *AGREED* (Campbell, Terence) (Entered: 06/01/2010) |
| 06/01/2010 | 101 | *Agreed* NOTICE of Motion by Terence H. Campbell for presentment of before Honorable William J. Hibbler on 6/8/2010 at 09:30 AM. (Campbell, Terence) (Entered: 06/01/2010) |
| 06/07/2010 | 102 | MINUTE entry before Honorable William J. Hibbler: Agreed Motion to modify briefing schedule regarding MOTION by Defendant Darryl Lamont Johnson Consideration of Brady v. Maryland and Johnson v. Mississippi Claims 88 100 is granted. Petitioner's reply due by 8/6/2010. Ruling by mail. Mailed notice (jdh) (Entered: 06/07/2010) |
| 08/02/2010 | 103 | MOTION by Defendant Darryl Lamont Johnson for extension of time - *AGREED* (Campbell, Terence) (Entered: 08/02/2010) |
| 08/02/2010 | 104 | *AGREED* NOTICE of Motion by Terence H. Campbell for presentment of extension of time 103 before Honorable William J. Hibbler on 8/5/2010 at |

Case 1:02-cv-06998   Document 117   Filed 02/10/11   Page 25 of 25   PageID 1464

Case: 11-1443     Document: 4-6     Filed: 03/04/2011     Pages: 242

| | | |
|---|---|---|
| | | 09:30 AM. (Campbell, Terence) (Entered: 08/02/2010) |
| 08/04/2010 | 105 | MINUTE entry before Honorable William J. Hibbler: Petitioner's Agreed Motion for extension of time until 8/16/2010 to file reply brief 103 is granted. Mailed notice (jdh) (Entered: 08/04/2010) |
| 08/16/2010 | 106 | REPLY by Defendant Darryl Lamont Johnson *In Support of His Ineffective Assistance of Counsel Claim* (Campbell, Terence) (Entered: 08/16/2010) |
| 08/16/2010 | 107 | REPLY by Defendant Darryl Lamont Johnson *In Support of His Brady v. Maryland and Johnson v. Mississippi Claims* (Campbell, Terence) (Entered: 08/16/2010) |
| 08/17/2010 | 108 | REPLY by Defendant Darryl Lamont Johnson *In Support of His Ineffective Assistance of Counsel Claim - Corrected* (Campbell, Terence) (Entered: 08/17/2010) |
| 08/17/2010 | 109 | REPLY by Defendant Darryl Lamont Johnson *In Support of His Brady v. Maryland and Johnson v. Mississippi Claims - Corrected* (Campbell, Terence) (Entered: 08/17/2010) |
| 11/05/2010 | 110 | MOTION by Defendant Darryl Lamont Johnson for leave to conduct discovery and supporting memorandum of law. (ph, ) (Entered: 11/08/2010) |
| 12/13/2010 | 111 | MINUTE entry before Honorable William T. Hart:Enter Memorandum Opinion and Order. The court grants Defendant - Movant's motion to vacate his sentence 1 . all other motions are terminated as moot. Mailed notice. (kj, ) (Entered: 12/16/2010) |
| 12/13/2010 | | (Court only) ***Documents terminated: MOTION by Defendant Darryl Lamont Johnson for discovery 110 , MOTION by Defendant Darryl Lamont Johnson for discovery - *Renewed Based on Massaro v. United States* 30 , MOTION by Defendant Darryl Lamont JohnsonConsideration of Brady v. Maryland and Johnson v. Mississippi Claims 88 ., ***Motions terminated: MOTION by Defendant Darryl Lamont Johnson for discovery 110 , MOTION by Defendant Darryl Lamont Johnson for discovery - *Renewed Based on Massaro v. United States* 30 , MOTION by Defendant Darryl Lamont JohnsonConsideration of Brady v. Maryland and Johnson v. Mississippi Claims 88 , ***Deadlines terminated. (kj, ) (Entered: 12/16/2010) |
| 12/13/2010 | 112 | MEMORANDUM Opinion and Order Signed by the Honorable William J. Hibbler on 12/13/2010.(kj, ) Modified on 12/17/2010 (kj, ). (Entered: 12/16/2010) |
| 12/13/2010 | 113 | ENTERED JUDGMENT.(kj, ) (Entered: 12/16/2010) |
| 12/17/2010 | 114 | NOTICE of Correction regarding 112 . (kj, ) (Entered: 12/17/2010) |
| 02/10/2011 | 115 | NOTICE of appeal by United States of America regarding orders 113 (Bindi, David) (Entered: 02/10/2011) |
| 02/10/2011 | 116 | NOTICE of Appeal Due letter sent to counsel of record. (gel, ) (Entered: 02/10/2011) |

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



<table>
<tr><td>Everett McKinley Dirksen United States Courthouse<br>Room 2722 - 219 S. Dearborn Street<br>Chicago, Illinois 60604</td><td></td><td>Office of the Clerk<br>Phone: (312) 435-5850<br>www.ca7.uscourts.gov</td></tr>
</table>

## NOTICE OF DOCKETING - Short Form

February 10, 2011

The below captioned appeal has been docketed in the United States Court of Appeals for the Seventh Circuit:

---

Appellate Case No: 11-1326

Caption:
UNITED STATES OF AMERICA,
Petitioner - Appellant

v.

DARRYL L. JOHNSON,
Respondent - Appellee

District Court No: 1:02-cv-06998
Court Reporter Alexandra Roth
Clerk/Agency Rep Michael Dobbins
District Judge William Hibbler

Date NOA filed in District Court: 02/10/2011

---

If you have any questions regarding this appeal, please call this office.

form name: **c7_Docket_Notice_short_form** (form ID: **188**)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent-Appellant, | ) | No. 02 C 6998 |
| | ) | |
| vs. | ) | Hon. William J. Hibbler |
| | ) | |
| DARRYL JOHNSON, | ) | Capital Case |
| | ) | |
| Petitioner-Appellee. | ) | |

**<u>DARRYL LAMONT JOHNSON'S NOTICE OF CROSS-APPEAL</u>**

Defendant Darryl Lamont Johnson, by his attorneys, Terence H. Campbell of Cotsirilos, Tighe & Streicker, and Lorinda Meier Youngcourt, pursuant to Rules 3(a)(1) and 4(a)(3) of the Federal Rules of Appellate Procedure, hereby gives notice of cross-appeal to the United States Court of Appeals for the Seventh Circuit from the judgment of the District Court, entered March 11, 2003, partially denying Mr. Johnson's motion under 28 U.S.C. § 2255, and the portion(s) of the judgment entered by the District Court on December 13, 2010, other than those parts finding Johnson received ineffective assistance of counsel and granting a new sentencing hearing, specifically the portion(s) of the December 13, 2010 Order finding various of Mr. Johnsons's other claims to be "moot."

Undersigned counsel wishes to alert the Court that we have also filed with the Seventh Circuit a Motion to Dismiss the government's appeal from this Court's December 13, 2010 Order, vacating Mr. Johnson's death sentences and ordering that he be resentenced, because that Order is not final and appealable until Mr. Johnson is actually resentenced. *Andrews v. United States*, 373 U.S. 334, 339 (1963) ("Where, as here, what was appropriately asked and appropriately granted was the resentencing of the petitioners, *it is obvious that there could be no final disposition of the § 2255 proceedings until the petitioners were resentenced.*"). A copy of Johnson's Motion to Dismiss The

Government's Appeal For Lack of Jurisdiction is attached hereto as Exhibit A. This notice of cross-appeal is being filed in an abundance of caution, in order to ensure we protect Mr. Johnson's appellate rights with respect to the § 2255 claims that the District Court previously denied or found moot.  For the reasons stated in Johnson's Motion to Dismiss the Appeal (Ex. A), the filing of this notice of cross-appeal should not be construed as a concession that jurisdiction properly lies with the Court of Appeals for the Seventh Circuit at this time.

Respectfully submitted,

/s/ Terence H. Campbell                       /s/ Lorinda M Youngcourt
Terence H. Campbell                                Lorinda Meier Youngcourt
Cotsirilos, Tighe & Streicker, Ltd.           Youngcourt Law Office
33 North Dearborn Street, Suite 600           P.O. Box 206
Chicago, Illinois 60602                       Huron, Indiana 47437-0206
(312) 263-0345                                (866) 274-3218

*Counsel for Darryl Lamont Johnson*

## <u>CERTIFICATE OF SERVICE</u>

Terence H. Campbell, an attorney, hereby certifies that in accordance with hereby certifies

that in accordance with Fed.R.Crim.P. 49, LR 5.5, and the General Order on Electronic Case Filing

(ECF), the following document:

1.    Petitioner's Notice of Cross-Appeal

was served pursuant to the District Court's ECF system as to ECF filers, including the United States

Attorney's Office.

/s/  Terence H. Campbell
Terence H. Campbell

# EXHIBIT A

No. 11-1326

## UNITED STATES COURT OF APPEALS
### FOR THE SEVENTH CIRCUIT

U.S.C.A. — 7th Circuit
RECEIVED
FEB 2 3 2011 RMS
GINO J. AGNELLO
CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent-Appellant, | ) | |
| | ) | No. 02 C 6998 |
| v. | ) | |
| | ) | Honorable William J. Hibbler, |
| DARRYL LAMONT JOHNSON, | ) | Judge, Presiding. |
| | ) | |
| Petitioner-Appellee. | ) | |

### APPELLEE'S MOTION TO DISMISS APPEAL FOR LACK OF JURISDICTION

Darryl Lamont Johnson, through his court-appointed counsel, Terence H. Campbell of Cotsirilos, Tighe & Streicker, and Lorinda M. Youngcourt, hereby moves this Court to Dismiss the instant appeal for lack of jurisdiction. In support of this motion, Petitioner-Appellee states as follows:

1.      Darryl Johnson was convicted after a jury trial of multiple counts of a criminal indictment. He was sentenced to death on two of the counts, and is currently in the custody of the Bureau of Prisons, housed in Terre Haute, Indiana.

2.      After exhausting his direct appeals, Johnson filed a §2255 petition alleging, *inter alia*, that his trial counsel provided ineffective assistance during his penalty phase sentencing hearing and sought a new sentencing hearing on that ground. On December 13, 2010, the district court granted Johnson's § 2255 petition, finding that he had established that he received ineffective assistance of counsel under the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and the district court ordered a new sentencing hearing. (*United States v. Johnson*, 02 C 6998, Dec. 13, 2010 Order, District Court Docket No. 112).

3.      Petitioner Johnson has not yet been resentenced nor has a new sentencing hearing been set. Therefore the district court's December 13, 2010 Order is not a final and appealable order. *Andrews v. United States*, 373 U.S. 334 (1963) (discussed below). On February 10, 2011, however, the government filed a Notice of Appeal of the district court's December 13, 2010 order requiring a new sentencing hearing. In its Docketing Statement, the government claimed that this Court "has jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(a)," both of which require a "final order" before appeal can be taken. (Govt. Docketing St.; see 28 U.S.C. § 1291 (Courts of Appeal have jurisdiction over "all final decisions" of the district courts); 28 U.S.C. § 2253(a) ("the final order shall be subject to review, on appeal"). The government asserted no other basis for this Court's jurisdiction. Because the December 13, 2010 Order by the district court granting a new sentencing hearing is not a final and appealable order, this Court does not have jurisdiction, and the appeal must be dismissed.

4.      The law is clear that when a district court orders a new sentencing hearing in a § 2255 proceeding, that is *not* a final and appealable order. *Andrews*, 373 U.S. 334. Instead, the matter can only be appealed after the new sentencing hearing has taken place and a new sentence has been imposed. *Ibid*. In *Andrews*, the Supreme Court squarely addressed the issue, holding: "Where, as here, what was appropriately asked and appropriately granted was the resentencing of the petitioners, *it is obvious that there could be no final disposition of the § 2255 proceedings until the petitioners were resentenced.*" *Andrews*, 373 U.S. at 339 (emphasis added). The Court explained,

> The basic reason for the rule against piecemeal interlocutory appeals in the federal system is particularly apparent in the cases before us. *Until the petitioners are resentenced, it is impossible to know whether the Government will be able to show any colorable claim of prejudicial error.* The district court may, as before, sentence the petitioners to the same 25 years imprisonment; it may place one or both of them on probation; it may

-2-

> make some other disposition with respect to their sentences. *But until the court acts, none of the parties to this controversy will have had a final adjudication of his claims by the trial court in these § 2255 proceedings.*"

*Id.* at 340. As the Supreme Court explained based on the plain language of the statute, a district court's order under § 2255 that contemplates a future sentencing is not a final and appealable order. *Andrews*, 373 U.S. at 340. Accordingly, no appeal can be taken from such an order. *Id.*

5. The *Andrews* rule is, of course, followed by this Court. *Lowe v. United States*, 923 F.2d 528, 530 (7th Cir. 1991) ("appeals [can] not be taken *before* entry of a sentencing order following the grant of a § 2255 motion.") (emphasis in original). It clearly applies equally to new sentencing hearings ordered in § 2255 proceedings in capital cases. As the Court in *United States v. Hammer* held, "Section 2255 applies in capital and non-capital cases alike, as the statute under which federal prisoners file habeas corpus petitions," thus "[a]n order that contemplates a future resentencing [in a capital case] but does not accomplish it is not an 'order entered on the motion' and is not final and appealable." 564 F.3d 628, 634 (3rd Cir. 2009) (quoting 28 U.S.C. § 2255(d)); *United States v. Stitt*, 459 F.3d 483 (4th Cir. 2006) (because Stitt has not yet been resentenced, we find that we lack jurisdiction over this appeal. We dismiss the appeal for lack of jurisdiction and remand to the district court for resentencing.").

6. Indeed, there is an unbroken line of cases following *Andrews* that makes clear appeals cannot be taken by the government prior to resentencing. *United States v. Hayes*, 532 F.3d 349, 352 (5th Cir. 2008) (stating that, in *Andrews*, "the Supreme Court found that when a § 2255 petitioner is granted a resentencing, the government may not appeal that finding until *after* the resentencing occurs"); *United States v. Futch*, 518 F.3d 887, 892 (11th Cir. 2008) ("We conclude that Futch's § 2255 proceeding was not final until he was resentenced" following *Andrews* holding "that a district

court's § 2255 order granting resentencing is not appealable until after resentencing."); *United States v. Hadden*, 475 F.3d 652, 662 (4th Cir. 2007) ("the Supreme Court [in *Andrews*] held that until the district court actually resentenced the petitioners, the § 2255 proceeding was not complete, and no appeal could be taken from the district court's order contemplating, but not accomplishing, the prisoners' resentencing," thus, pursuant to *Andrews*' holding, "a district court's order, which contemplated the petitioners' future resentencings, but did not actually sentence the petitioners, was a non-appealable interlocutory order under § 2255); *United States v. Martin*, 226 F.3d 1042, 1048 (9th Cir. 2000) (same); *United States v. McCoy*, 410 F.3d 124, 130-31 (3d Cir. 2005) (same); *United States v. Duardi*, 514 F.2d 545, 547 (8th Cir. 1975) (same); 15B Charles Alan Wright et al., *Federal Practice and Procedure* § 3919.9 (2008).

7.    Pursuant to *Andrews* and the long line of cases following *Andrews*, including this Circuit's decision in *Lowe*, this Court does not have jurisdiction over this appeal because the resentencing has not yet taken place. The district court's December 13, 2010 Order is not a final and appealable order. Accordingly, the government's appeal is premature and must be dismissed.

8.    Last week, undersigned counsel advised the prosecutors in writing about *Andrews*, *Lowe*, and the line of cases holding that the government cannot appeal the granting of a new sentencing hearing in a § 2255 case until the resentencing has occurred, and asked the government to dismiss its premature appeal. However, for reasons that are unclear, the government said that it would not voluntarily dismiss its appeal and would require us to file a motion to dismiss. Accordingly, we are filing this motion.[1]

---

[1] In an abundance of caution, undersigned counsel is filing a timely notice of cross-appeal contemporaneously with this Motion to Dismiss in order to assure Johnson's appellate rights are preserved with respect to other aspects of his § 2255 claims. For the reasons set forth herein, the

WHEREFORE, Appellee Darryl Johnson respectfully requests that this Court issue an Order

dismissing this appeal for lack of jurisdiction.

Respectfully submitted,

Terence H. Campbell
Cotsirilos, Tighe & Streicker
33 North Dearborn, Suite 600
Chicago, IL 60602
(312) 263-0345

---

filing of this notice of cross-appeal, however, should not be construed as a concession that jurisdiction properly lies with this Court at this time.

-5-

No. 11-1326

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Respondent-Appellant*, | ) | No. 02 C 6998 |
| | ) | |
| v. | ) | Honorable William J. Hibbler, |
| | ) | Judge, Presiding. |
| DARRYL LAMONT JOHNSON, | ) | |
| | ) | |
| *Petitioner-Appellee*. | ) | |

---

## AFFIDAVIT

I, Terence H. Campbell, a member of the Bar of the State of Illinois, having been duly sworn,

state as follows:

1.    I have prepared the attached Motion To Dismiss Appeal For Lack of Jurisdiction.

2.    All the factual representations I have made in that motion are true and correct to the

best of my knowledge and belief.

Further Affiant Sayeth Not.

_____
Terence H. Campbell

Signed and sworn before me on this
23rd day of February, 2011.

_____
Notary Public

OFFICIAL SEAL
BARBARA J DARDAR
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/30/12

No. 11-1326

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Respondent-Appellant,* | ) | No. 02 C 6998 |
| | ) | |
| v. | ) | Honorable William J. Hibbler, |
| | ) | Judge, Presiding. |
| DARRYL LAMONT JOHNSON, | ) | |
| | ) | |
| *Petitioner-Appellee.* | ) | |

### NOTICE OF FILING & PROOF OF SERVICE

**To:**   David Bindi
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604

Please take notice that on this 23rd day of February, 2011, I filed with the Clerk of this Court and served upon the party listed above, by personal service, the attached Motion to Dismiss For Lack of Jurisdiction.

_____
Terence H. Campbell

**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF ILLINOIS
219 SOUTH DEARBORN STREET
CHICAGO, ILLINOIS 60604

**MICHAEL W. DOBBINS**
**CLERK**

312-435-5670

February 24, 2011

02cv6998                                   USA v. Johnson                                   Judge Hibbler

The attached copy of the Notice of Appeal is being mailed to all parties pursuant to F.R.A.P.3 (d). The record on this appeal is due on or before 3/16/2011.

Circuit Rule 10 provides that the entire record except for certain miscellaneous procedural documents be forwarded to the Court of Appeals. If any of the automatically excluded items need to be included in the record, counsel has until 3/9/2011 to inform the Clerk of the District Court; specifying in writing which are so required and the date of their filing (i.e. Descriptive list).

Counsel must ensure that Trial Exhibits to be included in the record which are not listed on the District Court docket and/or in the possession of the District Court Clerk are furnished to the Clerk on or before 3/9/2011, together with a Exhibit List.

F.R.A.P. 10 (b) requires that within fourteen (14) days of the filing of the Notice of Appeal, the appellant order a transcript of such parts of the proceedings not already on file which he/she deems necessary for the record. Should appellant order less than the entire transcript, he/she is required to file and serve on appellee a description of the parts he/she intends to order. Under such circumstances, appellee has fourteen (14) days after service within which to order any additional parts of the transcript. Counsel in criminal cases should also be familiar with Circuit Rule 11(a) and 11(b).

In the event it becomes necessary to supplement the record on appeal with documents already on file with the Clerk, a court order will be required prior to any supplement being transmitted.

Sincerely,

Michael W. Dobbins, Clerk

By: _____
    G. Lewis, Deputy Clerk

*INCLUDED ITEMS*: ALL BRIEFS, MEMORANDA.
*ITEMS NOT INCLUDED*: NOTICE OF FILING, NOTICE OF MOTION, SUBPOENAS, SUMMONS, BONDS, STATUS HEARINGS, EXTENSIONS OF TIME, AFFIDAVITS, AFFIDAVITS OF SERVICE, NOTICES OF SETTING, DEPOSITION AND NOTICES, AND JURY LIST.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent-Appellant, | ) | No. 02 C 6998 |
| | ) | |
| vs. | ) | Hon. William J. Hibbler |
| | ) | |
| DARRYL JOHNSON, | ) | Capital Case |
| | ) | |
| Petitioner-Appellee. | ) | |

### DARRYL LAMONT JOHNSON'S NOTICE OF CROSS-APPEAL

Defendant Darryl Lamont Johnson, by his attorneys, Terence H. Campbell of Cotsirilos, Tighe & Streicker, and Lorinda Meier Youngcourt, pursuant to Rules 3(a)(1) and 4(a)(3) of the Federal Rules of Appellate Procedure, hereby gives notice of cross-appeal to the United States Court of Appeals for the Seventh Circuit from the judgment of the District Court, entered March 11, 2003, partially denying Mr. Johnson's motion under 28 U.S.C. § 2255, and the portion(s) of the judgment entered by the District Court on December 13, 2010, other than those parts finding Johnson received ineffective assistance of counsel and granting a new sentencing hearing, specifically the portion(s) of the December 13, 2010 Order finding various of Mr. Johnsons's other claims to be "moot."

Undersigned counsel wishes to alert the Court that we have also filed with the Seventh Circuit a Motion to Dismiss the government's appeal from this Court's December 13, 2010 Order, vacating Mr. Johnson's death sentences and ordering that he be resentenced, because that Order is not final and appealable until Mr. Johnson is actually resentenced. *Andrews v. United States*, 373 U.S. 334, 339 (1963) ("Where, as here, what was appropriately asked and appropriately granted was the resentencing of the petitioners, *it is obvious that there could be no final disposition of the § 2255 proceedings until the petitioners were resentenced.*"). A copy of Johnson's Motion to Dismiss The

Government's Appeal For Lack of Jurisdiction is attached hereto as Exhibit A. This notice of cross-appeal is being filed in an abundance of caution, in order to ensure we protect Mr. Johnson's appellate rights with respect to the § 2255 claims that the District Court previously denied or found moot.  For the reasons stated in Johnson's Motion to Dismiss the Appeal (Ex. A), the filing of this notice of cross-appeal should not be construed as a concession that jurisdiction properly lies with the Court of Appeals for the Seventh Circuit at this time.


Respectfully submitted,

/s/ Terence H. Campbell                    /s/ Lorinda M Youngcourt
Terence H. Campbell                              Lorinda Meier Youngcourt
Cotsirilos, Tighe & Streicker, Ltd.        Youngcourt Law Office
33 North Dearborn Street, Suite 600    P.O. Box 206
Chicago, Illinois 60602                         Huron, Indiana 47437-0206
(312) 263-0345                                     (866) 274-3218

*Counsel for Darryl Lamont Johnson*

2

## CERTIFICATE OF SERVICE

Terence H. Campbell, an attorney, hereby certifies that in accordance with hereby certifies

that in accordance with Fed.R.Crim.P. 49, LR 5.5, and the General Order on Electronic Case Filing

(ECF), the following document:

1.    Petitioner's Notice of Cross-Appeal

was served pursuant to the District Court's ECF system as to ECF filers, including the United States

Attorney's Office.


/s/  Terence H. Campbell
Terence H. Campbell

# EXHIBIT A

No. 11-1326

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

U.S.C.A. – 7th Circuit
RECEIVED
FEB 2 3 2011
GINO J. AGNELLO RMS
CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Respondent-Appellant,* | ) | |
| | ) | No. 02 C 6998 |
| v. | ) | |
| | ) | Honorable William J. Hibbler, |
| **DARRYL LAMONT JOHNSON,** | ) | Judge, Presiding. |
| | ) | |
| *Petitioner-Appellee.* | ) | |

**APPELLEE'S MOTION TO DISMISS APPEAL FOR LACK OF JURISDICTION**

Darryl Lamont Johnson, through his court-appointed counsel, Terence H. Campbell of Cotsirilos, Tighe & Streicker, and Lorinda M. Youngcourt, hereby moves this Court to Dismiss the instant appeal for lack of jurisdiction. In support of this motion, Petitioner-Appellee states as follows:

1.     Darryl Johnson was convicted after a jury trial of multiple counts of a criminal indictment. He was sentenced to death on two of the counts, and is currently in the custody of the Bureau of Prisons, housed in Terre Haute, Indiana.

2.     After exhausting his direct appeals, Johnson filed a §2255 petition alleging, *inter alia*, that his trial counsel provided ineffective assistance during his penalty phase sentencing hearing and sought a new sentencing hearing on that ground. On December 13, 2010, the district court granted Johnson's § 2255 petition, finding that he had established that he received ineffective assistance of counsel under the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and the district court ordered a new sentencing hearing. (*United States v. Johnson*, 02 C 6998, Dec. 13, 2010 Order, District Court Docket No. 112).

3.      Petitioner Johnson has not yet been resentenced nor has a new sentencing hearing been set.  Therefore the district court's December 13, 2010 Order is not a final and appealable order. *Andrews v. United States*, 373 U.S. 334 (1963) (discussed below).  On February 10, 2011, however, the government filed a Notice of Appeal of the district court's December 13, 2010 order requiring a new sentencing hearing.  In its Docketing Statement, the government claimed that this Court "has jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(a)," both of which require a "final order" before appeal can be taken.  (Govt. Docketing St.; see 28 U.S.C. § 1291 (Courts of Appeal have jurisdiction over "all final decisions" of the district courts); 28 U.S.C. § 2253(a) ("the final order shall be subject to review, on appeal").  The government asserted no other basis for this Court's jurisdiction.  Because the December 13, 2010 Order by the district court granting a new sentencing hearing is not a final and appealable order, this Court does not have jurisdiction, and the appeal must be dismissed.

4.      The law is clear that when a district court orders a new sentencing hearing in a § 2255 proceeding, that is *not* a final and appealable order. *Andrews*, 373 U.S. 334.  Instead, the matter can only be appealed after the new sentencing hearing has taken place and a new sentence has been imposed. *Ibid.*  In *Andrews*, the Supreme Court squarely addressed the issue, holding: "Where, as here, what was appropriately asked and appropriately granted was the resentencing of the petitioners, *it is obvious that there could be no final disposition of the § 2255 proceedings until the petitioners were resentenced.*" *Andrews*, 373 U.S. at 339 (emphasis added).  The Court explained,

> The basic reason for the rule against piecemeal interlocutory appeals in the federal system is particularly apparent in the cases before us. *Until the petitioners are resentenced, it is impossible to know whether the Government will be able to show any colorable claim of prejudicial error.* The district court may, as before, sentence the petitioners to the same 25 years imprisonment; it may place one or both of them on probation; it may

-2-

make some other disposition with respect to their sentences. *But until the court acts, none of the parties to this controversy will have had a final adjudication of his claims by the trial court in these § 2255 proceedings.*"

*Id.* at 340. As the Supreme Court explained based on the plain language of the statute, a district court's order under § 2255 that contemplates a future sentencing is not a final and appealable order. *Andrews*, 373 U.S. at 340. Accordingly, no appeal can be taken from such an order. *Id.*

5.      The *Andrews* rule is, of course, followed by this Court. *Lowe v. United States*, 923 F.2d 528, 530 (7th Cir. 1991) ("appeals [can] not be taken *before* entry of a sentencing order following the grant of a § 2255 motion.") (emphasis in original). It clearly applies equally to new sentencing hearings ordered in § 2255 proceedings in capital cases. As the Court in *United States v. Hammer* held, "Section 2255 applies in capital and non-capital cases alike, as the statute under which federal prisoners file habeas corpus petitions," thus "[a]n order that contemplates a future resentencing [in a capital case] but does not accomplish it is not an 'order entered on the motion' and is not final and appealable." 564 F.3d 628, 634 (3rd Cir. 2009) (quoting 28 U.S.C. § 2255(d)); *United States v. Stitt*, 459 F.3d 483 (4th Cir. 2006) (because Stitt has not yet been resentenced, we find that we lack jurisdiction over this appeal. We dismiss the appeal for lack of jurisdiction and remand to the district court for resentencing.").

6.      Indeed, there is an unbroken line of cases following *Andrews* that makes clear appeals cannot be taken by the government prior to resentencing. *United States v. Hayes*, 532 F.3d 349, 352 (5th Cir. 2008) (stating that, in *Andrews*, "the Supreme Court found that when a § 2255 petitioner is granted a resentencing, the government may not appeal that finding until *after* the resentencing occurs"); *United States v. Futch*, 518 F.3d 887, 892 (11th Cir. 2008) ("We conclude that Futch's § 2255 proceeding was not final until he was resentenced" following *Andrews* holding "that a district

-3-

court's § 2255 order granting resentencing is not appealable until after resentencing."); *United States v. Hadden*, 475 F.3d 652, 662 (4th Cir. 2007) ("the Supreme Court [in *Andrews*] held that until the district court actually resentenced the petitioners, the § 2255 proceeding was not complete, and no appeal could be taken from the district court's order contemplating, but not accomplishing, the prisoners' resentencing," thus, pursuant to *Andrews*' holding, "a district court's order, which contemplated the petitioners' future resentencings, but did not actually sentence the petitioners, was a non-appealable interlocutory order under § 2255); *United States v. Martin*, 226 F.3d 1042, 1048 (9th Cir. 2000) (same); *United States v. McCoy*, 410 F.3d 124, 130-31 (3d Cir. 2005) (same); *United States v. Duardi*, 514 F.2d 545, 547 (8th Cir. 1975) (same); 15B Charles Alan Wright et al., *Federal Practice and Procedure* § 3919.9 (2008).

7.     Pursuant to *Andrews* and the long line of cases following *Andrews*, including this Circuit's decision in *Lowe*, this Court does not have jurisdiction over this appeal because the resentencing has not yet taken place. The district court's December 13, 2010 Order is not a final and appealable order. Accordingly, the government's appeal is premature and must be dismissed.

8.     Last week, undersigned counsel advised the prosecutors in writing about *Andrews*, *Lowe*, and the line of cases holding that the government cannot appeal the granting of a new sentencing hearing in a § 2255 case until the resentencing has occurred, and asked the government to dismiss its premature appeal. However, for reasons that are unclear, the government said that it would not voluntarily dismiss its appeal and would require us to file a motion to dismiss. Accordingly, we are filing this motion.[1]

_____

[1] In an abundance of caution, undersigned counsel is filing a timely notice of cross-appeal contemporaneously with this Motion to Dismiss in order to assure Johnson's appellate rights are preserved with respect to other aspects of his § 2255 claims. For the reasons set forth herein, the

-4-

WHEREFORE, Appellee Darryl Johnson respectfully requests that this Court issue an Order

dismissing this appeal for lack of jurisdiction.

Respectfully submitted,

Terence H. Campbell
Cotsirilos, Tighe & Streicker
33 North Dearborn, Suite 600
Chicago, IL 60602
(312) 263-0345

---

filing of this notice of cross-appeal, however, should not be construed as a concession that
jurisdiction properly lies with this Court at this time.

No. 11-1326

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Respondent-Appellant,* | ) | No. 02 C 6998 |
| | ) | |
| v. | ) | Honorable William J. Hibbler, |
| | ) | Judge, Presiding. |
| DARRYL LAMONT JOHNSON, | ) | |
| | ) | |
| *Petitioner-Appellee.* | ) | |

---

## AFFIDAVIT

I, Terence H. Campbell, a member of the Bar of the State of Illinois, having been duly sworn, state as follows:

1.    I have prepared the attached Motion To Dismiss Appeal For Lack of Jurisdiction.

2.    All the factual representations I have made in that motion are true and correct to the best of my knowledge and belief.

Further Affiant Sayeth Not.

_____
Terence H. Campbell

Signed and sworn before me on this
23rd day of February, 2011.

_____
Notary Public

OFFICIAL SEAL
BARBARA J DARDAR
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/30/12

No. 11-1326

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Respondent-Appellant,* | ) | No. 02 C 6998 |
| | ) | |
| v. | ) | Honorable William J. Hibbler, |
| | ) | Judge, Presiding. |
| DARRYL LAMONT JOHNSON, | ) | |
| | ) | |
| *Petitioner-Appellee.* | ) | |

### NOTICE OF FILING & PROOF OF SERVICE

**To:**   David Bindi
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604

Please take notice that on this 23rd day of February, 2011, I filed with the Clerk of this Court and served upon the party listed above, by personal service, the attached Motion to Dismiss For Lack of Jurisdiction.

Terence H. Campbell

# SEVENTH CIRCUIT COURT OF APPEALS INFORMATION SHEET

Include the names of all plaintiffs (petitioners) and defendants (respondents) who are parties to the appeal.  Use a separate sheet if needed.

NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION DOCKET NUMBER:   02cv6998

| PLAINTIFF (Petitioner) | v. | DEFENDANT (Respondent) |
|---|---|---|
| USA/Appellee | | Darryl Lamont Johnson/Appellant |

(Use separate sheet for additional counsel)

| PETITIONER'S COUNSEL | | RESPONDENT'S COUNSEL | |
|---|---|---|---|
| Name | David Bindi | Name | Terence H. Campbell |
| Firm | USAO | Firm | Cotsirilos, Tighe & Streicker |
| Address | 219 South Dearborn Suite 500 Chicago, IL 60604 | Address | 33 North Dearborn Suite 600 Chicago, IL 60602 |
| Phone | 312-353-5300 | Phone | 312-263-0345 |

| Other Information | | | |
|---|---|---|---|
| District Judge | Hibbler | Date Filed in District Court | 9/30/2002 |
| Court Reporter | A. Roth      5038 | Date of Judgment | 3/12/03, 12/16/2010 |
| Nature of Suit Code | 510 | Date of Notice of Appeal | 2/24/2011 |

COUNSEL:          Appointed [ ]          Retained [X]          Pro Se [ ]

FEE STATUS:          Paid [ ]          Due [X]          IFP [ ]

                     IFP Pending [ ]          U.S. [ ]          Waived [ ]

Has Docketing Statement been filed with the District Court Clerk's Office?          Yes [ ]          No [X]

If State/Federal Habeas Corpus (28 USC 2254/28 USC 2255), was Certificate of Appealability:

          Granted [ ]          Denied [ ]          Pending [ ]

If Certificate of Appealability was granted or denied, date of order: _____

If defendant is in federal custody, please provide U.S. Marshall number (USM#): _____

**IMPORTANT: THIS FORM IS TO ACCOMPANY THE SHORT RECORD SENT TO THE CLERK OF THE U.S. COURT OF APPEALS PURSUANT TO CIRCUIT RULE 3(A).   Rev 04/01**

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6998 (96 CR 379-1) | **DATE** | 3/11/2003 |
| **CASE TITLE** | UNITED STATES vs. DARRYL JOHNSON | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Petitioner's motion to vacate conviction and sentence and for new trial pursuant to 28 U.S.C. § 2255 and Rule 33 of the Federal Rules of Criminal Procedure [1-1] and petitioner's motion for leave to conduct discovery [10-1] are denied with prejudice as to Grounds I-V and VII-VIII and without prejudice as to Ground VI. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | MAR 12 2003 date docketed | | 20 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | 3/11/2003 date mailed notice | | |
| CB | courtroom deputy's initials | | PW mailing deputy initials | |

U.S. DISTRICT COURT

03 MAR 11 PM 1:48

Date/time received in central Clerk's Office

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

**MAR 1 2 2003**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff - Appellee - Respondent, | ) | No. 02 C 6998 |
| v. | ) | Suzanne B. Conlon, Judge |
| DARRYL JOHNSON, | ) | |
| Defendant - Appellant - Petitioner. | ) | |

## MEMORANDUM OPINION AND ORDER

Darryl Johnson ("Johnson") was convicted of ordering the murder of a person assisting in federal criminal investigation and ordering the murder of that person and another in furtherance of a continuing criminal enterprise. Johnson was sentenced to death. The Seventh Circuit affirmed Johnson's conviction and sentence. *United States v. Johnson*, 223 F.3d 665 (7th Cir. 2000). The Supreme Court denied Johnson's petition for writ of *certiorari*. *Johnson v. United States*, 122 S. Ct. 71 (2001). Johnson filed a timely petition to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 ("§ 2255") and Fed. R. Crim. P. 33.

In his petition, Johnson claims he was denied effective assistance of counsel, in violation of the Sixth Amendment (Ground I); the government failed to disclose evidence that impeaches a government witness, in violation of the Fifth Amendment (Ground II); the jury relied on incomplete and potentially misleading testimony in sentencing him to death, in violation of the Eighth Amendment (Ground III); the relaxed evidentiary standards allowed by Federal Death Penalty Act of 1994 ("FDPA") during the penalty phase of a capital trial violates the Sixth Amendment (Ground IV); the indictment does not contain all statutory aggravators, in violation of the Fifth Amendment (Ground V); his execution will violate his right to be free from cruel and unusual punishment guaranteed by the Eight Amendment because he may be mentally retarded (Ground VI); his selection for capital prosecution violates his due process rights guaranteed by the Fifth Amendment because

1



federal capital cases are brought disproportionately against minorities (Ground VII); and the jurors may have considered information outside the record in sentencing him to death (Ground VIII). Johnson moves for leave to conduct discovery in connection with his § 2255 petition pursuant to Habeas Rule 6(a).

## BACKGROUND

Johnson was charged in a fifty-one count indictment alleging that he conspired to sell drugs through the Gangster Disciples street gang and ordered the murders of two fellow gang members, Charles Banks and Darryl "Blunt" Johnson. The government sought the death penalty for the two murders by filing a post-indictment Notice of Intent to Seek the Death Penalty under the FDPA. The government dismissed eight counts prior to trial. On November 4, 1997, a jury convicted Johnson on the 43 remaining counts, including the two murder charges.

At Johnson's sentencing hearing, the parties presented evidence on the non-statutory aggravating factor of future dangerousness. The government presented evidence that Johnson was involved in numerous violent crimes, including the discipline of fellow gang members. In addition to the murders of "Blunt" Johnson and Banks, the jury heard testimony about the murder of another fellow gang member, Gregory "G" Sharpe (Tr. 1944-56), a shooting in a McDonald's parking lot that left two people dead (Tr. 1880-87), the shooting of a truck driver who interrupted Johnson's security convoy at an intersection (Tr. 1891-95), the murder of a rival gang member (Tr. 1888-90) and several severe beatings Johnson ordered. (Tr. 1800-1805, 1896-1916). The government offered evidence that Johnson was convicted of manslaughter for shooting and killing Jesse Simpson in 1983. Tr. 1847-53, 1975. A Metropolitan Correctional Center officer testified that Johnson threatened to "get" fellow gang member and co-defendant Quan Ray while they were in custody awaiting trial. Tr. 1863-72.

In response, Johnson called Dr. Mark Cunningham to testify about the custodial options available to the Bureau of Prisons ("BOP"), including the control unit in the federal maximum security prison in Florence, Colorado ("ADX Florence"). Tr. 2282-87. Cunningham testified that

2

Johnson could be permanently sentenced to the control unit in ADX Florence, where inmates are confined one to a cell for 23 hours per day without any contact with other inmates. Tr. 2284-95. According to Cunningham, monitoring by the BOP ensures that gang members like Johnson would "simply have no opportunity to carry out gang-related activities." Tr. 2289. Cunningham opined that there was an "extraordinarily low" likelihood that Johnson would be a danger to others if he were confined to the control unit in ADX Florence. Tr. 2306-07.

In rebuttal, the government presented the testimony of John Vanyur, a former assistant warden at ADX Florence. Vanyur testified that ADX Florence, with a capacity of only 484 inmates, has a well-defined "mission" as a place to house inmates who cannot function in an open prison environment. Tr. 2464. Approximately 90% of the inmates at ADX Florence were transferred from other BOP facilities because of serious misconduct during their incarceration, while 9% are assigned to ADX Florence from the sentencing court. Tr. 2466-67, 2499. Inmates directly assigned to ADX Florence are typically high-ranking organized crime figures, international and domestic terrorists, and high-ranking drug cartel members. Tr. 2468. The authority to place an inmate in a specific institution rests solely with the BOP. *Id.* Vanyur testified that the BOP regulatory scheme prohibits assignment and indefinite confinement in a control unit based on offenses committed in the community. Tr. 2483-85.

During his testimony, Vanyur provided examples of how ADX Florence inmates communicate with each other and the outside world. Tr. 2478-79. For example, inmates send notes through the plumbing system, yell through the vents, learn sign language, use encryption systems, such as an ancient alphabet, in inmate correspondence, use codewords to communicate messages outside the facility, and use "drop-calling." *Id.* To illustrate drop-calling, Vanyur recounted an incident where intelligence had shown that the leader of the Aryan Brotherhood, who was incarcerated at ADX Florence, successfully ordered the murders of two African-American inmates in Lewisburg, Pennsylvania. *Id.* at 2479-80. The Aryan Brotherhood leader made a "drop" communication ordering the murders to an individual in California by speaking in code. *Id.*

3

Inmates in the control unit are allowed one 15 minute telephone call, up to five non-contact visits per month, and virtually unlimited correspondence with the outside world. Tr. 2485. According to Vanyur, Johnson would likely be placed in the open population at a high security penitentiary, rather than ADX Florence. Tr. 2474-75, 2496-97. In an open population setting, an inmate "would have as many phone calls as he could pay for or get someone to accept them as collect charges, so he would have virtually unlimited phone access if he has the time to make the phone calls. And he would have unlimited correspondence privileges." Tr. 2477. After more than 13 hours of deliberation, the jury returned two death sentences against Johnson.

## DISCUSSION

### I. Discovery Motion

Johnson filed his motion for leave to conduct discovery on February 3, 2003, over four months after he filed his § 2255 petition. Indeed, Johnson did not file his discovery motion until after the government filed its response to his § 2255 petition. Johnson does not provide any explanation for the delay. Nor does the government object. Therefore, the court will consider Johnson's tardy discovery motion under Habeas Rule 6(a).

> Rule 6(a) provides in relevant part:
>
> A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Criminal Procedure or the Federal Rules of Civil Procedure or elsewhere in the usages and principles of law if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

28 U.S.C.A. § 2255 Rule 6(a). In order to meet this standard, Johnson must: (1) make a colorable claim showing that the underlying facts, if proven, constitute a constitutional violation; and (2) show good cause for the discovery. *Harris v. Nelson*, 394 U.S. 286, 298-300 (1969). Good cause exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-9 (1997). In order to determine whether Johnson has shown good cause for the requested discovery, the court must first evaluate the merits of his underlying claims.

4

## II.     Habeas Petition

Collateral relief under § 2255 is available to a petitioner who shows "an error of law that is jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Oliver v. United States*, 961 F.2d 1339, 1341 (7th Cir. 1995). Section 2255 relief is neither a recapitulation of, nor a substitute for, direct appeal. *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds, Castellanos v. United States*, 26 F.3d 717, 719, 20 (7th Cir. 1994).

### A.     Ineffective Assistance of Counsel (Ground I)

Johnson claims the lawyers who represented him before this court were ineffective during the guilt and penalty phases of his trial. Johnson did not raise an ineffective assistance of counsel claim on direct appeal. Ineffective assistance of counsel may be raised for the first time in a § 2255 motion only if: (1) trial and appellate counsel were the same; or (2) the defendant needed time to develop additional extrinsic evidence to support his ineffective assistance claim. *Guinan v. United States*, 6 F.3d 468, 471-72 (7th Cir. 1993). Different counsel represented Johnson at trial and on direct appeal. Therefore, Johnson must establish that evidence outside the trial record is necessary to support his ineffective assistance of counsel claim. *McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996).

### 1.     Sentencing - Failure to Investigate

The bulk of Johnson's § 2225 petition is dedicated to his claim that he "was deprived of the effective assistance of counsel in investigating, researching, preparing for, and confronting through the adversarial process the testimony of Warden Vanyur. . ." Memorandum at 6. Specifically, Johnson argues his counsel failed to obtain evidence that the BOP imposed the strict confinement conditions advocated by the defense on other federal inmates prior to his sentencing hearing and that BOP policies in place at the time of sentencing, including 18 U.S.C. § 3582(d) and 28 C.F.R. § 501.3, allowed these strict confinement conditions. In response, the government argues Johnson's

5

claim is procedurally defaulted because this evidence was a matter of public record known to Johnson at the time of his direct appeal.

### a.  Procedural Default

An ineffective assistance of counsel claim "apparent from the trial record or from evidence that is a matter of public record" must be raised on direct review. *Bond v. United States*, 1 F.3d 631, 636 (7th Cir. 1993), *citing United States v. Taglia*, 922 F.2d 413, 418 (7th Cir. 1991). In his petition, Johnson repeats the arguments made in his post-sentencing briefs before this court. *See* defendant's reply to government's response regarding Count II of the motion to vacate the jury's death-penalty phase verdicts [254-1], defendant's statement regarding the need for a hearing on Count II of the motion to vacate the jury's death-penalty phase verdicts [258-1], defendant's memorandum with regard to *United States v. Felipe* [280-1], defendant's reply memorandum concerning *United States v. Felipe* [285-1] and defendant's motion to append two documents to his reply memorandum concerning *United States v. Felipe* [289-1]. Indeed, Johnson relies on the same cases in his petition as he did in his post-sentencing motions. *Compare Id.*, *citing United States v. Felipe*, S16-94CR395 (S.D.N.Y.), *aff'd* 148 F.3d 101 (2d Cir. 1998), *United States v. Yousef*, S16 94 CR 395 (S.D.N.Y.) and *United States v. Jones*, No. WMN-96-0-458 (D. Md.) with memorandum at 17-19. The Seventh Circuit considered and rejected Johnson's arguments on direct appeal. *Johnson*, 223 F.3d at 673-74. Although Johnson cites additional cases in which the BOP imposed strict confinement conditions on other federal inmates, these cases are cumulative of grounds Johnson presented to this court and to the appellate court.

Moreover, the affidavit of trial counsel Jeffrey Urdangen offers nothing new. Petition at Ex. A. Contrary to Johnson's position, the record establishes that trial counsel's failure to present this evidence during the sentencing hearing was not a tactical decision. Indeed, defense counsel informed this court that he did not learn of this evidence until after sentencing. *See* defendant's unopposed motion for a fourteen day extension of the deadline to file his reply memorandum [248-1]("Since March 6th, counsel have been made aware of [f]ederal proceedings in other jurisdictions which tend

6

to undermine the position on future dangerousness which the government in this case advanced not only in the penalty phase, but in their responsive pleadings recently filed with this Court"). *See also Johnson*, 223 F.3d at 672 ("defendant calls the warden's testimony 'false' and argues that since it came in on rebuttal he didn't have a chance to meet it and so was unfairly surprised"). Under these circumstances, Johnson's claim regarding the ineffectiveness of his trial counsel in failing to present this evidence during sentencing should have been raised on direct appeal.

In order to overcome procedural default, Johnson must show: (1) both good cause for his failure to raise the claims on direct appeal and actual prejudice from the failure to raise those claims; or (2) a fundamental miscarriage of justice resulting from the district court's refusal to consider the claims. *McCleese*, 75 F.3d at 1177-78. The cause and prejudice standard is more rigorous than the plain error standard used on direct review. *United States v. Frady*, 456 U.S. 152, 170 (1982). Johnson claims he can show both good cause and actual prejudice for his failure to raise his ineffective assistance claims on direct appeal. Alternatively, he claims a fundamental miscarriage of justice would result from the court's refusal to consider his claims.

**(1)     Cause and Prejudice**

Johnson first argues he has shown good cause because additional discovery is necessary to establish his ineffective assistance of counsel claim. Specifically, he seeks information regarding other federal prisoners who have been held under the strict conditions of confinement advocated by the defense during sentencing. *See* discovery motion at 7-9. Good cause requires a showing of some external objective impediment to Johnson's presentation of his claim, such as unavailability of the factual or legal bases for a claim, or interference by state officials. *Murray v. Carrier*, 477 U.S. 478, 485-87 (1986). Johnson was aware of the factual and legal basis for his ineffective assistance of counsel claim prior to his direct appeal. The discovery Johnson requested is cumulative of the information presented to this court and the appellate court regarding the confinement conditions of Felipe, Yousef and Jones. Therefore, Johnson fails to show good cause for the default.

7

Nor can Johnson show he was prejudiced by his counsel's failure to raise his ineffective assistance of counsel claim on direct appeal. Prejudice depends on the merits of Johnson's ineffective assistance claim. *Belford*, 975 F.2d at 314. *See also Freeman v. Lane*, 962 F.2d 1252, 1259 (7th Cir. 1992). To show prejudice, a defendant must prove "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). In other words, Johnson must show that if his appellate counsel had raised the claims on direct appeal, there was a reasonable probability that the claims would have been successful. *McCleese*, 75 F.3d at 1179. If counsel's actions did not prejudice Johnson, the court need not address counsel's performance. *Gray-Bey v. United States*, 156 F.3d 733, 742 (7th Cir. 1998).

**b.    Merits**

The jury unanimously sentenced Johnson to death for the killing of "Blunt" Johnson and Banks, finding beyond a reasonable doubt that the aggravating factors sufficiently outweighed all mitigating factors presented by the defense. *See* Special Findings [201, 204]. The jury unanimously rejected the defense's proposed finding that Johnson "will not be a serious and continuing danger to society because the government has the power to imprison him for the rest of his life in a maximum security federal prison designed to control and monitor his behavior." *See* Special Findings [202, 203]. Instead, the jury unanimously found that Johnson "would commit serious acts of violence in the future which would be a continuing and serious threat to society." *Id.* Not one of the errors Johnson advances "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Strickler v. Green*, 527 U.S. 263, 290 (1999), *quoting Kyles v. Whitley*, 514 U.S. 419, 435 (1995).

Johnson claims he was prejudiced by his counsel's failure to investigate the law and facts necessary to subject the government's case on future dangerousness to meaningful adversarial testing. Even if Johnson's counsel impeached Vanyur's testimony by presenting additional law and

8

facts on the BOP's policies and practices, the jury might still have concluded that Johnson "would commit serious acts of violence in the future which would be a continuing and serious threat to society." *See Special Findings* [202, 203]. Indeed,

> [w]e know from cases in this court involving murders by prisoners in the control units of federal prisons, that such units cannot be made totally secure. And we know that anyone who has access to a telephone or is permitted to receive visitors may be able to transmit a lethal message in code. We also know that nothing in federal law authorizes a judge to sentence a prisoner to life in the control unit. Quite apart from the fact that 'a sentencing court has no authority to order that a convicted defendant be confined in a particular facility, must less placed in a particular treatment program,' a prison control unit is an internal disciplinary mechanism that is not intended or designed for lifetime commitment. The Bureau of Prisons could not, therefore, commit a prisoner to the control unit for life, refusing to consider circumstances that might render his joining the open population of the prison harmless, such as extreme old age or the dissolution of the gang with which he had been affiliated.

*Johnson*, 223 F.3d at 672-73 (internal citations omitted). As Vanyur testified, prisoners have developed ingenious ways to communicate both inside and outside the prison system. Tr. 2478-79. Even inmates in the control unit are allowed one 15 minute telephone call, up to five non-contact visits per month and virtually unlimited correspondence with the outside world. Tr. 2485. Although under § 3582(d), the court may order a defendant not to associate or communicate with a specified person other than his attorney, the court may enter such an order only upon a showing of probable cause to believe that association or communication is for the purpose of enabling him to participate in an illegal enterprise. Pursuant to 28 C.F.R. § 501.3(a), the Attorney General may order the BOP director to authorize a warden to house an inmate in administrative detention and limit his communications privileges "as is reasonably necessary to protect persons against the risk of act of violence or terrorism." At the time of Johnson's sentencing hearing, these "special administrative measures" or SAMs were required to be reevaluated every 120 days. Even with this additional information, the jury could have reasonably concluded there was no guarantee that the government could prevent Johnson from committing serious acts of violence in the future.

The government's concession before the Supreme Court does not change this result. *See* Memorandum, Ex. A. at 21. In opposition to Johnson's petition for *certiorari*, the government

9

acknowledged that Vanyur's testimony may have left the jury with "the mistaken impression that no legal authority existed to limit petitioner's communications and contacts while in prison in order to curtail his future dangerousness." *Id.* at 27. The concession does nothing for Johnson's case because as the government later points out in its opposition brief, Johnson "cannot establish that the jury 'probably' would not sentence him to death at a new sentencing hearing if it was informed" about the relevant law. Indeed, the record provides strong support for the conclusion that Johnson would have been sentenced to death even if defense counsel impeached Vanyur with the BOP's policies and practices. *See Strickler*, 527 U.S. at 294 (court may look to other support in the record for conviction and sentence).

The jury unanimously and beyond a reasonable doubt found statutory and non-statutory factors other than future dangerousness. The jury found two statutory aggravating factors with respect to the Blunt Johnson murder. Namely, Johnson caused the killing after substantial planning and premeditation and in the course of a continuing criminal enterprise that involved the distribution of drugs to persons under age 21. The jury found the same two statutory aggravating factors in connection with Banks' murder, plus the statutory aggravating factor related to Johnson's previous conviction for voluntary manslaughter using a firearm. In addition, the jury found two non-statutory aggravating factors regarding the Blunt Johnson murder: (1) Johnson ordered the murder to obstruct justice by preventing the victim from testifying; and (2) Johnson caused harm to the victim's family. The jury did not unanimously find any of the mitigating factors by a preponderance of the evidence. Based on this record, Johnson fails to establish there is a reasonable probability the outcome would have been different but for his counsel's alleged errors. Therefore, Johnson fails to establish the cause and prejudice necessary to excuse his procedural default, as well as the required prejudice necessary to establish his ineffective assistance of counsel claim. Johnson's failure to establish a colorable claim based on his proposed facts dooms his request for additional discovery.

10

**(2)     Fundamental Miscarriage of Justice**

A federal court may review a defaulted claim only if a fundamental miscarriage of justice is involved. This occurs where "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 485-86. The Seventh Circuit previously rejected Johnson's arguments against imposition of the death penalty. *Johnson*, 223 F.3d at 671-74. Thus, no fundamental miscarriage of justice will result by application of the procedural default rule. Accordingly, Johnson's ineffective assistance of counsel claims are procedurally defaulted.

**2.     Trial and Sentencing - Failure to Call Certain Witnesses**

Johnson claims his lawyers were ineffective for failing to call Cheryl Fletcher during sentencing to rebut the testimony of Archie Rudd regarding the circumstances leading up to Johnson's manslaughter conviction. Petition at 8-9. However, Johnson fails to provide any extrinsic evidence to support his version of Fletcher's proposed testimony. Nor does he move for additional discovery on this claim. Johnson apparently abandons this claim by failing to address it on reply. Under these circumstances, Johnson's ineffective assistance of counsel claim based on Fletcher's proposed testimony is procedurally defaulted.

Johnson next claims his lawyers were ineffective for failing to call his former lawyer, Scott Arthur, during the guilt and penalty phases of his trial. Petition at 7-8. In support of his claim, Johnson offers the affidavits of Arthur and Urdangen. Memorandum at Ex. A and B. The government does not dispute that Johnson may raise this claim for the first time in his § 2255 motion. Therefore, Johnson's ineffective assistance of counsel claim based on Arthur's proposed testimony is considered on the merits.

Johnson fails to explain how Arthur's testimony "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Strickler*, 527 U.S. at 290. According to Johnson, Arthur's testimony was needed to refute the government's assertions that he ordered the murders of Blunt Johnson and Banks and ordered Roger Stewart to threaten a possible government witness. As the government points out, Arthur's claim that he did not tell Johnson that

11

Banks was cooperating with the government does not refute the government's evidence that Johnson suspected Banks of cooperating and told Stewart that he wanted Quan Ray to kill him. Response at 42, *citing* Tr. 1030-32. Johnson fails to respond to this argument on reply. Nor does Johnson respond to the government's argument that Roger Stewarts' testimony regarding Johnson's order to threaten a possible government witness was a "drop in the bucket" on future dangerousness compared to the testimony elicited regarding the murders and beatings that actually occurred on Johnson's orders.

Finally, Arthur does not deny in his affidavit that he told Johnson about Blunt Johnson's plans to cooperate. In reply, Johnson claims an evidentiary hearing is necessary because counsel "believes if given the opportunity to testify at a hearing in this matter, Arthur will deny having supplied information to Johnson that Blunt Johnson was cooperating with the government." Reply at 39. Counsel's unsupported belief is not enough to require an evidentiary hearing. *Aleman v. United States*, 878 F.2d 1009, 1012 (7th Cir. 1989)("Mere unsupported allegations cannot sustain a petitioner's request for a hearing"). Therefore, Johnson's claims based on counsel's failure to call Scott Arthur at trial or sentencing fail on the merits.

## B.    *Brady* Violation (Ground II)

Johnson claims the government failed to turn over evidence regarding BOP practices at the time of his sentencing hearing in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Johnson did not raise this issue on direct appeal. A *Brady* violation may only be raised for the first time in a collateral proceeding where support for the claim was not discovered prior to direct appeal. *See Strickler*, 527 U.S. at 280-82. Johnson was aware of the BOP practices applied to Felipe, Yousef and Jones prior to his appeal. Evidence that the BOP applied the same policies and practices to other federal inmates is cumulative of information already in Johnson's possession at the time of his direct appeal. As discussed in relation to his ineffective assistance of counsel claim, Johnson has not demonstrated cause for or prejudice from failing to raise the claim earlier.

12

Even if Johnson's claim survived a procedural default, he fails to establish a *Brady* violation. Under *Brady* and its progeny, the prosecution has an affirmative duty to disclose evidence that is both favorable to the defense and material to either guilt or punishment. *Kyles*, 514 U.S. 419, 432-34 (1995). In order to establish a *Brady* violation, Johnson must show: (1) the government suppressed evidence; (2) the evidence was favorable to his defense; and (3) the evidence was material to an issue at trial. *United States v. Grintjes*, 237 F.3d 876, 880 (7th Cir. 2001). The government does not contest Johnson's contention that evidence relating to BOP practices was favorable to the defense. Rather, the government argues Johnson cannot establish either the first or third element of a *Brady* violation.

To establish that the government suppressed evidence, Johnson must demonstrate: (1) the government failed to disclose known evidence before it was too late for him to make use of the evidence; and (2) the evidence was not otherwise available to him through the exercise of reasonable diligence. *Collier v. Davis*, 301 F.3d 843, 850 (7th Cir. 2002). The court need not determine whether the government knew of the BOP's practices at the time of the sentencing hearing, through Vanyur or otherwise, because Johnson could have discovered the evidence through reasonable diligence. *United States v. Earnest*, 129 F.3d 906, 910 (7th Cir. 1997). For example, counsel could have discovered the circumstances surrounding Felipe's confinement conditions, including the district court's reliance on § 3582(d) in sentencing, through simple electronic research. A defense lawyer's failure to conduct research does not qualify as "suppression" for purposes of *Brady*.

In addition, Johnson fails to demonstrate the information was material to an issue at trial. Evidence is material under *Brady* "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). The materiality standard under *Brady* is the same as the prejudice standard for an ineffective assistance of counsel claim under *Strickland*. *See Id.* at 694 (the standard of materiality applicable to withheld impeachment evidence was adapted from the formulation of prejudice in *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). For the same reasons Johnson

13

failed to establish prejudice for his ineffective assistance of counsel claim, he fails to establish materiality for his *Brady* claim. Johnson's failure to establish a colorable *Brady* claim precludes discovery on this issue.

## C.    Eighth Amendment Violation Based on Inaccurate Testimony (Ground III)

Johnson claims his death sentence was based on materially incomplete, false and/or inaccurate information in violation of the Eighth Amendment. In making this argument, Johnson once again takes issue with Vanyur's testimony. In response, the government argues Johnson's Eighth Amendment claim is procedurally defaulted. Johnson fails to address the government's procedural default argument in his reply.

Johnson fails to establish cause for failing to raise his Eighth Amendment argument earlier. Indeed, Johnson argued on direct appeal that Vanyur's testimony was false or misleading. The Seventh Circuit rejected the premise of Johnson's Eighth Amendment claim, finding that "the warden's testimony, though it did not track the regulations exactly, was not false. The impression conveyed of practice and policy was correct." *Johnson*, 223 F.3d at 672. Based on the Seventh Circuit's decision, Johnson cannot establish prejudice.

## D.    Fifth and Sixth Amendment Violations (Grounds IV and V)

Pursuant to 18 U.S.C. § 3593(c) of the FDPA, evidence may be introduced at a capital sentencing hearing without regard to the Federal Rules of Evidence, except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues or misleading the jury. Johnson claims § 3593(c) violates the Fifth Amendment due process clause and the Sixth Amendment confrontation clause by allowing the use of hearsay evidence in the penalty phase of a capital trial. Johnson further argues that the indictment fails to allege all of the statutory aggravating factors relied on by the government at sentencing, in violation of the Fifth Amendment indictment clause. Johnson did not make these arguments on direct appeal. The government contends Johnson's claims are procedurally defaulted and fail on the merits. The

14

court need not reach the government's procedural default argument, because Johnson's claims fail on the merits.

Johnson's Fifth and Sixth Amendment claims are premised on the Supreme Court's recent decision in *Ring v. Arizona*, 122 S.Ct. 2428 (2002). In *Ring*, the Supreme Court held that facts increasing the statutory maximum punishment in a capital case must be proved beyond a reasonable doubt. *Id.* at 2448, *citing Apprendi v. New Jersey*, 530 U.S. 466, 494 n. 19 (1990). Both parties' arguments center on whether *Teague v. Lane*, 489 U.S. 288 (1989), bars the retroactive application of *Ring* to Johnson's case. Under *Teague*, developments in the law occurring after Johnson's sentence became final apply on collateral review only in rare circumstances. In their arguments, neither party cites the Seventh Circuit's recent decisions in *Trueblood v. Davis*, 301 F.3d 784, 788 (7th Cir. 2002) and *Szabo v. Walls*, 313 F.3d 392, 398-99 (7th Cir. 2002). In *Trueblood*, the Seventh Circuit accepted the parties' agreement that *Ring* could not be considered on collateral review because the Supreme Court had not yet held *Ring* to be retroactive. *Trueblood*, 301 F.3d at 788, *citing Tyler v. Cain*, 533 U.S. 656, 662-64 (2001). Less than four months later, the Seventh Circuit held that *Ring* does not apply retroactively on collateral review:

> Unfortunately for [petitioner], however, in order to apply *Apprendi* to capital sentencing, *Ring* first had to overrule *Walton v. Arizona*, 497 U.S. 639, 110S.Ct. 3047, 111 L.Ed.2d 211 (1990). Given *Teague*, it is *Walton* and not *Ring* that governs [petitioner's] claims on collateral attack. *See Curtis v. United States*, 294 F.3d 841 (7th Cir. 2002)(*Apprendi* does not apply retroactively on collateral attack).

*Szabo*, 313 F.3d at 399. *See also Ring*, 122 S.Ct. 2428, 2449 (O'Connor, J., dissenting)(noting that decision would not benefit the majority of prisoners already on death row because they would be barred from raising the issue retroactively on federal collateral review). At the time of Johnson's sentencing, the government was entitled to proceed as it did. *Id.* at 399, *citing Walton v. Arizona*, 497 U.S. 639 (1990) and *Williams v. New York*, 337 U.S. 241 (1949). Therefore, Johnson's Fifth and Sixth Amendment claims based on *Ring* lack merit.

**F.    Eighth Amendment Violation Based on Mental Retardation (Ground VI)**

Johnson claims his execution violates the Eighth Amendment because he may be mentally retarded. *See Atkins v. Virginia*, 122 S.Ct. 2242 (2002)(Eighth Amendment precludes capital punishment of mentally retarded defendants). The government concedes that *Atkins* applies retroactively on collateral review because it excludes a class of defendants from eligibility for the death penalty. Response at 44, n. 7, *citing Penry v. Lynaugh*, 492 U.S. 302, 329-330 (1989). At sentencing, Johnson offered evidence that he is more likely a member of the brain impaired or dysfunctional population than the normal population. Tr. at 2122. Several tests performed on him rated all aspects of his intelligence quotient ("IQ") and problem-solving skills at the upper end of the mentally deficient or defective range. *Id.* at 2120-22. Johnson scored 79 for his verbal IQ, 74 for his performance IQ, and 76 for his overall IQ. *Id.* For problem-solving, Johnson's scores ranged from the bottom 2 to 3% of the population to the bottom 10% of the population. *Id.* at 2121-22. However, "clinical definitions of mental retardation require not only subaverage intellectual functioning, but also significant limitations in adaptive skills such as communication, self-care, and self-direction that became manifest before age 18." *Atkins*, 122 S.Ct. at 2250. Johnson's adaptive skills were never tested. Discovery motion at 12. With this additional evidence, Johnson may be able to state a colorable Eighth Amendment claim based on mental retardation.

For the most part, Johnson's discovery requests are not designed to obtain evidence necessary to support his Eighth Amendment claim. Johnson first requests government documents regarding its position on mental retardation in general. Discovery motion at 13, items 1, 2 and 5. Johnson does not explain how this information would establish his own mental deficiency under *Atkins*. Johnson next requests the government's evidence regarding his own mental deficiency. *Id.*, items 3 and 4. The government denies having such information. Response to discovery motion at 5. Finally, Johnson requests that the court "approve funding for the defense" to retain psychiatric and/or psychological experts to evaluate Johnson's previous testing and to conduct any additional testing that may be necessary. Discovery motion at 13; Reply at 40. Surprisingly, the government takes no

16

position on Johnson's generalized request for funds. Response to discovery motion at 6. Neither party provides a legal basis for the court to approve an unspecified amount of money for unhampered use by the defense. To the contrary, Rule 35(a) provides:

> When the mental or physical condition of a party or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the person in the party's custody or legal control. **The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.**

[Emphasis added.] Johnson's motion for discovery does not comply with the requirements of Rule 35(a). Therefore, Johnson's tardy discovery motion is denied without prejudice to his right to bring an appropriate Rule 35(a) motion. The § 2255 motion is denied as to Ground VI without prejudice, subject to renewal if a report issued pursuant to Rule 35(b) supports his claim under *Atkins*.

## G.    Fifth Amendment Violation based on Race Disparity (Ground VII)

Johnson claims the federal capital sentencing scheme is administered in a racially discriminatory manner. In order to prove an equal protection violation under the Fifth Amendment, Johnson must prove that the federal prosecutorial policy "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Wayte v. United States*, 470 U.S. 598, 608 (1985). The government does not contest Johnson's showing of a discriminatory effect through evidence that the government could have sought the death penalty for other similarly situated defendants, but did not. *See* Memorandum at Ex. K. *See also United States v. Armstrong*, 517 U.S. 456, 468-69 (1996). Rather, the government claims Johnson cannot establish that his selection for death penalty prosecution was motivated by a discriminatory purpose.

Johnson has not demonstrated that the government acted with a discriminatory purpose when it selected him for death penalty prosecution. Johnson offers only statistics to demonstrate that the government intentionally discriminated against him. However, "statistics may not be the sole proof of a constitutional violation." *Chavez v. Illinois State Police*, 251 F.3d 612, 647-48 (7th Cir. 2001).

17

*See also McClesky v. Kemp*, 481 U.S. 279, 293 n. 12 (1987)(only in "rare cases [has] a statistical pattern of discriminatory impact demonstrated a constitutional violation . . . "). Johnson does not offer any additional evidence supporting a constitutional violation. Under these circumstances, Johnson is not entitled to discovery on his equal protection claim. *Armstrong*, 517 U.S. at 468-69.

### F.     Juror Information (Ground VIII)

Johnson claims that extra-record information, misinformation and/or considerations may have infected the penalty phase jurors. The court previously denied Johnson's request to contact jurors, as well as his motion to review confidential juror questionnaires. *See* Minute Orders dated August 22 and September 27, 2002 entered in Case No. 96 CR 379. To date, Johnson has not provided evidence of any improper outside contact with the jury or identified any constitutional violation that could be proven through the use of the juror questionnaires. Under these circumstances, Johnson is not entitled to discovery. *See U.S. ex rel. Blankenship v. Circuit Court of Cook County*, 59 F. Supp. 2d 736, 739 (N.D. Ill. 1999), *quoting Calderon v. U.S. Dist. Court for the Northern Dist. Of California*, 98 F.3d 1102, 1106 (9th Cir. 1996)("A habeas petition may not use discovery for 'fishing expeditions to investigate mere speculation'").

### III.     Motion for New Trial

Johnson's petition is based in part on Fed. R. Crim. P. 33. As the government points out, a motion for new trial based on newly discovered evidence must be made within three years of the verdict. Fed. R. Crim. P. 33. The verdict in this case was returned on November 4, 1997, but Johnson's petition was not filed until September 30, 2002. Johnson abandoned this basis for his petition by failing to address the issue in his reply. Johnson's petition is denied to the extent it is based on Fed. R. Crim. P. 33.

18

## CONCLUSION

Johnson's § 2255 petition is denied with prejudice as to Grounds I-V and VII-VIII. As to

Ground VI, Johnson's petition is denied without prejudice to his right to bring an appropriate Rule

35(a) motion.


March 11, 2003                                                    ENTER:

                                                                 *Suzanne B. Conlon*

                                                                 Suzanne B. Conlon
                                                                 United States District Judge

AO 450 (Rev. 5/85) Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Eastern Division

**DOCKETED**

MAR 1 2 2003

UNITED STATES

v.

DARRYL JOHNSON

**JUDGMENT IN A CIVIL CASE**

Case Number: 02 C 6998

☐    Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■    Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that the §2255 petition is denied with prejudice as to Grounds I-V and VII-VIII and without prejudice as to Ground VI.

Michael W. Dobbins, Clerk of Court

Date: 3/11/2003

Christopher Burton, Deputy Clerk

MHN

Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6998 | **DATE** | 12/13/2010 |
| **CASE TITLE** | UNITED STATES of AMERICA v. DARRYL LAMONT JOHNSON | | |

**DOCKET ENTRY TEXT:**

Enter Memorandum Opinion and Order. The Court GRANTS Defendant-Movant's motion to vacate his sentence [1]. All other motions are terminated as moot.

■[For further details see separate order(s).]                    Docketing to mail notice and AO-450.



*MHW*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA,           )
                                    )
      Plaintiff-Respondent,        )
                                    )
                                    )    No. 02 C 6998
      v.                            )
                                    )    The Honorable William J. Hibbler
                                    )
DARRYL LAMONT JOHNSON,              )
                                    )
      Defendant-Movant.            )
                                    )

## MEMORANDUM OPINION AND ORDER

In 1997, a jury convicted Darryl Lamont Johnson for ordering the murder of a person assisting in a federal criminal investigation and ordering the murder of that person and another in furtherance of a continuing criminal enterprise, among 41 other counts. The jury later concluded that death was the appropriate sentence. The Seventh Circuit denied Johnson's appeal and the Supreme Court denied his petition for a writ of *certiorari*. *United States v. Johnson*, 223 F.3d 665 (7th Cir. 2000); *Johnson v. United States*, 534 U.S. 829, 122 S. Ct. 71, 151 L.Ed.2d 37 (2001).

Johnson then sought to set aside his sentence pursuant to 28 U.S.C. § 2255. In his petition, Johnson raised a number of claims, including a claim of ineffective assistance of counsel, a claim that the Government withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963), and a claim that his sentence was based on materially incomplete, false and/or inaccurate information in violation of the Eighth Amendment, *see Johnson v. Mississippi*, 486 U.S. 578, 584-86, 108 S. Ct. 1981, 1986-87, 100 L.Ed.2d 575 (1988). The Court denied Johnson's

1

§ 2255 motion, holding that he procedurally defaulted all three of the aforementioned claims because he failed to raise those claims in his direct appeal.

A few years after the initial ruling on Johnson's § 2255 motion, the Supreme Court announced its decision in *Massaro v. United States*. 538 U.S. 500, 509, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003). In *Massaro*, the Supreme Court held that a petitioner may bring an ineffective assistance of counsel claim in a collateral proceeding whether or not the petitioner could have raised the claim on direct appeal. *Id.* Consequently, the Court vacated the portion of its ruling concerning Johnson's ineffective assistance of counsel claim.[1] Following discovery, the parties provided the Court with supplemental briefing on the merits of that claim. In addition, Johnson moves the Court to once again address his *Brady* and *Johnson* claims based on what he believes to be changes in relevant law and facts. For the following reasons, the Court grants Johnson's § 2255 motion based on his ineffective assistance of counsel claim. The Court therefore vacates his death sentence and awards him a new sentencing hearing. In addition, Johnson's motion for consideration of his other claims is therefore moot.

## I. Background

Johnson's ineffective assistance claim centers on trial counsel's efforts to convince the jury to impose a sentence of life imprisonment rather than one of death. At Johnson's sentencing, counsel presented evidence about the custodial options for housing him. In particular, Johnson presented evidence to suggest that if he were placed permanently in the control unit in ADX-Florence, where inmates are confined to their cells 23 hours per day and not allowed contact with other inmates, he

---

[1] Another judge in this district initially ruled on Johnson's § 2255 motion and the motion to reconsider pursuant to *Massaro*. The executive committee has since reassigned the case.

2

would have no opportunity to carry out a continuing criminal enterprise and his dangerousness to society would be mitigated.

In rebuttal, the Government called an expert, a Bureau of Prisons (BOP) warden, who had formerly served as Assistant Warden at ADX-Florence. That witness testified generally about what BOP placement was likely in Johnson's case. He testified that typically gang leaders like Johnson go to the general prison population, rather than some more restrictive setting. He also testified that even prisoners in strictly controlled environments had managed to commit crimes, including ordering the killing of other inmates. He stated that the BOP could not house prisoners in such strict conditions indefinitely. Finally, he claimed that prisoners cannot be directly assigned to the ADX-Florence control unit based solely on the offenses in the community. Instead, he said, the BOP could temporarily impose restrictions on an inmate, such as limited communication and association, if the inmate committed some infraction while in prison.

Not even one member of the jury accepted Johnson's proposed finding that he would not be "a serious and continuing danger to the society because the government has the power to imprison him for the rest of his life in a maximum security federal prison designed to control and monitor his behavior." The jury did find a number of aggravating factors, both statutory and non-statutory. In particular, the jury found that Johnson caused the killing after substantial planning and premeditation in the course of a continuing criminal enterprise that involved distribution of drugs to persons under the age of 21. It also found that he ordered the murder to obstruct justice by preventing the victim from testifying and caused harm to the victim's family. After its somewhat lengthy deliberations, the jury sentenced Johnson to death.

3

In Johnson's § 2255 motion, he argues that he was prejudiced by his trial counsel's failure to investigate the law and facts necessary to subject the Government's case on future dangerousness to meaningful adversarial testing. In short, Johnson suggests that trial counsel was ineffective in allowing the Government expert's testimony to go unrebutted.

Johnson argues that, contrary to the Government expert's testimony, there are laws which allow for the application of strict conditions of confinement for extended periods of time absent any infraction within prison in order to alleviate the risk a particular inmate poses to society. First, the BOP can control the conditions of confinement by employing Special Administrative Measures ("SAMs") authorized by 28 C.F.R. § 501.3(a). Second, courts can order restrictions on communication and association as part of a sentence pursuant to 18 U.S.C. § 3582(d). In fact, Johnson has presented evidence of a number of examples of such inmates in addition to those in his original motion.

## II. Standard of Review

In order to succeed on his claim of ineffective assistance of counsel, a § 2255 movant must meet both prongs of a test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed. 2d 674 (1984). First, he must show that his counsel's performance was deficient. *Id.* at 687, 104 S. Ct. at 2064. In this case, the Government concedes the point, agreeing with Johnson that his trial counsel did not effectively impeach the testimony of the Government's expert regarding Johnson's future dangerousness. Instead, the Government disputes only whether Johnson can satisfy the second prong of the *Strickland* test. Thus, Johnson must show that his counsel's deficient performance prejudiced his defense. *Id.* More specifically, he must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S. Ct. at 2068.

4

A "reasonable probability," for purposes of this standard, is "a probability sufficient to undermine confidence in the outcome" of the penalty phase of Johnson's trial. *Id.* The standard is lower than the more familiar "preponderance of the evidence" standard because an ineffective assistance claim "asserts the absence of one of the crucial assurances that the result of the proceeding is reliable, so finality concerns are somewhat weaker." *Id.* However, Johnson must show more than that his counsel's errors "had some conceivable effect on the outcome of the proceeding." *Id.* at 693, 104 S. Ct. at 2067.

## III. Analysis

In addition to conceding that Johnson's counsel was deficient, the Government conceded at the *certiorari* stage of Johnson's direct appeal that the testimony of the Government's expert was incomplete because he failed to mention 28 C.F.R. § 501.3 and 18 U.S.C. § 3582(d). The Government admitted that the testimony may have left the jury with the mistaken impression that neither the BOP nor the Court had the authority to impose certain restrictions on an inmate immediately upon sentencing. Nonetheless, the Government argues that Johnson cannot show that defense counsel's failure to impeach the witness on those matters created a reasonable probability that the jury would not have sentenced Johnson to death.

For a number of reasons, the Court rejects the Government's argument. First, the Court finds that the probability that the errors affected Johnson's sentence is higher in this case than in some because the errors were relevant to the issue of future dangerousness. The Court recognizes the importance of the fact that the jury in Johnson's case found a number of aggravating factors that did not relate to Johnson's future dangerousness. But the Court finds that future dangerousness, and the Government's ability to protect against it, is an especially important factor in death penalty cases generally, as well as in this case particularly.

5

On this point, the Government's closing argument from the penalty phase of Johnson's trial is telling. The Government devoted a significant portion of its arguments in closing and rebuttal to the issue of future dangerousness and the likelihood that Johnson could not be controlled in prison - perhaps more than to any other aggravating or mitigating factor. The Government's language on these points was strong and clear. The Government stated that "as long as [Johnson] has the ability to convey his orders to his followers, either on the street or in prison with him, nobody is safe; no witness, no witness's family, anybody who stands in his way, they are not safe. It doesn't matter where he is locked up." (Tr. 2593.) Moreover, the Government reiterated the admittedly incomplete and misleading testimony of its expert by stating, among other things, that Johnson would not be going to the control unit at ADX-Florence because federal regulations would not allow it. (Tr. 2645.) The Government's focus on these points suggests that it recognized the potential importance of this factor on the jury's decision in this case.

This conclusion also finds support in the empirical research on the subject. A number of studies suggest that future dangerousness is one of the most issues, if not the most significant, for juries deciding whether or not to sentence a defendant to death. *See, e.g.,* John H. Blume, et al., *Future Dangerousness in Capital Cases: Always "At Issue"*, 86 Cornell L. Rev. 397, 404 (2001); Stephen P. Garvey, *Aggravation and Mitigation in Capital Cases: What do Jurors Think?*, 98 Colum. L. Rev. 1538, 1559-60 (1998); Sally Costanzo & Mark Costanzo, *Life or Death Decisions: An Analysis of Capital Jury Decision Making Under the Special Issues Sentencing Framework*, 18 Law & Hum. Behav. 151, 160 (1994) ("[n]early all jurors [surveyed]...offered the observation that the penalty decision hinged on the issue of whether the defendant would pose a continuing threat to society").

6

Johnson also points to an analogous case that illustrates the importance that this factor can have on a jury. In that case, *United States v. Jones*, No. CR-96-458-WMN (D. Md.), a jury convicted Jones of ordering the murders of federal witnesses, including one while he was incarcerated in a federal prison. The *Jones* jury found a number of the same aggravating factors as the jury did in this case, including that he was a future danger and a "continuing and serious threat to society." However, seven members of the jury also found that:

> Any concern respecting future dangerousness of Anthony Jones is significantly reduced since the Federal Bureau of Prisons is empowered to classify a prisoner serving a life sentence without possibility of release to the highest security level federal prison, under conditions of confinement that eliminate any reasonable probability that the prisoner will be a continuing and serious threat to society.

The jury did not sentence Jones to death. Johnson notes that the jury in the *Jones* case heard testimony regarding the restrictive conditions that could be imposed on Jones and that had been imposed in another case.

The Government is right to note that the fact of every case and make-up of every jury varies, and that it would be wrong to assume that the jury would do the same in Johnson's case as the jury did in Jones's case if Johnson had effective assistance of counsel. But, the Government is notably silent in its brief on how the two cases are distinguishable. And the similarities between the facts of these two cases which have different results undermines the reliability of the result in Johnson's case further.

As discussed above, Johnson faces a relatively low burden in this case. Given that "it only takes one juror to nix a death sentence," *United States v. Johnson*, 223 F.3d 665, 670 (7th Cir. 2000), he only needs to show a reasonable probability that one juror would have changed his or her mind during the course of the lengthy deliberations in this case. Johnson has shown that his future dangerousness, the

7

factor admittedly affected by his counsel's errors, was likely an important factor in the jurors' minds,

weighing heavily on the scale for measuring aggravating and mitigating factors. Given this showing,

the Court finds that there is a reasonable probability that if Johnson had effective assistance of counsel,

the jury would not have sentenced him to death. He has sufficiently undermined the reliability of the

penalty phase of his trial. Thus, the Court GRANTS Johnson's § 2255 motion, VACATES his death

sentence, and ORDERS that he be given a new hearing before a jury to determine his sentence.


IT IS SO ORDERED.


_____/12/13/10_____
Dated

_____Wm. J. Hibbler_____
Hon. William J. Hibbler
United States District Court

8

# UNITED STATES DISTRICT COURT

for the

Northern District of Illinois

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   02 C 6998 |
| DARRYL LAMONT JOHNSON | ) | |
| *Defendant* | ) | |

## JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

☐ the plaintiff *(name)*      recover from the defendant *(name)*      the amount of      dollars ($      ), which includes prejudgment interest at the rate of      %, plus postjudgment interest at the rate of      %, along with costs.

☐ the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* recover costs from the plaintiff *(name)*

X other:   Respondent's motion to vacate his sentence is granted.

This action was *(check one)*:

☐ tried by a jury with Judge      presiding, and the jury has rendered a verdict.

☐ tried by Judge      without a jury and the above decision was reached.

X decided by Judge      William J. Hibbler      on a motion to   vacate sentence.

Date:   Dec. 13, 2010      Michael W. Dobbins, Clerk of Court

/s/ Jacquelyn H. Collier

Deputy Clerk

Case 1:02-cv-06998   Document 121   Filed 02/24/11   Page 44 of 55   PageID 1521
Case: 11-1443    Document: 4-6       Filed: 03/04/2011    Pages: 242

APPEAL, BROWN, TERMED

# United States District Court
## Northern District of Illinois - CM/ECF LIVE, Ver 4.2 (Chicago)
## CIVIL DOCKET FOR CASE #: 1:02-cv-06998
### Internal Use Only

| | |
|---|---|
| USA v. Johnson | Date Filed: 09/30/2002 |
| Assigned to: Honorable William J. Hibbler | Date Terminated: 03/11/2003 |
| Demand: $0 | Jury Demand: None |
| Case in other court: 11-01326 | Nature of Suit: 510 Prisoner: Vacate Sentence |
| ND IL, :96-CR-00379 | Jurisdiction: U.S. Government Defendant |
| Cause: 28:2255 Remedies on motion attacking sentence | |

**Plaintiff**

| | | |
|---|---|---|
| **United States of America** | represented by | **David E. Bindi** |
| | | United States Attorney's Office (NDIL) |
| | | 219 South Dearborn Street |
| | | Suite 500 |
| | | Chicago, IL 60604 |
| | | (312) 353-5300 |
| | | Email: david.bindi@usdoj.gov |
| | | *ATTORNEY TO BE NOTICED* |

V.

**Defendant**

| | | |
|---|---|---|
| **Darryl Lamont Johnson** | represented by | **Terence H. Campbell** |
| | | Cotsirilos, Tighe & Streicker |
| | | 33 North Dearborn Street |
| | | Suite 600 |
| | | Chicago, IL 60602 |
| | | (312) 263-0345 |
| | | Email: tcwolfram@aol.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Lorinda Meier Youngcourt** |
| | | Lorinda Meier Youngcourt |
| | | Attorney at Law |
| | | P.O. Box 206 |
| | | Huron, IN 47437 |
| | | (812)849-9852 |
| | | Email: lmyoungcourt@incrimlaw.org |
| | | *ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 09/30/2002 | 1 | MOTION by defendant to vacate conviction and sentence and for new trial pursuant to 28 USC Section 2255 and Rule 33 of the Federal Rules of Criminal Procedure; Civil cover sheet (Documents 1-1 through 1-2) (Forwarded copy of motion to U.S. Attorney's Office) (hp) Modified on 10/01/2002 (Entered: 10/01/2002) |
| 09/30/2002 | 2 | ATTORNEY APPEARANCE for defendant by Terence H. Campbell and Lorinda Meier Youngcourt. (hp) (Entered: 10/01/2002) |
| 09/30/2002 | 3 | MOTION by defendant for leave to file oversized brief ; Notice (hp) (Entered: 10/01/2002) |
| 09/30/2002 | 4 | INITIAL MEMORANDUM by defendant in support motion [1-1] (One volume) (hp) (Entered: 10/01/2002) |
| 10/01/2002 | 5 | MINUTE ORDER of 10/1/02 by Hon. Suzanne B. Conlon : Defendant Darry Johnson's motion to vacate conviction and sentence and for new trial pursuant to 28 U.S.C. Section 2255 and Rule 33 of the Federal Rules of Criminal Procedure is taken under advisement. The government shall repond by 12/2/02; any reply shall be filed by 12/16/02. Defendant's motion to file an 18-page brief is granted [3-1]. The motions will not be heard on 10/8/02 as noticed. Mailed notices by judge's staff (cem) (Entered: 10/02/2002) |
| 11/14/2002 | 6 | MOTION by Government for extension of time to answer Section 2255 motion ; Affidavit of David Bindi; Notice (rmm) (Entered: 11/22/2002) |
| 11/21/2002 | 7 | EX PARTE MOTION by defendant for interim payment of attorney's fees ; Notice (rmm) (Entered: 11/22/2002) |
| 11/21/2002 | 8 | MINUTE ORDER of 11/21/02 by Hon. Suzanne B. Conlon: Government's unopposed motion for extension of time to answer Section 2255 motion is granted [6-1]. Government's response to petition [1-1] is extended to 1/31/03; any reply shall be filed by 2/14/03. No further extensions. Notices mailed by judge's staff (rmm) (Entered: 11/22/2002) |
| 01/31/2003 | 9 | RESPONSE by plaintiff to the motion to vacate judgment pursuant to 28 U.S.C. Section 2255 [1-1]; Notice. (cem) (Entered: 02/03/2003) |
| 02/03/2003 | 10 | MOTION by defendant for leave to conduct discovery ; Notice. (cem) (Entered: 02/07/2003) |
| 02/06/2003 | 11 | MINUTE ORDER of 2/6/03 by Hon. Suzanne B. Conlon : Defendant's motion for leave to conduct discovery [10-1] is taken under advisement. Government to respond by 2/14/03. Mailed notices by judge's staff (cem) (Entered: 02/07/2003) |
| 02/06/2003 | 12 | AGREED MOTION by defendant for short extension of time to file reply brief in support of his initial memorandum in support of his Section 2255 motion ; Notice. (cem) (Entered: 02/11/2003) |
| 02/11/2003 | 13 | MINUTE ORDER of 2/11/03 by Hon. Suzanne B. Conlon : Defendant's agreed motion for extension of time to file reply is granted [12-1]. |

| | | Defendant's reply in support of his Section 2255 motion is extended to 2/28/03. No further extensions. Mailed notices by judge's staff (cem) (Entered: 02/12/2003) |
|---|---|---|
| 02/14/2003 | 14 | RESPONSE by plaintiff to the motion for leave to conduct discovery [10-1]; Notice. (cem) (Entered: 02/18/2003) |
| 02/24/2003 | 15 | AGREED MOTION by defendant for short extension of time to file reply brief in support of his initial memorandum in support of his Section 2255 ; Notice. (cem) (Entered: 03/04/2003) |
| 02/27/2003 | 16 | MINUTE ORDER of 2/27/03 by Hon. Suzanne B. Conlon : Defendant's agreed motion for extension of time to file reply is granted [15-1]. Defendant's reply in support of his Section 2255 motion is extended to 3/3/03. Final extension. Mailed notices by judge's staff (cem) (Entered: 03/04/2003) |
| 03/03/2003 | 17 | MOTION by defendant for leave to file brief oversized brief in support of his motion for relief under Section 2255 ; Notice. (cem) (Entered: 03/07/2003) |
| 03/06/2003 | 18 | MINUTE ORDER of 3/6/03 by Hon. Suzanne B. Conlon : Defendant's motion for leave to file oversized reply brief in support of his Section 2255 motion is granted [17-1]. Mailed notice (cem) (Entered: 03/07/2003) |
| 03/06/2003 | 19 | INITIAL REPLY by defendant in support of his motion to vacate conviction and sentence and for new trial pursuant to 28 U.S.C. Section 2255 [1-1] (Attachments); Notice. (cem) (Entered: 03/07/2003) |
| 03/11/2003 | 20 | MINUTE ORDER of 3/11/03 by Hon. Suzanne B. Conlon : Petitioner's motion to vacate conviction and sentence and for new trial pursuant to 28 U.S.C. Section 2255 and Rule 33 of the Federal Rules of Criminal Procedure [1-1] and petitioner's motion for leave to conduct discovery [10-1] are denied with prejudice as to grounds I-V and VII-VIII and without prejudice as to grounds VI. Entered Memorandum Opinion and Order. Terminating case . Mailed notices by judge's staff (cem) (Entered: 03/12/2003) |
| 03/11/2003 | 21 | ENTERED JUDGMENT (cem) (Entered: 03/12/2003) |
| 03/24/2003 | 22 | MOTION by petitioner for appointment and funding of expert (Attachments). (cem) (Entered: 03/28/2003) |
| 03/24/2003 | 23 | MOTION by petitioner to alter, amend and make clarifying findings concerning the 3/11/03 judgment in favor of the respondent , or alternative to stay the judgment ; Notice. (cem) (Entered: 03/28/2003) |
| 03/27/2003 | 24 | MINUTE ORDER of 3/27/03 by Hon. Suzanne B. Conlon : Petitioner's motion for appointment and funding of expert [22-1] and motion to alter, amend and make clarifying findings concerning the 3/11/03 judgment in favor of the respondent [23-1], or alternatively to stay the judgment [23-2] are taken under advisement. Mailed notice (cem) (Entered: 03/28/2003) |
| 03/31/2003 | 25 | MINUTE ORDER of 3/31/03 by Hon. Suzanne B. Conlon : Petitioner's motion to alter, amend and make clarifying findings concerning the 3/11/03 judgment [23-1] is denied. His alternative motion to stay the judgment [23-2] is granted. The judgment entered 3/11/03 is stayed pending resolution of |

| | | |
|---|---|---|
| | | petitioner's mental retardation claim. Mailed notices by judge's staff (cem) (Entered: 03/31/2003) |
| 03/31/2003 | 26 | MINUTE ORDER of 3/31/03 by Hon. Suzanne B. Conlon : Petitioner's motion for appointment of Dennis R. Olvera, Ph.D., a licensed psychologist, to evaluate petitioner's adaptive functioning [22-1] is granted. Dr. Olvera's fees and costs shall not exceed $5,000. Requests for payment must be submitted on appropriate court forms with the required substantiation. Mailed notices by judge's staff (cem) (Entered: 03/31/2003) |
| 11/05/2007 | 27 | MOTION by Plaintiff United States of America for reconsideration *To Reconsider* (Bindi, David) (Entered: 11/05/2007) |
| 11/06/2007 | 32 | MINUTE entry before Judge Suzanne B. Conlon : United States' motion to reconsider basis for rejecting ineffective assistance claim and for entry of judgment 27 is taken under advisement. Defendant shall respond by January 7, 2008. The motion will not be heard on November 13, 2007 as noticed.Mailed notice (rbf, ) (Entered: 11/15/2007) |
| 11/08/2007 | 28 | *Motion to Reconsider* NOTICE of Motion by David E. Bindi for presentment of before Honorable Suzanne B. Conlon on 11/13/2007 at 09:00 AM. (Bindi, David) (Entered: 11/08/2007) |
| 11/13/2007 | 29 | RESPONSE by Darryl Lamont Johnson to MOTION by Plaintiff United States of America for reconsideration *To Reconsider* 27 *in Light of Massaro v. United States* (Campbell, Terence) (Entered: 11/13/2007) |
| 11/13/2007 | 30 | MOTION by Defendant Darryl Lamont Johnson for discovery - *Renewed Based on Massaro v. United States* (Campbell, Terence) (Entered: 11/13/2007) |
| 11/13/2007 | 31 | MEMORANDUM by Darryl Lamont Johnson in support of motion for discovery 30 - *Renewed in Light of Massaro v. United States* (Campbell, Terence) (Entered: 11/13/2007) |
| 01/14/2008 | 34 | MINUTE entry before Judge Suzanne B. Conlon :The government's unopposed motion to reconsider the basis for rejecting defendant's ineffective assistance of counsel claim 27 is granted. A hearing is set on this issue as well as defendant's most recent motion for leave to conduct discovery 30 on January 30, 2008 at 01:30 pm. Mailed notice (gmr, ) (Entered: 01/17/2008) |
| 01/16/2008 | 33 | ATTORNEY Appearance for Defendant Darryl Lamont Johnson by Terence H. Campbell (Campbell, Terence) (Entered: 01/16/2008) |
| 01/24/2008 | 35 | MOTION by Defendant Darryl Lamont Johnson to continue *Hearing Date Due to Counsel's Trial Schedule* (Campbell, Terence) (Entered: 01/24/2008) |
| 01/24/2008 | 36 | *AGREED* NOTICE of Motion by Terence H. Campbell for presentment of motion to continue 35 before Honorable Suzanne B. Conlon on 1/29/2008 at 09:00 AM. (Campbell, Terence) (Entered: 01/24/2008) |
| 01/29/2008 | 37 | MINUTE entry before Judge Suzanne B. Conlon : Agreed motion 35 to reset January 30, 2008 hearing due to counsel's trial schedule is granted. Hearing is reset on February 29, 2008 @ 1:30 p.m. Notices mailed by Judicial staff. |

| | | |
|---|---|---|
| | | notice (wyh, ) (Entered: 02/01/2008) |
| 02/05/2008 | 38 | MINUTE entry before Judge Suzanne B. Conlon :Set hearing. On the court's own motion, the motion hearing set on February 29, 2008 at 1:30 p.m. is reset to February 29, 2008 at 9:00 a.m. Notices mailed by Judicial staff. (wyh, ) (Entered: 02/08/2008) |
| 02/28/2008 | 39 | SUPPLEMENT by Darryl Lamont Johnson to *Ineffective Assistance of Counsel Claim* (Attachments: # 1 Exhibit Jill Miller Affidavit# 2 Exhibit Exhibit A Attachments# 3 Exhibit Exhibits B-G)(Campbell, Terence) (Entered: 02/28/2008) |
| 02/28/2008 | 40 | NOTICE by Darryl Lamont Johnson re supplement 39 *in Support of Ineffective Assistance of Counsel Claim* (Campbell, Terence) (Entered: 02/28/2008) |
| 02/29/2008 | 41 | MINUTE entry before Judge Suzanne B. Conlon :Hearing held on defendant's motion to vacate his sentence pursuant to 28 U.S.C. Section 2255, and the government's motion to reconsider the basis for rejecting defendant's ineffective assistance claim. The government unopposed motion 27 is granted. The court vacates portions of its Memorandum Opinion and Order issued March 11, 2003 finding that defendant procedurally defaulted his ineffective assistance of counsel claim by not raising this issue on direct appeal. See Massaro v United States, 538 U.S. 500 (2003) (ineffective assistance of counsel claims may be raised in a collateral proceeding under Section 2255 even if not raised on direct appeal). The court therefore shall consider the ineffective assistance of counsel claim fully on the merits. Defendant's renewed motion for leave to conduct discovery 30 is held in abeyance. Notices mailed by Judicial staff. (wyh, ) (Entered: 03/05/2008) |
| 03/06/2008 | 42 | EXECUTIVE COMMITTEE ORDER: Case reassigned to Judge William J. Hibbler Signed by Judge Executive Committee on 3/6/08. (vmj, ) (Entered: 03/10/2008) |
| 03/12/2008 | 43 | RESPONSE by Plaintiff United States of America (Bindi, David) (Entered: 03/12/2008) |
| 04/21/2008 | 44 | TRANSCRIPT of proceedings for the following dates: 2/29/2008; Before the Honorable Honorable Suzanne B. Conlon. (Document not scanned)(kjc, ) (Entered: 04/22/2008) |
| 05/20/2008 | 45 | MINUTE entry before the Honorable William J. Hibbler: Status hearing to set scheduling order set for 5/29/2008 at 09:30 AM. Mailed notice (jdh) (Entered: 05/22/2008) |
| 05/29/2008 | 46 | MINUTE entry before the Honorable William J. Hibbler: Status hearing reset to 6/3/2008 at 10:30 AM. Telephoned notice (jdh) (Entered: 06/03/2008) |
| 06/03/2008 | 48 | MINUTE entry before the Honorable William J. Hibbler: Status hearing held and continued to 8/26/08 at 10:30 am. At the next status, the government is to report on the state of Darryl Johnsons adjustment in the BOP, and turnover as discovery materials any instances of either special administrative measures under the BOP regulations or statutory provisions providing for extraordinary |

| | | |
|---|---|---|
| | | security measures for inmates that were requested or imposed at the time of Darryl Johnson's sentencing that involved restrictions continuously. Defendants' counsel to tender to the Court a complete set of all pleadings since the 2255 petition was filed. Parties to tender to the Court any missing transcript pages. Mailed notice (kj, ) (Entered: 06/17/2008) |
| 06/17/2008 | 47 | TRANSCRIPT OF PROCEEDINGS held on 06/03/2008 before the Honorable William J. Hibbler. Court Reporter Contact Information: Alexandra Roth, 312/408-5038, Alexandra_Roth@ilnd.uscourts.gov.<br><br>**IMPORTANT:Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov. Under Quick Links select Electronic Transcript Procedures.**<br><br>Redaction Request due 7/8/2008. Redacted Transcript Deadline set for 7/18/2008. Release of Transcript Restriction set for 9/15/2008. (Roth, Alexandra) (Entered: 06/17/2008) |
| 08/26/2008 | 49 | MINUTE entry before the Honorable William J. Hibbler:Status hearing held on 8/26/2008 and continued to 10/21/2008 at 10:00 a.m.Mailed notice (jlj, ) (Entered: 08/27/2008) |
| 09/22/2008 | 50 | TRANSCRIPT OF PROCEEDINGS held on 08/26/2008 before the Honorable William J. Hibbler. Court Reporter Contact Information: ALEXANDRA ROTH, 312/408-5038, alexandra_roth@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 10/14/2008. Redacted Transcript Deadline set for 10/23/2008. Release of Transcript Restriction set for 12/22/2008. (Roth, Alexandra) (Entered: 09/22/2008) |
| 09/25/2008 | 51 | MINUTE entry before the Honorable William J. Hibbler: Petitioner's ex parte motion for interim payment of fees is granted. Payment of interim attorneys' fees and expenses is appropriate under the Criminal Justice Act because, due to the length and complexity of this case, the appointed attorneys in this matter will experience a hardship in undertaking the representation without compensation for a substantial period of time. Telephoned notice (aac, ) (Entered: 09/29/2008) |
| 09/29/2008 | | (Court only) FORWARDED Minute Order dated 9/25/2008 to Fiscal Department. (aac, ) (Entered: 09/29/2008) |

Case 1:02-cv-06998   Document 121   Filed 02/24/11   Page 50 of 55   PageID 1527
Case: 11-1443     Document: 4-6          Filed: 03/04/2011     Pages: 242

| 10/21/2008 | 52 | MINUTE entry before the Honorable William J. Hibbler: Status hearing held on 10/21/2008 and continued to 1/8/2009 at 10:00 AM. Defendant to file discovery request by 11/21/0-8. Government to respond by 12/5/08. Defendant to reply by 12/15/08. Ruling set for 1/8/09 at 10:00 a.m. Mailed notice (jdh) (Entered: 10/22/2008) |
|---|---|---|
| 11/24/2008 | 53 | MOTION by Defendant Darryl Lamont Johnson for discovery - *Renewed and Amended* (Campbell, Terence) (Entered: 11/24/2008) |
| 11/24/2008 | 54 | MOTION by Defendant Darryl Lamont JohnsonLeave to File Expert Funding Requests Ex Parte and Under Seal (Campbell, Terence) (Entered: 11/24/2008) |
| 11/26/2008 | 55 | MOTION by Defendant Darryl Lamont Johnson for leave to file *Motions Instanter* (Campbell, Terence) (Entered: 11/26/2008) |
| 11/26/2008 | 56 | NOTICE of Motion by Terence H. Campbell for presentment of motion for leave to file 55 before Honorable William J. Hibbler on 12/4/2008 at 09:30 AM. (Campbell, Terence) (Entered: 11/26/2008) |
| 12/03/2008 | 57 | MINUTE entry before the Honorable William J. Hibbler: Agreed Motion for leave to file his renewed discovery and for leave to seek expert funding ex parte funding motions instanter 54 55 is granted. The previously set briefing schedule to stand. Mailed notice (jdh) (Entered: 12/03/2008) |
| 12/05/2008 | 58 | MOTION by Plaintiff United States of America for extension of time (Bindi, David) (Entered: 12/05/2008) |
| 12/05/2008 | 59 | NOTICE of Motion by David E. Bindi for presentment of extension of time 58 before Honorable William J. Hibbler on 12/11/2008 at 09:30 AM. (Bindi, David) (Entered: 12/05/2008) |
| 12/10/2008 | 60 | MINUTE entry before the Honorable William J. Hibbler: Government's Agreed Motion for an extension of time to respond to petitioner's discovery and expert witness motions 58 is granted. Government to respond by 12/19/2008. Petitioner to reply by 1/8/2009. Ruling to reset to 2/4/09 at 10:00 a.m. Mailed notice (jdh) (Entered: 12/10/2008) |
| 12/10/2008 | | (Court only) In Court hearing set for 2/4/2008 at 10:00 AM. (jdh) (Entered: 12/10/2008) |
| 12/19/2008 | 61 | RESPONSE by Plaintiff United States of America *to discovery motions* (Attachments: # 1 Appendix)(Bindi, David) (Entered: 12/19/2008) |
| 01/07/2009 | 62 | MOTION by Defendant Darryl Lamont Johnson for extension of time to file response/reply - *AGREED* (Campbell, Terence) (Entered: 01/07/2009) |
| 01/07/2009 | 63 | *AGREED* NOTICE of Motion by Terence H. Campbell for presentment of motion for extension of time to file response/reply 62 before Honorable William J. Hibbler on 1/13/2009 at 09:30 AM. (Campbell, Terence) (Entered: 01/07/2009) |
| 01/12/2009 | 64 | MINUTE entry before the Honorable William J. Hibbler: Defendant's Agreed Motion for short extension of time until 1/15/09 to file reply brief regarding MOTION by Defendant Darryl Lamont Johnson for discovery - *Renewed and* |

| | | |
|---|---|---|
| | | *Amended* 53 , MOTION by Defendant Darryl Lamont Johnson for discovery - *Renewed Based on Massaro v. United States* 30 62 is granted. Ruling on motion for discovery 53 , motion for discovery 30 before Honorable William J. Hibbler on 2/4/2009 at 10:00 AM. Mailed notice (jdh) (Entered: 01/12/2009) |
| 01/15/2009 | 65 | REPLY by Defendant Darryl Lamont Johnson to Response 61 , motion for discovery 53 (Campbell, Terence) (Entered: 01/15/2009) |
| 01/15/2009 | 66 | INCORRECT Document Linked(Campbell, Terence) Modified on 1/16/2009 (aac, ). (Entered: 01/15/2009) |
| 01/16/2009 | 67 | NOTICE of Correction regarding 66 . (aac, ) (Entered: 01/16/2009) |
| 01/16/2009 | 68 | NOTICE by Darryl Lamont Johnson re reply 65 *In Support of Renewed and Amended Motion For Discovery* (Campbell, Terence) (Entered: 01/16/2009) |
| 02/04/2009 | 69 | MINUTE entry before the Honorable William J. Hibbler: Motion hearing held on 2/4/2009. The Court will rule on defendant's motion for discovery 53 by mail. Mailed notice (jdh) (Entered: 02/04/2009) |
| 05/15/2009 | 70 | MINUTE entry before the Honorable William J. Hibbler: Enter Memorandum Opinion and Order. The Court DENIES Defendant's Motion for Discovery (Doc. # 53 ). Status hearing set for 5/26/09 at 10:00 a.m. [ For further detail see separate order(s).] Mailed notice (aac, ) (Entered: 05/19/2009) |
| 05/15/2009 | 71 | MEMORANDUM Opinion and Order. Signed by the Honorable William J. Hibbler on 5/15/2009. (aac, ) (Entered: 05/19/2009) |
| 05/26/2009 | 72 | MINUTE entry before the Honorable William J. Hibbler: Status hearing reset to 6/9/2009 at 9:30 AM. Mailed notice (jdh) (Entered: 05/27/2009) |
| 06/09/2009 | 73 | MINUTE entry before the Honorable William J. Hibbler: Status hearing held. Petitioner to file additional motions with supporting memoranda by 7/31/09. Government to respond by 8/31/09. Petitioner to reply by 9/21/09. Ruling by mail. Mailed notice (aac, ) (Entered: 06/10/2009) |
| 07/17/2009 | 74 | MOTION by Defendant Darryl Lamont Johnson for extension of time to file *Brief in Support of Relief Under Sec. 2255 Petition* (Campbell, Terence) (Entered: 07/17/2009) |
| 07/17/2009 | 75 | *AGREED* NOTICE of Motion by Terence H. Campbell for presentment of motion for extension of time to file 74 before Honorable William J. Hibbler on 7/22/2009 at 09:30 AM. (Campbell, Terence) (Entered: 07/17/2009) |
| 07/21/2009 | 76 | MINUTE entry before the Honorable William J. Hibbler: Agreed motion to modify briefing schedule 74 is granted. Petitioner's brief in support of his claim for relief under Section 2255 to be filed by 8/28/2009. Government to respond by 9/28/2009. Petitioner to reply by 10/19/2009. Ruling by mail. Mailed notice (jdh) (Entered: 07/21/2009) |
| 08/19/2009 | 77 | MOTION by Defendant Darryl Lamont Johnson for extension of time to file *brief* (Campbell, Terence) (Entered: 08/19/2009) |
| 08/19/2009 | 78 | NOTICE of Motion by Terence H. Campbell for presentment of motion for |

| | | extension of time to file 77 before Honorable William J. Hibbler on 8/25/2009 at 09:30 AM. (Campbell, Terence) (Entered: 08/19/2009) |
|---|---|---|
| 08/20/2009 | 79 | MOTION by Defendant Darryl Lamont Johnson for extension of time to file *brief* (Campbell, Terence) (Entered: 08/20/2009) |
| 08/20/2009 | 80 | *AGREED* NOTICE of Motion by Terence H. Campbell for presentment of motion for extension of time to file 79 before Honorable William J. Hibbler on 8/25/2009 at 09:30 AM. (Campbell, Terence) (Entered: 08/20/2009) |
| 08/24/2009 | 81 | MINUTE entry before the Honorable William J. Hibbler: Motion to modify briefing schedule 77 is withdrawn as moot. Agreed Amended Motion to modify briefing schedule 79 is granted. Petitioner's brief in support of his claim for relief under Section 2255 to be filed by 11/10/09. Government to respond by 12/10/09. Petitioner to reply by 1/11/10. Ruling by mail. Mailed notice (jdh) (Entered: 08/24/2009) |
| 10/30/2009 | 82 | MOTION by Defendant Darryl Lamont Johnson for extension of time to file *Brief* (Campbell, Terence) (Entered: 10/30/2009) |
| 10/30/2009 | 83 | *AGREED* NOTICE of Motion by Terence H. Campbell for presentment of motion for extension of time to file 82 before Honorable William J. Hibbler on 11/3/2009 at 09:30 AM. (Campbell, Terence) (Entered: 10/30/2009) |
| 11/02/2009 | 84 | MINUTE entry before the Honorable William J. Hibbler: Petitioner's Motion to modify briefing schedule 82 is granted. Petitioner's initial brief to be due by 12/17/09. Government to respond by 1/22/10. Petitioner to reply by 2/19/10. Ruling by mail. Mailed notice (jdh) (Entered: 11/02/2009) |
| 12/17/2009 | 85 | MEMORANDUM by Darryl Lamont Johnson - *Supplemental in Support of Ineffective Assistance Claim* (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Affidavit, # 4 Affidavit, # 5 Exhibit, # 6 Exhibit, # 7 Affidavit, # 8 Exhibit) (Campbell, Terence) (Entered: 12/17/2009) |
| 12/17/2009 | 86 | MEMORANDUM *In Support of Motion to Reconsider Brady Claim* (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Affidavit, # 4 Affidavit) (Campbell, Terence) (Entered: 12/18/2009) |
| 12/18/2009 | 87 | MEMORANDUM - *Corrected - In Support of Reconsideration of Brady and Johnson v. Mississippi Claims* (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Affidavit, # 4 Affidavit)(Campbell, Terence) (Entered: 12/18/2009) |
| 12/21/2009 | 88 | MOTION by Defendant Darryl Lamont JohnsonConsideration of Brady v. Maryland and Johnson v. Mississippi Claims (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Affidavit, # 4 Affidavit)(Campbell, Terence) (Entered: 12/21/2009) |
| 12/21/2009 | 89 | NOTICE of Correction regarding 87 . (aac, ) (Entered: 12/21/2009) |
| 01/15/2010 | 90 | MOTION by Plaintiff United States of America for extension of time to file response/reply (Bindi, David) (Entered: 01/15/2010) |
| 01/15/2010 | 91 | NOTICE of Motion by David E. Bindi for presentment of before Honorable William J. Hibbler on 1/21/2010 at 09:30 AM. (Bindi, David) (Entered: |

| | | |
|---|---|---|
| | | 01/15/2010) |
| 01/20/2010 | 92 | MINUTE entry before Honorable William J. Hibbler: Government's Motion for extension of time until 2/22/2010 to file response regarding MOTION by Defendant Darryl Lamont Johnson Consideration of Brady v. Maryland and Johnson v. Mississippi Claims 88 90 is granted. Petitioner's reply due by 3/31/2010. Ruling by mail. Mailed notice (jdh) (Entered: 01/20/2010) |
| 02/12/2010 | 93 | MOTION by Plaintiff United States of America for extension of time (Bindi, David) (Entered: 02/12/2010) |
| 02/12/2010 | 94 | NOTICE of Motion by David E. Bindi for presentment of extension of time 93 before Honorable William J. Hibbler on 2/18/2010 at 09:30 AM. (Bindi, David) (Entered: 02/12/2010) |
| 02/17/2010 | 95 | MINUTE entry before Honorable William J. Hibbler: Government's Agreed Motion for extension of time until 3/24/2010 to respond to petitioner's supplemental briefs 93 is granted. Mailed notice (jdh) (Entered: 02/17/2010) |
| 03/17/2010 | 96 | MOTION by Plaintiff United States of America for extension of time to file response/reply as to memorandum in support of motion 86 , memorandum, 85 (Bindi, David) (Entered: 03/17/2010) |
| 03/17/2010 | 97 | NOTICE of Motion by David E. Bindi for presentment of motion for extension of time to file response/reply, motion for relief, 96 before Honorable William J. Hibbler on 3/23/2010 at 09:30 AM. (Bindi, David) (Entered: 03/17/2010) |
| 03/22/2010 | 98 | MINUTE entry before Honorable William J. Hibbler: Government's Agreed Motion for an extension of time until 5/10/2010 to respond to petitioner's supplemental briefs 96 is granted. Petitioner's reply due by 6/28/2010. Ruling by mail. Mailed notice (jdh) (Entered: 03/22/2010) |
| 05/10/2010 | 99 | RESPONSE by Plaintiff United States of America *to supplemental briefs* (Bindi, David) (Entered: 05/10/2010) |
| 06/01/2010 | 100 | MOTION by Defendant Darryl Lamont Johnson for extension of time to file response/reply - *AGREED* (Campbell, Terence) (Entered: 06/01/2010) |
| 06/01/2010 | 101 | *Agreed* NOTICE of Motion by Terence H. Campbell for presentment of before Honorable William J. Hibbler on 6/8/2010 at 09:30 AM. (Campbell, Terence) (Entered: 06/01/2010) |
| 06/07/2010 | 102 | MINUTE entry before Honorable William J. Hibbler: Agreed Motion to modify briefing schedule regarding MOTION by Defendant Darryl Lamont Johnson Consideration of Brady v. Maryland and Johnson v. Mississippi Claims 88 100 is granted. Petitioner's reply due by 8/6/2010. Ruling by mail. Mailed notice (jdh) (Entered: 06/07/2010) |
| 08/02/2010 | 103 | MOTION by Defendant Darryl Lamont Johnson for extension of time - *AGREED* (Campbell, Terence) (Entered: 08/02/2010) |
| 08/02/2010 | 104 | *AGREED* NOTICE of Motion by Terence H. Campbell for presentment of extension of time 103 before Honorable William J. Hibbler on 8/5/2010 at |

| | | |
|---|---|---|
| | | 09:30 AM. (Campbell, Terence) (Entered: 08/02/2010) |
| 08/04/2010 | 105 | MINUTE entry before Honorable William J. Hibbler: Petitioner's Agreed Motion for extension of time until 8/16/2010 to file reply brief 103 is granted. Mailed notice (jdh) (Entered: 08/04/2010) |
| 08/16/2010 | 106 | REPLY by Defendant Darryl Lamont Johnson *In Support of His Ineffective Assistance of Counsel Claim* (Campbell, Terence) (Entered: 08/16/2010) |
| 08/16/2010 | 107 | REPLY by Defendant Darryl Lamont Johnson *In Support of His Brady v. Maryland and Johnson v. Mississippi Claims* (Campbell, Terence) (Entered: 08/16/2010) |
| 08/17/2010 | 108 | REPLY by Defendant Darryl Lamont Johnson *In Support of His Ineffective Assistance of Counsel Claim - Corrected* (Campbell, Terence) (Entered: 08/17/2010) |
| 08/17/2010 | 109 | REPLY by Defendant Darryl Lamont Johnson *In Support of His Brady v. Maryland and Johnson v. Mississippi Claims - Corrected* (Campbell, Terence) (Entered: 08/17/2010) |
| 11/05/2010 | 110 | MOTION by Defendant Darryl Lamont Johnson for leave to conduct discovery and supporting memorandum of law. (ph, ) (Entered: 11/08/2010) |
| 12/13/2010 | 111 | MINUTE entry before Honorable William T. Hart:Enter Memorandum Opinion and Order. The court grants Defendant - Movant's motion to vacate his sentence 1 . all other motions are terminated as moot. Mailed notice. (kj, ) (Entered: 12/16/2010) |
| 12/13/2010 | | (Court only) ***Documents terminated: MOTION by Defendant Darryl Lamont Johnson for discovery 110 , MOTION by Defendant Darryl Lamont Johnson for discovery - *Renewed Based on Massaro v. United States* 30 , MOTION by Defendant Darryl Lamont JohnsonConsideration of Brady v. Maryland and Johnson v. Mississippi Claims 88 ., ***Motions terminated: MOTION by Defendant Darryl Lamont Johnson for discovery 110 , MOTION by Defendant Darryl Lamont Johnson for discovery - *Renewed Based on Massaro v. United States* 30 , MOTION by Defendant Darryl Lamont JohnsonConsideration of Brady v. Maryland and Johnson v. Mississippi Claims 88 , ***Deadlines terminated. (kj, ) (Entered: 12/16/2010) |
| 12/13/2010 | 112 | MEMORANDUM Opinion and Order Signed by the Honorable William J. Hibbler on 12/13/2010.(kj, ) Modified on 12/17/2010 (kj, ). (Entered: 12/16/2010) |
| 12/13/2010 | 113 | ENTERED JUDGMENT.(kj, ) (Entered: 12/16/2010) |
| 12/17/2010 | 114 | NOTICE of Correction regarding 112 . (kj, ) (Entered: 12/17/2010) |
| 02/10/2011 | 115 | NOTICE of appeal by United States of America regarding orders 113 (Bindi, David) (Entered: 02/10/2011) |
| 02/10/2011 | 116 | NOTICE of Appeal Due letter sent to counsel of record. (gel, ) (Entered: 02/10/2011) |
| 02/10/2011 | 117 | TRANSMITTED to the 7th Circuit the short record on notice of appeal 115 . |

| | | Notified counsel (gel, ) (Entered: 02/10/2011) |
|---|---|---|
| 02/10/2011 | 118 | ACKNOWLEDGEMENT of receipt of short record on appeal regarding notice of appeal 115 ; USCA Case No. 11-1326. (ph, ) (Entered: 02/11/2011) |
| 02/23/2011 | 119 | NOTICE of cross appeal by Darryl Lamont Johnson regarding orders 21 , 113 , 112 ; (Campbell, Terence) (Entered: 02/23/2011) |
| 02/24/2011 | 120 | NOTICE of Appeal Due letter sent to counsel of record. (gel, ) (Entered: 02/24/2011) |

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF DOCKETING - Short Form

February 24, 2011

**To:**    Michael W. Dobbins
District/Bankruptcy Clerk

The below captioned appeal has been docketed in the United States Court of Appeals for the Seventh Circuit:

> Appellate Case No: 11-1443
>
> Caption:
> DARRYL L. JOHNSON,
> Petitioner - Appellant
>
> v.
>
> UNITED STATES OF AMERICA,
> Respondent - Appellee
>
> District Court No: 1:02-cv-06998
> Court Reporter Alexandra Roth
> Clerk/Agency Rep Michael Dobbins
> District Judge William Hibbler
>
> Date NOA filed in District Court: 02/23/2011

If you have any questions regarding this appeal, please call this office.

form name: **c7_Docket_Notice_short_form**(form ID: **188**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## CIRCUIT RULE 3(b) NOTICE

February 24, 2011

| | |
|---|---|
| No.: 11-1443 | DARRYL L. JOHNSON,<br>Petitioner - Appellant<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>Respondent - Appellee |

| **Originating Case Information:** |
|---|
| District Court No: 1:02-cv-06998<br>Northern District of Illinois, Eastern Division<br>Court Reporter Alexandra Roth<br>Clerk/Agency Rep Michael W. Dobbins<br>District Judge William J. Hibbler |

Circuit Rule 3(b) empowers the clerk to dismiss an appeal if the docket fee is not paid within fourteen (14) days of the docketing of the appeal. This appeal was docketed on February 24, 2011. The District Court has indicated that as of February 24, 2011, the docket fee has not been paid. Depending on your situation, you should:

1.  Pay the required $450.00 docketing fee PLUS the $5.00 notice of appeal filing fee to the District Court Clerk, **if you have not already done so**. The Court of Appeals cannot accept this fee. You should keep a copy of the receipt for your records.

2.  File a motion to proceed on appeal in forma pauperis with the District Court, if you have not already done so. An original and three (3) copies of that motion, with proof of service on your opponent, is required. This motion must be supported by a sworn affidavit in the form prescribed by **Form 4** of the *Appendix of Forms to the Federal Rules of Appellate Procedure (as amended 12/01/98),* listing the assets and income of the appellant(s).

3.      If the motion to proceed on appeal in forma pauperis is denied by the district court, you must either pay the required $450.00 docketing fee PLUS the $5.00 notice of appeal filing fee to the District Court Clerk, within fourteen (14) days after service of notice of the action to the district court, or within thirty (30) days of that date, renew your motion to proceed on appeal in forma pauperis with this court.

If the motion is renewed in this court, it must comply with the terms of *Fed.R.App.P. 24(a)*.

If one of the above stated actions is not taken, the appeal will be dismissed.

form name: **c7_DC_Fee_Notice_Sent**(form ID: **158**)